1 | Adam Hosmer-Henner (NSBN 12779)
Chelsea Latino (NSBN 14227)
2 | Jane Susskind (NSBN 15099)
**McDONALD CARANO LLP**
3 | 100 West Liberty Street, Tenth Floor
Reno, Nevada 89501
4 | (775) 788-2000
ahosmerhenner@mcdonaldcarano.com
5 | clatino@mcdonaldcarano.com
jsusskind@mcdonaldcarano.com
6 |
Boris Bershteyn (*pro hac vice*)
7 | Ken Schwartz (*pro hac vice*)
Michael Menitove (*pro hac vice*)
8 | Sam Auld (*pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
9 | One Manhattan West
New York, New York 10001
10 | (212) 735-3000
Boris.Bershteyn@skadden.com
11 | Ken.Schwartz@skadden.com
Michael.Menitove@skadden.com
12 | Sam.Auld@skadden.com

13 | *Attorneys for Defendant*
14 | *Caesars Entertainment, Inc.*

15 | [*Additional counsel listed on Signature Page*]

16 | **UNITED STATES DISTRICT COURT**

17 | **DISTRICT OF NEVADA**

18 | RICHARD GIBSON, and HERIBERTO VALIENTE,
19 |
20 | Plaintiff,
21 | v.
22 | MGM RESORTS INTERNATIONAL, CENDYN GROUP, LLC, THE RAINMAKER GROUP UNLIMITED, INC., CAESARS ENTERTAINMENT INC., TREASURE ISLAND, LLC, WYNN RESORTS HOLDINGS, LLC,
26 | Defendants.

Case No.  2:23-cv-00140-MMD-DJA

**DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE**

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS'
<u>CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM</u>**

Defendants Cendyn Group, LLC ("Cendyn"), the Rainmaker Group Unlimited, Inc.

("Rainmaker"), Caesars Entertainment, Inc. ("Caesars"), Treasure Island, LLC ("Treasure Island"),

Wynn Resorts Holdings, LLC ("Wynn"), and MGM Resorts International ("MGM"), by and

through their respective counsel, move this Court to dismiss the above-entitled action with

prejudice.  This Motion is made under Federal Rule of Civil Procedure 12(b)(6) and LR 7-2 and is

based on the attached Memorandum of Points and Authorities and supporting documentation, the

papers and pleadings on file, and any oral argument this Court may allow.


Dated: March 27, 2023                          Respectfully submitted,

 */s/ Adam Hosmer-Henner*                        */s/ Todd L. Bice*
Adam Hosmer-Henner (NSBN 12779)        Todd L. Bice (NSBN 4534)
Chelsea Latino (NSBN 14227)            Brianna Smith (NSBN 11795)
Jane Susskind (NSBN 15099)             PISANELLI BICE PLLC
McDONALD CARANO LLP                    400 S. 7th Street, Suite 300
100 West Liberty Street, Tenth Floor   Las Vegas, NV 89101
Reno, Nevada 89501                     Telephone:  702-214-2100
(775) 788-2000                         tlb@pisanellibice.com
ahosmerhenner@mcdonaldcarano.com       bgs@pisanellibice.com
clatino@mcdonaldcarano.com
jsusskind@mcdonaldcarano.com           Bethany Kristovich (*pro hac vice*)
                                       Kyle Mach (*pro hac vice*)
Boris Bershteyn (*pro hac vice* )       Justin Raphael (*pro hac vice*)
Ken Schwartz (*pro hac vice*)           Juliana Yee (*pro hac vice*)
Michael Menitove (*pro hac vice*)       MUNGER, TOLLES & OLSON LLP
Sam Auld (*pro hac vice*)               350 S. Grand Ave.; 50th Floor
   SKADDEN, ARPS, SLATE,               Los Angeles, CA 90071
   MEAGHER & FLOM LLP                  Telephone:  213 683 9100
One Manhattan West                     bethany.kristovich@mto.com
New York, New York 10001               kyle.mach@mto.com
(212) 735-3000                         justin.raphael@mto.com
Boris.Bershteyn@skadden.com            juliana.yee@mto.com
Ken.Schwartz@skadden.com
Michael.Menitove@skadden.com           *Attorneys for Defendant MGM Resorts*
Sam.Auld@skadden.com                   *International*

*Attorneys for Defendant*
*Caesars Entertainment, Inc.*

1    /s/ Patrick G. Byrne
     Patrick G. Byrne
2    Nevada Bar No. 7636
     Bradley Austin
3    Nevada Bar No. 13064
4    SNELL & WILMER
     3883 Howard Hughes Parkway
5    Las Vegas, NV 89169
     Telephone: (702) 784-5200
6    Facsimile: (702) 784-5252
     pbyrne@swlaw.com
7    baustin@swlaw.com
8
     Mark Holscher (*pro hac vice*)
9    Tammy Tsoumas (*pro hac vice*)
     Leonora Cohen (*pro hac vice*)
10   KIRKLAND & ELLIS LLP
11   2049 Century Park East, Suite 3700
     Los Angeles, California 90067
12   Telephone: (310) 552-4200
     Facsimile: (310) 552-5900
13   ttsoumas@kirkland.com
14   mholscher@kirkland.com
     lena.cohen@kirkland.com
15
     Matthew Solum (*pro hac vice*)
16   KIRKLAND & ELLIS LLP
     601 Lexington Ave
17   New York, NY 10022
18   Telephone: (212) 446-4688
     Facsimile: (917) 848-7536
19   msolum@kirkland.com
20   *Attorneys for Defendant Wynn*
     *Resorts Holdings, LLC*
21

     /s/ Patrick J. Reilly
     Patrick J. Reilly
     Arthur A. Zorio
     Emily Garnett (pro hac vice)
     Eric D. Walther
     BROWNSTEIN HYATT FARBER
     SCHRECK, LLP
     100 North City Parkway, Ste. 1600
     Las Vegas, NV 89106
     Telephone:  702.382.2101
     preilly@bhfs.com
     azorio@bhfs.com
     egarnett@bhfs.com
     ewalther@bhfs.com

     *Attorneys for Defendant Treasure Island, LLC*

     /s/ J. Colby Williams
     J. Colby Williams (5549)
     710 South Seventh Street
     Las Vegas, NV 89101
     Telephone: (702) 382-5222
     Facsimile: (702) 382-0540
     jcw@cwalawlv.com

     Sadik Huseny (*pro hac vice*)
     Tim O'Mara (*pro hac vice*)
     Brendan A. McShane (*pro hac vice*)
     LATHAM & WATKINS LLP
     505 Montgomery Street, Suite 2000
     San Francisco, CA 94111-6538
     Telephone: (415) 391-0600
     Facsimile: (415) 395-8095
     sadik.huseny@lw.com
     tim.o'mara@lw.com
     brendan.mcshane@lw.com

22
23   Anna M. Rathbun (*pro hac vice*)
     LATHAM & WATKINS LLP
24   555 Eleventh Street, NW Suite 1000
     Washington, DC 20004-1304
25   Telephone: (202) 637-3381
     Facsimile: (202) 637-2201
26   anna.rathbun@lw.com
27   *Attorneys for Defendant Cendyn Group LLC*
28

_/s/ Nicholas J. Santoro_
Nicholas J. Santoro (NV Bar No. 532)
300 S. 4th Street, Suite 1600
Las Vegas, NV 89101
Tel.: (702) 791-0308 / Fax: (702) 791-1912
nsantoro@nevadafirm.com

Arman Oruc (_pro hac vice forthcoming_)
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036-1612
Tel.: (202) 346-4000 / Fax: (202) 346-4444
AOruc@goodwinlaw.com

Alicia Rubio-Spring (_pro hac vice_)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02110
Tel.: (617) 570-1000 / Fac: (617) 523-1231
ARubio-Spring@goodwinlaw.com

_Attorneys for Defendant The Rainmaker Group_
_Unlimited, Inc._

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

PRELIMINARY STATEMENT ............................................................................................ 1

THE COMPLAINT'S ALLEGATIONS ................................................................................ 3

    I.      The Rainmaker/Cendyn Revenue Management Software Products ...................... 3

    II.     Allegations About the Las Vegas Strip and Hotel Defendants ............................ 4

    III.    The Alleged Conspiracy Among Hotel Defendants To Use the Revenue Management Products ......................................................................................... 5

ARGUMENT ................................................................................................................... 6

    I.      PLAINTIFFS FAIL TO ANSWER THE "BASIC QUESTIONS" REQUIRED BY THE NINTH CIRCUIT TO ALLEGE AN ANTITRUST CONSPIRACY ....................................................................................... 7

    II.     PLAINTIFFS FAIL TO ALLEGE DIRECT OR CIRCUMSTANTIAL EVIDENCE OF THE PURPORTED CONSPIRACY ........................................10

          A.     Plaintiffs Plead No Direct Evidence of a Conspiracy ..............................11

          B.     Plaintiffs Do Not Plausibly Allege Circumstantial Evidence of a Conspiracy ...........................................................................................13

                1.     The Complaint Fails To Allege Parallel Conduct ........................13

                2.     Plaintiffs' "Plus Factors" Are Irrelevant And Do Not Plausibly Suggest a Conspiracy ....................................................16

CONCLUSION ................................................................................................................20

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**                                                   **PAGE(S)**

*Alvarado v. Western Range Association*,
22-CV-00249 (MMD), ECF No. 43, Order Denying Motion to Dismiss (D. Nev. Mar. 21, 2023) ................................................................................ 12, 14

*Aquilina v. Certain Underwriters at Lloyd's*,
407 F. Supp. 3d 978 (D. Haw. 2019) ........................................................ 14

*Ascon Properties, Inc. v. Mobil Oil Co.*,
866 F.2d 1149, 1161 (9th Cir. 1989) ........................................................ 20

*B & R Supermarket, Inc. v. Visa, Inc.*,
No. 16-CV-01150 (WHA), 2016 WL 5725010 (N.D. Cal. Sept. 30, 2016) ...................... 12

*Bay Area Surgical Management LLC v. Aetna Life Insurance Co.*,
166 F. Supp. 3d 988 (N.D. Cal. 2015) ................................................ 7, 8, 9

*Bell Atlantic Co. v. Twombly*,
550 U.S. 544 (2007) .......................................................................... 6, 9

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
691 F. App'x 389 (9th Cir. 2017) ..................................................... 7, 13, 16

*In re Citric Acid Litigation*,
191 F.3d 1090 (9th Cir. 1999) ......................................................... 12, 18

*Cosmetic Gallery, Inc. v. Schoeneman Corp.*,
495 F.3d 46 (3d Cir. 2007) ................................................................... 18

*Credit Bureau Services, Inc. v. Experian Information Solutions, Inc.*,
No. 12-CV-2146 (JGB), 2013 WL 3337676 (C.D. Cal. June 28, 2013) ...................... 8, 9

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011) ................................................................. 14

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ............................................................. 13, 19

*Evanston Police Pension Fund v. McKesson Corp.*,
411 F. Supp. 3d 580 (N.D. Cal. 2019) ....................................................... 17

*Frost v. LG Electronics, Inc.*,
801 F. App'x 496 (9th Cir. 2020) ............................................................ 12

*In re German Automotive Manufacturers Antitrust Litigation*,
392 F. Supp. 3d 1059 (N.D. Cal. 2019) ...................................................... 10

ii

*In re Graphics Processing Units Antitrust Litigation*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ...................................................... 13, 14

*In re GSE Bonds Antitrust Litigation*,
   396 F. Supp. 3d 354 (S.D.N.Y. 2019) ...................................................... 12, 15

*In re High Fructose Corn Syrup Antitrust Litigation*,
   295 F.3d 651 (7th Cir. 2002) .................................................................. 11, 12

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litigation*,
   28 F.4th 42 (9th Cir. 2022) ...................................................................... 6, 17

*In re Insurance Brokerage Antitrust Litigation*,
   618 F.3d 300 (3d Cir. 2010) .......................................................................... 11

*International Norcent Technology v. Koninklijke Philips Electronics N.V.*,
   No. 07-CV-00043 (MMM), 2007 WL 4976364 (C.D. Cal. Oct. 29, 2007), *aff'd*, 323
   F. App'x 571 (9th Cir. 2009) ........................................................................... 8

*Jones v. Micron Technology Inc.*,
   400 F. Supp. 3d 897 (N.D. Cal. 2019) ........................................................... 17

*Kelsey K. v. NFL Enterprises, LLC*,
   254 F. Supp. 3d 1140 (N.D. Cal 2017), *aff'd*, 757 F. App'x 524 (9th Cir. 2018) ......... 10, 13

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ............................................................... *passim*

*Kingray, Inc. v. NBA, Inc.*,
   188 F. Supp. 2d 1177 (S.D. Cal. 2002) ............................................................. 8

*In re Late Fee & Over-Limit Fee Litigation*,
   528 F. Supp. 2d 953 (N.D. Cal. 2007), *aff'd*, 741 F.3d 1022 (9th Cir. 2014) ......... 8

*Mayor & City Council of Baltimore, Maryland v. Citigroup, Inc.*,
   709 F.3d 129 (2d Cir. 2013) .......................................................................... 12

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (N.D. Cal. 2012) ............................................................ 8

*In re National Association of Music Merchants*,
   MDL No. 2121, 2012 WL 3637291 (S.D. Cal. Aug. 20, 2012), *aff'd sub nom.*, *In re
   Musical Instruments & Equipment Antitrust Litigation*, 798 F.3d 1186 (9th Cir.
   2015) ........................................................................................................ 18

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
   911 F.3d 505 (8th Cir. 2018) ................................................................... 13, 16

*In re Pork Antitrust Litigation*,
   No. 18-CV-1776 (JRT), 2019 WL 3752497 (D. Minn. Aug. 8, 2019) ................. 16

iii

*In re Musical Instruments & Equipment Antitrust Litigation*,
     798 F.3d 1186 (9th Cir. 2015) ................................................................... *passim*

*Rheumatology Diagnostics Laboratory, Inc. v. Aetna, Inc.*,
     No. 12-CV-05847 (WHO), 2013 WL 5694452 (N.D. Cal. Oct. 18, 2013) ........................ 11

*Rick–Mik Enterprises, Inc. v. Equilon Enterprises, LLC*,
     532 F.3d 963 (9th Cir. 2008) ......................................................................... 8

*Stanislaus Food Products Co. v. USS-POSCO Industries*,
     782 F. Supp. 2d 1059 (E.D. Cal. 2011) ............................................................. 8

*In re Travel Agent Commission Antitrust Litigation*,
     583 F.3d 896 (6th Cir. 2009) ....................................................................... 18

*William O. Gilley Enterprises, Inc. v. Atlantic Richfield Co.*,
     588 F.3d 659 (9th Cir. 2009) ........................................................................ 8

*Williamson Oil Co. v. Philip Morris USA*,
     346 F.3d 1287 (11th Cir. 2003) .................................................................... 18

## OTHER AUTHORITIES

Paul Szydelko, *Room rates are through the roof in Las Vegas. What's behind the surge?*,
     Travel Weekly, (Nov. 15, 2022), https://www.travelweekly.com/North-America-
     Travel/Insights/Las-Vegas-hotel-room-rates-set-a-record-in-September ....................... 4, 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Plaintiffs fail to answer any of the "basic questions" that the Ninth Circuit requires to plausibly allege an antitrust conspiracy in violation of Section 1 of the Sherman Act—that is, "who, did what, to whom (or with whom), where, and when?" *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008). Plaintiffs purport to represent a class of individuals who rented hotel rooms on the Las Vegas Strip, and they bring a single claim alleging that Hotel Defendants somehow conspired to use one or more of the revenue management products offered by defendants Rainmaker/Cendyn.[1] But plaintiffs fail to allege virtually any facts regarding that purported conspiracy, let alone enough to pass muster under the pleading standards set forth in *Kendall* and other controlling precedent.

<u>First</u>, the complaint fails at the outset because it is missing every essential ingredient necessary to plead an antitrust conspiracy under Ninth Circuit law. The complaint fails to identify any individual "who" entered into the purported conspiracy. The complaint not only fails to allege "when" the purported conspiracy began, but it also concedes that plaintiffs have no idea when it began. The complaint similarly lacks allegations regarding "what" the Hotel Defendants agreed to, how the purported agreement operates, or how defendants monitor or enforce the purported agreement. Plaintiffs fail to even allege that Hotel Defendants agreed to use the same revenue management product at the same time at their hotels on the Las Vegas Strip. Instead, plaintiffs resort to generic allegations about algorithms and allegations about hotels that are thousands of miles away from the Las Vegas Strip. Courts have repeatedly dismissed antitrust claims for failing to plead the details that are missing here because such barebones complaints are "almost impossible to defend against, particularly where the defendants are large institutions." *Id.* at 1047.

<u>Second</u>, plaintiffs fail to meet their burden to plead facts reflecting direct or circumstantial evidence to plausibly suggest an illegal agreement among competitors. The complaint does not plead any direct evidence of a conspiracy. Indeed, there is not even a single alleged communication between any Hotel Defendants, much less any communication that directly

---

[1] Hotel Defendants are Caesars, Treasure Island, MGM, and Wynn.

establishes an agreement between or among Hotel Defendants.

Plaintiffs similarly fail to plead facts to support a plausible inference of conspiracy through circumstantial evidence.  Plaintiffs do not plead that Hotel Defendants acted in parallel—i.e., that they engaged in the same conduct at the same time such that a conspiracy can be inferred.  For instance, plaintiffs do not allege that each Hotel Defendant began using—or ever used—any revenue management product at the same time.  Nor do plaintiffs allege facts plausibly suggesting that Hotel Defendants used the same revenue management product, or ever adopted the "pricing recommendations" offered by the Rainmaker/Cendyn revenue management products for their hotels on the Las Vegas Strip, much less at the same time.  Plaintiffs do not allege facts plausibly suggesting that Hotel Defendants raised room prices at the same time, or that they shifted their pricing as a result of using any of the revenue management products.  And plaintiffs' generic allegations regarding algorithms and non-defendant hotels' purported use of revenue management products thousands of miles away from the Strip add nothing to their claim here and only underscore that similar allegations regarding Hotel Defendants' use of those products are missing from the complaint.

Because the complaint pleads no parallel conduct, plaintiffs' alleged "plus factors" are irrelevant as a matter of law.  Moreover, they are incapable of supporting plaintiffs' claim under controlling precedent.  If anything, the complaint alleges several reasons why a hotel might independently—and lawfully—choose to use Rainmaker/Cendyn's revenue management products:  Those products were allegedly advertised as enabling hotels to (1) optimize their revenue management decisions and (2) forecast and manage demand more efficiently.

In short, because an agreement is an essential element of plaintiffs' sole claim for violation of the Sherman Act, their inability to plead facts plausibly suggesting an agreement among Hotel Defendants compels dismissal of the complaint.

**THE COMPLAINT'S ALLEGATIONS**

**I.      The Rainmaker/Cendyn Revenue Management Software Products**

Plaintiffs allege that defendant Rainmaker "operates as a wholly owned subsidiary" of defendant Cendyn since August 2019, and that it provides software and services to hotels nationwide.  (ECF No. 1 ¶¶ 4, 24, 30, 51.)[2]  The complaint discusses three distinct Rainmaker "revenue management software" products that allegedly assist hotels in forecasting and managing demand and pricing: GuestRev, RevCaster, and GroupRev (collectively, the "Revenue Management Products").  (*Id. ¶* 11.)  These Revenue Management Products allegedly allow hotels that use them to increase their revenues and profitability, including by "up to 15%" at certain unidentified hotels.  (*Id*. ¶¶ 24, 52.)  Foxwoods, a non-party Rainmaker client with hotels in New England, allegedly reported producing 70% of the prior year's revenue from 50% of the volume during the market downturn caused by COVID-19.  (*Id. ¶* 24.)

The complaint relies on three unidentified purported former Rainmaker employees (who plaintiffs claim are "confidential witnesses") to allege the workings of the Revenue Management Products.  For instance, plaintiffs allege that Rainmaker collects data from subscribing hotels, that subscribing hotels "would tell Rainmaker who their competitors were," and that the algorithms offered by the Revenue Management Products could then be "designed to forecast and recommend" hotel room rates for "individual travelers" and forecast "the dollar amount that those visitors were likely to spend at the casino."  (*Id.* ¶¶ 7, 12, 14-15, 22, 56-59.)  One "confidential witness" supposedly stated that unidentified Rainmaker "products are used by 90% of the hotels on the Las Vegas Strip."  (*Id.* ¶ 7.)  The "confidential witnesses" do not identify the information that subscribing hotels receive from the Revenue Management Products.  Those "confidential witnesses" also do not claim that subscribing hotels receive any non-public information about their competitors from the Revenue Management Products.  Similarly, the complaint does not allege that any of the Revenue Management Products' pricing recommendations for any hotel's rooms were based on confidential or non-public information provided by any other hotel.

---

[2]  Although this statement is factually inaccurate, as explained to plaintiffs prior to this filing, defendants accept it (and the other facts alleged in the complaint) as true for purposes of this motion only.  Defendants reserve the right to challenge plaintiffs' allegations in the future.

## II.    Allegations About the Las Vegas Strip and Hotel Defendants

The Las Vegas Strip "welcomes 42 million visitors every year" and, in 2022, it "was the number one most popular destination that Americans plan to visit." (*Id.* ¶ 40.)  Hotels on the Strip offer guests "access to casinos, concert events, and shopping," which are allegedly "as much a part of their experience as the room they rent." (*Id.*)  Defendants Caesars, Treasure Island, Wynn, and MGM operate approximately 20 hotels on the Las Vegas Strip.  (*Id.* ¶¶ 28, 31-33, 43.)  Beyond those allegations, the complaint does not offer any information regarding each Hotel Defendant's amenities, room rates, guest profiles, or occupancy rates for their hotels on the Strip.  Nor does the complaint allege how each of those attributes compares across the Hotel Defendants' Las Vegas Strip hotels.  For instance, the complaint does not allege any facts suggesting that a prospective guest would book a room at Treasure Island if a room at the Wynn was unavailable.

According to the complaint, "[s]ince gaming revenue is . . . significantly higher than room revenue," casino hotels have historically "over-discount[ed] and comp[ed] rooms without real-time data to back up those decisions." (*Id.* ¶ 45.)  The Revenue Management Products allegedly assist casino hotels in "back[ing] up" those decisions.  (*Id.*)  The complaint does not identify which Revenue Management Product (if any) any Hotel Defendant used or allege that any Hotel Defendant ever adopted that Revenue Management Product's pricing recommendations.

Nor are there any allegations that subscribing hotels are required to use the room rates recommended by the Revenue Management Products.  While the complaint cites Rainmaker promotional materials allegedly stating that recommendations from GuestRev are accepted 90% of the time across all hotel subscribers nationwide (*see id.* ¶ 12), the complaint does not identify the frequency (if any) with which hotels on the Las Vegas Strip adopt GuestRev's (or any other Revenue Management Product's) pricing recommendations.  The complaint is also silent about when any Hotel Defendant began subscribing to a Revenue Management Product, except that it cites an article suggesting that a Treasure Island employee commented on one of those products in 2012.  (*Id.* ¶ 16.)

Plaintiffs do not allege what rate any (let alone each) Hotel Defendant charged for a room on the Las Vegas Strip.  Instead, plaintiffs allege that "Travel Weekly found that Las Vegas visitors

4

'paid the highest average daily room rate (ADR) in the city's history in September [2022], a trend that will likely continue.'" (*Id.* ¶ 23.)  This Travel Weekly article identifies several factors driving the Las Vegas-wide increase, including pent-up demand from post-pandemic travel and an increasing number of sporting and special events, such as music festivals and the Oakland Raiders relocating to Las Vegas.[3]  The article also explains that hotels on the Strip face rising inflation-driven costs.[4]

III.   **The Alleged Conspiracy Among Hotel
       <u>Defendants To Use the Revenue Management Products</u>**

The complaint alleges that, "[b]eginning at a time currently unknown to [p]laintiffs," Hotel Defendants agreed "to use pricing algorithms provided by Rainmaker Group." (*Id.* ¶¶ 87-89.)  The complaint does not identify which, if any, algorithm Hotel Defendants allegedly "agreed" to use.  It also does not identify how the supposed agreement among Hotel Defendants was formed or which employees reached it.  Nor does the complaint allege how the purported agreement has operated or has been monitored and enforced.

The complaint also does not identify any communication between or among Hotel Defendants about the Revenue Management Products, room rates, or anything else.  Although the complaint alleges that Hotel Defendants supposedly "understand" or "probably knew" that their competitors "participate in and contribute data to" the Revenue Management Products (*id.* ¶¶ 10, 22, 74), the complaint does not allege that any Hotel Defendant began using a Revenue Management Product because another Hotel Defendant was using it.

Instead, the complaint alleges that Rainmaker hosted an in-person annual user conference where unidentified hotel and Rainmaker executives had the opportunity to "network, exchange insights and ideas, and discuss revenue management tools and new products coming." (*Id.* ¶ 74.)  Plaintiffs allege that hotels would "typically send employees from their revenue management teams" (*id.*), but do not allege that any Hotel Defendant attended any particular conference.

---

[3]  Paul Szydelko, *Room rates are through the roof in Las Vegas. What's behind the surge?*, Travel Weekly,  (Nov. 15, 2022), https://www.travelweekly.com/North-America-Travel/Insights/Las-Vegas-hotel-room-rates-set-a-record-in-September.

[4] *Id.*

1    Plaintiffs also allege that the purported features of the market structure of the Las Vegas

2  Strip constitute "plus factors" that render a conspiracy more likely, including high barriers to entry

3  (*id.* ¶ 70), high market concentration (*id.* ¶ 71), inelastic consumer demand (*id.* ¶ 72), and the

4  relative fungibility of hotel rooms (*id.* ¶ 73).

5                                              **ARGUMENT**

6    The complaint does not plausibly state its sole claim of conspiracy in violation of Section 1

7  of the Sherman Act.  For a Section 1 claim, "[t]he crucial question is whether the challenged

8  anticompetitive conduct 'stem[s] from independent decision or from an agreement.'"  *Bell Atl. Co.*

9  *v. Twombly*, 550 U.S. 544, 553 (2007) (alterations in original) (citation omitted).  "Therefore, a

10  claim brought under Section 1 must contain sufficient factual matter, taken as true, to plausibly

11  suggest that an illegal agreement was made."  *In re Dynamic Random Access Memory (DRAM)*

12  *Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 46 (9th Cir. 2022) (citing *Twombly*, 550 U.S. at

13  556).  Bare conclusions that defendants reached an "agreement" can be discarded, and allegations

14  that "are no more consistent with an illegal agreement than with rational and competitive business

15  strategies, independently adopted by firms . . . are insufficient."  *In re Musical Instruments &*

16  *Equip. Antitrust Litig.*, 798 F.3d 1186, 1189 (9th Cir. 2015) (citing *Twombly*, 550 U.S. at 557).

17  Allegations that defendants engaged in "parallel conduct" are also insufficient to infer an

18  agreement because parallel conduct "could just as well be lawful independent action."  *In re*

19  *DRAM*, 28 F.4th at 47 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

20    In applying those principles, the Ninth Circuit requires "plaintiffs bringing a claim under

21  Section 1 of the Sherman Act" to plead "something more . . . that places their allegations of parallel

22  conduct in a context suggesting a preceding agreement."  *Id.* at 45 (quoting *Twombly*, 555 U.S. at

23  557).  This "higher standard is warranted by practical considerations in antitrust cases, where

24  proceeding to discovery 'frequently causes substantial expenditures and gives the plaintiff the

25  opportunity to extort large settlements even where he does not have much of a case.'"  *Id.* at 47

26  (emphasis added) (quoting *Kendall*, 518 F.3d at 1047); *see also Twombly*, 550 U.S. at 558 ("[I]t is

27  one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite

28  another to forget that proceeding to antitrust discovery can be expensive." (citation omitted)).

1    To meet these pleading standards, plaintiffs must allege either direct evidence of a

2  conspiracy or rely on circumstantial evidence by alleging parallel conduct combined with "plus

3  factors." *Musical Instruments*, 798 F.3d at 1193.  But no matter which path plaintiffs choose,

4  plaintiffs must answer *Kendall*'s questions about the particulars of the alleged conspiracy.

5  *Kendall*, 518 F.3d at 1048.

6    Here, the complaint fails at the outset because it does not answer *Kendall*'s "basic

7  questions"—"who, did what, to whom (or with whom), where, and when?" *Id.*  Indeed, as

8  explained below, plaintiffs fail to identify which Revenue Management Product any Hotel

9  Defendant used (if any), when or how any Hotel Defendant used it (if ever), what information was

10  shared (if any), or whether any Hotel Defendant actually adopted any Revenue Management

11  Product's pricing recommendations.  The complaint fails to identify a single communication

12  between Hotel Defendants, much less one that suggests a conspiracy was afoot.  Unsurprisingly,

13  the complaint likewise fails to plead any direct or circumstantial evidence of a conspiracy.

14  **I.    PLAINTIFFS FAIL TO ANSWER THE "BASIC QUESTIONS" REQUIRED**
15  **     BY THE NINTH CIRCUIT TO ALLEGE AN ANTITRUST CONSPIRACY**

16    The complaint should be dismissed because it fails to answer the mandatory pleading

17  questions established by the Ninth Circuit.  "To withstand a motion to dismiss under Federal Rule

18  of Civil Procedure 12(b)(6)," an antitrust plaintiff must answer "'basic questions' such as 'who, did

19  what, to whom (or with whom), where, and when?'" *Bona Fide Conglomerate, Inc. v.*

20  *SourceAmerica*, 691 F. App'x 389, 390 (9th Cir. 2017) (quoting *Kendall*, 518 F.3d at 1048).  That

21  requirement means that "the complaint must allege facts such as a 'specific time, place, or person

22  involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a

23  conspiracy an idea of where to begin." *Kendall*, 518 F.3d at 1047 (quoting *Twombly*, 550 U.S. at

24  565 n.10).

25    District courts regularly dismiss Section 1 claims that fail to answer *Kendall*'s pleading

26  questions.  For example, in *Bay Area Surgical Management LLC v. Aetna Life Insurance Co.*, 166

27  F. Supp. 3d 988 (N.D. Cal. 2015), the plaintiffs alleged a conspiracy among three insurers based on

28  a "continuous stream of communications" and "numerous writings, conversations and meetings."

*Id.* at 995-96.  The plaintiffs argued that their complaint answered *Kendall*'s questions because: the "who" was the three defendant insurers; the "when" was "early 2010 and continuing thereafter"; and the "what" was restraining competition in the relevant market.  *Id.* at 995.  In dismissing the complaint, the district court held that these "'what,' 'who,' 'where,' and 'when' are" so "lacking in factual support" that they would "be impossible to defend against."  *Id.*; *see also Credit Bureau Servs.*, *Inc. v. Experian Info. Sols., Inc.*, No. 12-CV-2146 (JGB), 2013 WL 3337676, at *8 (C.D. Cal. June 28, 2013) (dismissing complaint that "fail[ed] to put forth any facts indicating where, when, or who participated in the alleged agreement between Defendants"); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1104 (N.D. Cal. 2012) (dismissing claim that alleged agreements, but not "whether such agreements are written, oral or tacit, when they were executed, who made the decisions, or with which [companies] such agreements were made").[5]

Plaintiffs here likewise fail to meet their *Kendall* pleading burden.  First, plaintiffs do not allege "who" entered into the supposed conspiracy because the complaint does not identify any personnel from any defendant who purportedly entered into the conspiracy.  *See Kendall*, 518 F.3d at 1047 (holding that bare allegation that "banks" entered into alleged conspiracy was insufficient because banks "are large institutions with hundreds of employees entering into contracts and agreements daily"); *Bay Area Surgical Mgmt.*, 166 F. Supp. 3d at 995 ("[S]imply alleging that E3,

---

[5]  *See also William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 669 (9th Cir. 2009) ("Despite its length and detail, the SAC does not clearly assert which individual agreement or agreements constitute in themselves a 'contract . . . by which the persons or entities intended to harm or restrain trade.'"  (alteration in original) (quoting *Kendall*, 518 F.3d at 1047)); *Rick-Mik Enters. Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 976 (9th Cir. 2008) (affirming dismissal of Section 1 claims where "[a]ll that is alleged is there was an agreement on price . . . . The nature of the conspiracy or agreement is not alleged.  The type of agreements are not alleged."); *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007) (affirming dismissal of Section 1 claim because the complaint included "several conclusory allegations that the defendants agreed to increase late fees, but [provided] no details as to when, where, or by whom this alleged agreement was reached"), *aff'd*, 741 F.3d 1022 (9th Cir. 2014); *Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1075 (E.D. Cal. 2011) ("Here, the Court finds that plaintiff's allegations of the Market Allocation Agreement are conclusory and non-specific.  Plaintiffs' allegations do not put Defendants on notice with enough sufficiency to form the basis for a response."); *Kingray, Inc. v. NBA, Inc.*, 188 F. Supp. 2d 1177, 1188 (S.D. Cal. 2002) (allegations that defendants "[c]ontracted, conspired, and agreed to set . . . prices . . . using a vertical price-fixing scheme" were conclusory and insufficient to withstand a motion to dismiss); *Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, No. 07-CV-00043 (MMM), 2007 WL 4976364, at *10 (C.D. Cal. Oct. 29, 2007) (plaintiff "has not alleged when the purported agreement was made . . . who made the decision, how it was made or what the parameters of the agreement were"), *aff'd*, 323 F. App'x 571 (9th Cir. 2009).

1  Aetna, and United conspired is not a sufficient allegation of the 'who'[] [because] Defendant

2  Insurers are large organizations . . . .").  Even though plaintiffs claim access to three former

3  Rainmaker employees, the complaint fails to identify any employee from any Hotel Defendant who

4  adopted any price recommended by any Revenue Management Product for any hotel room on the

5  Las Vegas Strip at any time, let alone who formed (or participated in) the purported conspiracy.

6  (*See* ECF No. 1 ¶¶ 16, 21.)

7        Second, plaintiffs do not allege "when" the purported conspiracy was formed, a deficiency

8  that plaintiffs <u>concede</u> with their allegation that the conspiracy "beg[an] at a time currently

9  unknown."  (*Id.* ¶ 87.)  The complaint is equally deficient and unclear about when Hotel

10  Defendants allegedly began subscribing to a Revenue Management Product for any of their hotels

11  on the Las Vegas Strip, referring only to a source from 2012 relating to Treasure Island (*see id.* ¶

12  16 & n.7) but later claiming room rates increased in 2022 (*id.* ¶ 23).  Just as "early 2010 and

13  continuing thereafter" was insufficient to state a claim in *Bay Area Surgical*, 166 F. Supp. 3d at

14  995, plaintiffs' inability to identify the timing of any purported conspiracy here likewise fails to

15  meet the *Kendall* standard.

16        Third, plaintiffs fail to allege "what" Hotel Defendants did to form an agreement, how any

17  supposed agreement would operate, or how defendants monitor or enforce compliance with any

18  such agreement.  Plaintiffs' failure is particularly glaring because they do not allege <u>any</u>

19  communication between Hotel Defendants—not a single call, email, or text message.  *See Credit*

20  *Bureau Servs.*, 2013 WL 3337676, at *8 (dismissing complaint in which "[n]one of the factual

21  allegations demonstrate that anyone at CoreLogic ever communicated with or even was in the same

22  room as anyone at Experian, let alone that their communications involved an illicit agreement").

23  Plaintiffs' conclusory allegations that there was an "agreement among Defendants to use pricing

24  algorithms provided by Rainmaker Group" (ECF No.1 ¶ 88; *see also id.* ¶ 3) are just a "bare

25  assertion of conspiracy" that "will not suffice."  *Twombly*, 550 U.S. at 556; *see also id.* at 552

26  (holding allegations that the defendants "have entered into a contract, combination or conspiracy to

27  prevent competitive entry in their respective local telephone and/or high speed internet services

28  markets" were insufficient); *Kendall*, 518 F.3d at 1047-48 (affirming dismissal because "appellants

9

1  pleaded only ultimate facts, such as conspiracy, and legal conclusions").

2  At most, plaintiffs rely on allegations from unnamed former Rainmaker employees, who

3  allegedly stated that "Caesars probably knew [Rainmaker was] in the Cosmopolitan and vice

4  versa" (ECF No. 1 ¶ 22) and identified the existence of an annual user conference (*id.* ¶ 74).  Those

5  allegations, however, are plainly insufficient.  What unidentified employees "probably knew"

6  about software being used at other hotels is, on its face, speculation—and, in any event, not

7  evidence of any agreement among Hotel Defendants to use any particular software or Rainmaker

8  product.  As to the annual user conference, nowhere does the complaint allege that any Hotel

9  Defendant (let alone each) attended any specific meeting or event, that Hotel Defendants ever met

10  with each other, or what (if anything) they discussed—much less that any or all of them reached

11  any agreement at such a meeting.  *See Kelsey K. v. NFL Enters., LLC*, 254 F. Supp. 3d 1140, 1144

12  (N.D. Cal. 2017) (dismissing complaint because it failed to "provide the details . . . regarding some

13  actual conspiratorial meeting, communication, or agreement"), *aff'd*, 757 F. App'x 524 (9th Cir.

14  2018); *see also id.* ("[O]ur court of appeals refused to infer conspiracy from the mere fact that trade

15  associations gathered information about pricing and competition because such activities constituted

16  'standard fare' . . . .") (citing *In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999)); *In re*

17  *German Auto. Mfrs. Antitrust Litig.*, 392 F. Supp. 3d 1059, 1071-72 (N.D. Cal. 2019) (rejecting

18  trade association allegations where plaintiffs "almost never identify what was agreed to in these

19  meetings and instead only vaguely refer to 'clandestine agreements to limit technological

20  innovation'").

21  Thus, because the complaint fails to answer the "basic questions" posed by *Kendall*, it fails

22  to state a plausible claim, and the Court should dismiss the complaint for this reason alone.

23  **II.    PLAINTIFFS FAIL TO ALLEGE DIRECT OR**

24  **CIRCUMSTANTIAL EVIDENCE OF THE PURPORTED CONSPIRACY**

25  Even if plaintiffs' failure to answer *Kendall*'s "basic questions" could be set aside, their

26  complaint should still be dismissed because it lacks allegations reflecting direct or circumstantial

27  evidence of a conspiracy among Hotel Defendants.  Under Section 1 of the Sherman Act,

28  agreements that are "made up and down a supply chain, such as between a manufacturer and a

retailer," are considered vertical agreements, and agreements that are made among competitors are considered horizontal agreements. *Musical Instruments*, 798 F.3d at 1191. Pleading a "hub-and-spoke" conspiracy involves both vertical and horizontal agreements, requiring plaintiffs to allege: "(1) a hub . . .; (2) spokes, such as competi[tors] that enter into vertical agreements with the hub; and (3) the rim of the wheel, which consists of horizontal agreements among the spokes." *Id.* at 1192 (affirming dismissal because the plaintiffs failed to plead facts supporting an inference of a horizontal agreement among the spoke competitors). In a "hub-and-spoke" claim, the "key agreements are those among the defendant [spokes]" because the claim "depends on establishing those horizontal agreements" among competitors. *Id.* at 1193; *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 327 (3d Cir. 2010) ("[T]he critical issue for establishing a per se violation with the hub and spoke system is how the spokes are connected to each other." (alteration in original) (citation omitted)); *Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*, No. 12-CV-05847 (WHO), 2013 WL 5694452, at *10 (N.D. Cal. Oct. 18, 2013) ("[T]he FAC only alleges individual agreements between each insurer and Quest. There is no sufficiently pleaded horizontal agreement.").

Plaintiffs' theory appears to be that Rainmaker (the "hub") entered into vertical agreements with each Hotel Defendant (the "spokes") to license one or more of the Revenue Management Products. The agreement that plaintiffs challenge is a purported horizontal "agreement among Defendants to use pricing algorithms provided by Rainmaker." (ECF No. 1 ¶ 88.) But as explained below, plaintiffs do not allege direct or circumstantial evidence plausibly suggesting a horizontal agreement among Hotel Defendants to use any Revenue Management Product.[6]

### A.   Plaintiffs Plead No Direct Evidence of a Conspiracy

Plaintiffs plead nothing resembling direct evidence because no allegations directly establish that Hotel Defendants agreed to use any Revenue Management Product. Direct evidence is

---

[6] While plaintiffs fail to identify any vertical agreement between Rainmaker and/or Cendyn and a hotel licensing any particular Revenue Management Product, they also do not challenge any such agreement as unlawful. That is because any such agreement is vertical, and any alleged restraint resulting from each individual agreement would need to be analyzed separately. *See Musical Instruments*, 798 F.3d at 1192 & n.3. And the complaint does not plead any facts or even claim that any individual licensing agreement between Rainmaker and a hotel harms competition.

"tantamount to an acknowledgment of guilt," *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002), because it establishes a conspiracy "without requiring any inferences," *In re Citric Acid Litig.*, 191 F.3d at 1093-94 (citing *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999)).  Pleading direct evidence is a steep burden because it requires alleging "smoking gun[s]," such as "a recorded phone call in which two competitors agreed to fix prices at a certain level," *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013), or an executive's statement that some defendants got "in a room and work[ed] together" to reach an illegal agreement, *B & R Supermarket, Inc. v. Visa, Inc*., No. 16-CV-01150 (WHA), 2016 WL 5725010, at *7 (N.D. Cal. Sept. 30, 2016); *see also Alvarado v. Western Range Ass'n*, 22-CV-00249 (MMD), ECF No. 43, Order Denying Motion to Dismiss (D. Nev. Mar. 21, 2023), at *13 (concluding that employee's testimony established direct evidence of agreement to fix wages).

Here, far from pleading direct evidence of the alleged agreement among Hotel Defendants, plaintiffs allege that they do not know when or how the purported conspiracy was formed.  Nor do the complaint's alleged statements from three supposed former Rainmaker employees, characterized as "confidential witnesses," come close to establishing an agreement among Hotel Defendants to use any Revenue Management Product.  Instead, the statements attributed to those individuals merely allege some aspects of how the Revenue Management Products supposedly work (ECF No. 1 ¶¶ 7-16, 22, 24, 57-59, 71, 74-75), but they say nothing about the purported conspiracy among Hotel Defendants, *see Frost v. LG Elecs., Inc.*, 801 F. App'x 496, 498 (9th Cir. 2020) ("[Plaintiffs] rely on various statements made by defendants' employees . . . as direct evidence of agreement.  But each of these statements requires inferences in order to support the existence of a conspiracy and are, therefore, not direct evidence."); *In re GSE Bonds Antitrust Litig.*, 396 F. Supp. 3d 354, 364 (S.D.N.Y. 2019) ("[Plaintiffs] allege[] that a 'cooperating co-conspirator' has provided examples of price-fixing conversations . . . [b]ut this unadorned allegation, without any specifics, cannot salvage the pleading against these defendants.").  Indeed, none of the statements attributed to the "confidential witnesses" even hint—let alone directly state—that Hotel Defendants agreed to each use any Revenue Management Product, agreed to

1   follow those Products' pricing suggestions even once, or ever shared any confidential information.

2   Accordingly, none of plaintiffs' allegations provide direct evidence supporting their claim that

3   Hotel Defendants agreed to use the Revenue Management Products.

4         **B.**    **Plaintiffs Do Not Plausibly Allege Circumstantial Evidence of a Conspiracy**

5         The complaint also fails to plead any facts that reflect the type of circumstantial evidence

6   that could plausibly suggest an agreement among Hotel Defendants to use the Revenue

7   Management Products or conspire in any manner.  To support a claim based on circumstantial

8   evidence, a plaintiff must plead facts demonstrating both (1) "parallel conduct" and (2) "plus

9   factors." *Musical Instruments*, 798 F.3d at 1193-94.  If a complaint fails to plausibly allege parallel

10  conduct, "'plus factors' are . . . irrelevant to determining whether the complaint made out a viable

11  Section 1 claim." *Bona Fide Conglomerate*, 691 F. App'x at 391.  But even if a complaint pleads

12  parallel conduct, it must also allege "plus factors" that "tend to exclude a plausible and innocuous

13  alternative explanation" for the defendants' conduct.  *Eclectic Props. E., LLC v. Marcus &*

14  *Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014) (affirming dismissal); *see also Kelsey K.*, 254 F.

15  Supp. 3d at 1144 (holding that when a "plaintiff relies solely on circumstantial evidence of

16  conspiracy, she must allege facts tending to exclude the possibility that defendants acted

17  independently").

18        Dismissal is warranted here because plaintiffs fail to plead parallel conduct or plus factors.

19          1.    The Complaint Fails To Allege Parallel Conduct

20        Pleading parallel conduct requires plaintiffs to allege that defendants contemporaneously

21  engaged in conduct so similar that a conspiracy can be inferred—for instance, that "competitors

22  adopt[ed] similar policies around the same time." *Musical Instruments*, 798 F.3d at 1193.  By

23  contrast, courts routinely conclude that gradual or "slow adoption of similar policies does not raise

24  the specter of collusion." *Id.* at 1196 (holding that adopting pricing policies "over a period of

25  several years" was insufficient to plead parallel conduct); *see also Park Irmat Drug Corp. v.*

26  *Express Scripts Holding Co.*, 911 F.3d 505, 516-17 (8th Cir. 2018) (holding that plaintiffs failed to

27  plead parallel conduct because alleged actions took place six months apart); *In re Graphics*

28  *Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1022 (N.D. Cal. 2007) (explaining that

1  allegations of parallel conduct "are not so convincing" because allegedly simultaneous conduct

2  occurred only within the same month or within a three-month period).

3       The complaint here fails to plead <u>any</u> parallel conduct.  Plaintiffs do not allege that Hotel

4  Defendants ever subscribed to the same Revenue Management Product or that Hotel Defendants

5  did so at the same time.  At best, the complaint suggests that Treasure Island began using Revenue

6  Management Products by 2012.  (*See* ECF No. 1 ¶ 16 & n.7 (quoting a Treasure Island employee's

7  description of Rainmaker in 2012).)  But the complaint pleads no facts about when (if at all)

8  Caesars, MGM, or Wynn began using a Revenue Management Product for their hotels on the Las

9  Vegas Strip, let alone that they used the same Revenue Management Product at the same time.  *Cf.*

10  *Alvarado*, ECF No. 43, Order Denying Motion to Dismiss, at *12 ("The Court finds that Plaintiffs

11  have adequately established parallel conduct by alleging that WRA's members contemporaneously

12  offer wages to sheepherders largely at the minimum allowable wage, which is supported by factual

13  allegations of a review of recent and current job orders for domestic sheepherders posted by

14  Defendant and H-2A applications for foreign sheepherders submitted by Defendant.").

15       The complaint is equally devoid of allegations that <u>any</u> (let alone all) Hotel Defendants

16  adopted a Revenue Management Product's suggested prices for any hotel or room, let alone that

17  Hotel Defendants did so in parallel.  The complaint alleges only that "[f]ollowing widespread

18  adoption of Rainmaker's pricing algorithms, Defendant Hotel Operators swiftly shifted from the

19  previous competitive status quo to a new strategy."  (ECF No. 1 ¶ 47.)  But that conclusory

20  statement lacks any factual support in the complaint and is entitled to no weight.  *See Kendall*, 518

21  F.3d at 1048 (rejecting allegation that was "nothing more than a conclusory statement" with "no

22  facts alleged to support such a conclusion").  Further, it reflects "impermissible group pleading"

23  that fails to allege the requisite "specific misconduct" of each defendant.  *Aquilina v. Certain*

24  *Underwriters at Lloyd's*, 407 F. Supp. 3d 978, 996-98 (D. Haw. 2019); *see also Destfino v.*

25  *Reiswig*, 630 F.3d 952, 958-59 (9th Cir. 2011) (rejecting plaintiffs' "everyone did everything"

26  allegations).  Similarly deficient are plaintiffs' allegations that Rainmaker clients nationwide adopt

27  its pricing recommendations 90% of the time (ECF No. 1 ¶ 61) because plaintiffs impermissibly

28  rely on aggregate information that is not tied to Hotel Defendants (let alone each of them) or even

the alleged relevant market of the Las Vegas Strip.  *See Musical Instruments*, 798 F.3d at 1197 n.12 (rejecting plaintiffs' "over-inclusive" data because it "include[d] products outside of the relevant product market(s)").

Moreover, the complaint does not identify a single instance in which Hotel Defendants priced rooms at the same rate—nor plead that their prices moved in parallel at any time.  In fact, the complaint fails to identify the price of <u>any</u> room at a defendant's hotel on <u>any</u> night, even though the named plaintiffs supposedly "regularly" stay at defendants' Las Vegas Strip hotels (ECF No. 1 ¶¶ 26-27), and notwithstanding the fact that hotel pricing—on the Las Vegas Strip and otherwise—is publicly available via several online sources, including search sites, online travel agencies, and the hotels' own websites.  The complaint's only reference to room rates is a news report regarding Las Vegas-wide pricing in September 2022 (*id*. ¶ 23), but the Ninth Circuit has rejected similar allegations based on market-wide averages as insufficient to allege that each defendant's prices moved upwards in parallel.  *See Musical Instruments*, 798 F.3d at 1197 n.12 (holding that allegations that average of all retail prices rose were insufficient because "[a]s far as we can tell from the complaint, retail prices of defendants' products actually might have fallen during the class period. . . . Plaintiffs make no allegation either way"); *see also In re GSE Bonds Antitrust Litig.*, 396 F. Supp. 3d at 365 (holding that while market-wide data could "plausibly imply that defendants, as a group, were charging higher prices," the "Court cannot infer, from this, that each individual defendant was charging higher prices").[7]

Thus, plaintiffs fail to plead parallel conduct, and for this reason alone, they cannot allege a viable claim through circumstantial evidence because they have nothing plausibly suggesting that the Hotel Defendant "spokes" agreed to use any Revenue Management Product provided by the "hub."

---

[7]  The Complaint insinuates several times that hotels should always "maximiz[e] occupancy of hotel rooms" (ECF No. 1 ¶ 9), and that "in a competitive market, any empty hotel room is lost revenue, so a hotel operator would try to fill each hotel room by granting concessions or lowering prices" (*id*. ¶ 10).  Yet the complaint does not allege Hotel Defendants' occupancy rates, how those rates compare to one another, or how those rates have changed (if at all) since Hotel Defendants supposedly began subscribing to the Revenue Management Products.  Nor could plaintiffs support their non-sensical conclusory theory that Hotel Defendants should focus on only maximizing occupancy rates to the exclusion of focusing on maximizing total guest revenue, which derives from many other sources (e.g., gaming, restaurants, and shows).  (*Cf. id.* ¶ 40.)

2.      Plaintiffs' "Plus Factors" Are Irrelevant
And Do Not Plausibly Suggest a Conspiracy

The complaint's reliance on a handful of irrelevant structural market characteristics, which plaintiffs characterize as "plus factors," is also insufficient to plausibly suggest a conspiracy.  As an initial matter, when a plaintiff "has not plausibly alleged any parallel conduct among the defendants," the complaint's so-called "'plus factors' are therefore irrelevant" and cannot support a viable Section 1 claim.  *Bona Fide Conglomerate*, 691 F. App'x at 391; *see also Park Irmat Drug Corp.*, 911 F.3d at 517 ("Because [the plaintiff] fails to plausibly plead parallel conduct, no discussion of any 'plus factors' is necessary."); *In re Pork Antitrust Litig.*, No. 18-CV-1776 (JRT), 2019 WL 3752497, at *7 (D. Minn. Aug. 8, 2019) ("[I]n the same way that parallel conduct on its own is insufficient to establish an agreement, plus factors without plausible allegations of parallel conduct are insufficient to establish an inference of an agreement.").  Accordingly, because plaintiffs fail to plead parallel conduct, their supposed "plus factors" add nothing to their deficient claim.

Even if plaintiffs had pleaded parallel conduct, their alleged "plus factors" would not make the supposed conspiracy plausible.  Plus factors are "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action."  *Musical Instruments*, 798 F.3d at 1194.  To adequately plead "plus factors," plaintiffs must provide factual allegations that plausibly exclude the possibility that defendants acted independently.  *See id.* at 1198.  Plus factors include conduct against an entity's apparent economic self-interest, unusual interfirm communications, or an abrupt change in a long-standing business practice or price structure.  *See id.* at 1195.  By contrast, the "plus factors" identified in the complaint are generic characteristics of the purported market for hotel rooms on the Las Vegas Strip, supposed "exchanges of competitively sensitive information," and opportunities to collude at trade associations and conferences.  (ECF No. 1 ¶ 69.)  Taken individually or in the aggregate, the complaint's alleged "plus factors" are even weaker than those the Ninth Circuit rejected in *Musical Instruments* and *In re DRAM*.

First, plaintiffs' allegations concerning the structure of the "Las Vegas Strip hotel market,"

16

1   including that it supposedly has high concentration, significant barriers to entry, inelastic demand,

2   and fungible products (ECF ¶¶ 70-73), do not render the alleged conspiracy plausible.  Indeed,

3   even "extreme concentration" in a market coupled with parallel conduct is consistent with lawful

4   "conscious parallel behavior."  *In re DRAM*, 28 F.4th at 52; *see also Musical Instruments*, 798 F.3d

5   at 1193 ("In an interdependent market, companies base their actions in part on the anticipated

6   reactions of their competitors . . . . [T]wo firms may arrive at identical decisions independently, as

7   they are cognizant of—and reacting to—similar market pressures.").[8]  Further, the alleged

8   characteristics of the market for hotels on the Strip do not suggest a conspiracy because the

9   complaint contains no allegations suggesting that they could not equally promote independent

10  action.  *See, e.g.*, *In re DRAM*, 28 F.4th at 52 (holding that high market concentration did not

11  support finding of conspiracy, and plaintiffs needed to allege facts in addition to the "market's

12  structure to plausibly suggest conspiracy"); *Evanston Police Pension Fund v. McKesson Corp.*, 411

13  F. Supp. 3d 580, 597 (N.D. Cal. 2019) (rejecting argument that market features such as "inelastic

14  demand, high barriers to entry, and lack of viable substitutes" supported a finding of conspiracy).

15          Second, plaintiffs assert the existence of "exchanges of competitively sensitive information

16  among horizontal competitors" (ECF No. 1 ¶ 69), citing allegedly "regular contact" between

17  Rainmaker advisors and Hotel Defendants "to keep them up to date on their competitors" and

18  supposed "weekly" meetings between Rainmaker and unidentified hotels (*id.* ¶ 75).  But these

19  allegations are insufficient because they fail to identify which hotel employees had meetings with

20  Rainmaker or whether those hotels are even defendants in this case.  Moreover, plaintiffs fail to

21  plead any facts supporting their conclusory assertion that "competitively sensitive information"

22  was exchanged during the unidentified hotels' purported meetings with Rainmaker.  For example,

23  plaintiffs do not allege what information was exchanged among which competitors, what made it

24  "sensitive," or when it supposedly was exchanged.  Further, plaintiffs tellingly avoid alleging that

25  any Revenue Management Product facilitated the exchange of any confidential or non-public

26  _____

27  [8]  In fact, courts have recognized that "as the number of firms in a market declines, it . . . becomes
    increasingly likely that lawful conscious parallel behavior or interdependent pricing . . . will occur
    without prior agreement."  *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 917 (N.D. Cal. 2019)

28  (citing *In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 906 F.2d 432, 443 (9th
    Cir. 1990)).

1  information between Hotel Defendants.[9]  Accordingly, this allegation of "exchanges of

2  competitively sensitive information" is deficient and entitled to no weight.

3          Third, plaintiffs' assertion that defendants had "ample opportunities to collude" is equally

4  deficient.  Plaintiffs allege only that Rainmaker hosted an "in-person 'annual user conference[]'"

5  where employees of unidentified hotels and Rainmaker employees could "network, exchange

6  insights and ideas, and discuss revenue management tools and new products coming."  (*Id.* ¶ 74.)

7  But the complaint fails to allege that any Hotel Defendant actually attended any such annual

8  conference.  Nor does the complaint include factual allegations about the contents of any purported

9  discussion that took place at a user conference hosted by Rainmaker.  Further, as noted above, it is

10  well settled that "mere participation in trade-organization meetings where information is

11  exchanged and strategies are advocated does not suggest an illegal agreement."  *Musical*

12  *Instruments*, 798 F.3d at 1196; *see also In re Citric Acid*, 191 F.3d at 1098 ("Gathering information

13  about pricing and competition in the industry is standard fare for trade associations.  If we allowed

14  conspiracy to be inferred from such activities alone, we would have to allow an inference of

15  conspiracy whenever a trade association took almost any action.").[10]

16          Fourth, although plaintiffs generically allege that "hotel guest rooms are relatively fungible,

17  particularly within classes of properties" (ECF No. 1 ¶ 73), plaintiffs fail to allege facts suggesting

18  that <u>Hotel Defendants</u>' properties and rooms are interchangeable or are in the same class of

19  properties.  For instance, there are no allegations plausibly suggesting that a prospective guest

20

21  [9]  The allegations of information exchange between a hotel and Rainmaker/Cendyn (ECF No. 1 ¶¶ 75, 89) are irrelevant to the alleged conspiracy among Hotel Defendants.  As in *Musical Instruments*, the "key agreements" for plaintiffs' claim are the alleged horizontal agreements

22  between Hotel Defendants, and information supposedly exchanged solely between a hotel and Rainmaker/Cendyn can offer no support to any such alleged horizontal agreement.  *See Musical*

23  *Instruments*, 798 F.3d at 1193.

24  [10]  *See also, e.g., In re Nat'l Ass'n of Music Merchs.*, MDL No. 2121, 2012 WL 3637291, at *2 (S.D. Cal. Aug. 20, 2012) (attendance at trade shows is "normal business activity, and doesn't imply any kind of illegality"), *aff'd sub nom. In re Musical Instruments & Equip. Antitrust Litig.*,

25  798 F.3d 1186 (9th Cir. 2015); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 911 (6th Cir. 2009) (attendance at industry conferences "is more likely explained by lawful, free-market

26  behavior"); *Cosm. Gallery, Inc. v. Schoeneman Corp.*, 495 F.3d 46, 53 (3d Cir. 2007) ("We have previously noted that proof of opportunity alone is insufficient to sustain an inference of

27  conspiracy . . . ."); *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1319 (11th Cir. 2003) (noting that the court had "unambiguously held" that "the mere opportunity to conspire among

28  antitrust defendants does not, standing alone, permit the inference of conspiracy") (internal citations omitted).

1    would book a room at the Wynn if Treasure Island were sold out.  Plaintiffs even admit that

2    "[g]uests choose hotels <u>within certain overall categories</u>."  (*Id.* (emphasis added).)  But plaintiffs

3    never plead what those categories might be, or whether every hotel on the Las Vegas Strip owned

4    by the Hotel Defendants falls into the same category.  Nor could plaintiffs do so—as anyone who

5    lives in, or has visited, Las Vegas knows.

6        Finally, plaintiffs have failed to meet their burden of alleging facts that "tend to exclude a

7    plausible and innocuous alternative explanation" for defendants' alleged conduct.  *Eclectic Props.*,

8    751 F.3d at 998.  Instead, the complaint's factual allegations suggest reasons why subscribing to

9    the Revenue Management Products would result from "rational, legal business behavior."  *Kendall*,

10   518 F.3d at 1049.  The complaint is replete with allegations suggesting that it could be in a hotel's

11   independent interest to use one or more Revenue Management Products because, for example,

12   casino hotels allegedly had no "real-time data to back up" their pricing decisions, leading them to

13   "over-discount" their rooms.  (ECF No. 1 ¶ 45.)  In addition, plaintiffs allege that "Rainmaker

14   Group advertises that clients who use GuestRev see increases in revenue and profitability."  (*Id.*

15   ¶ 52.)  And the alleged endorsements of Rainmaker by hotels that are <u>not alleged to have any</u>

16   <u>connection to the purported conspiracy</u> further support the non-conspiratorial reasons for using the

17   Revenue Management Products.  (*See, e.g.*, *id.* ¶ 19 (endorsement from Westmont Hospitality

18   Group); *id.* ¶¶ 20, 56 (endorsement from Omni Hotels & Resorts); *id.* ¶ 24 (touting success of

19   Rainmaker products at Foxwoods Hotels).)  As in *Musical Instruments*, plaintiffs here "have

20   indeed provided a context" for hotels' alleged use of the Revenue Management Products, "but not

21   one that plausibly suggests they entered into illegal horizontal agreements."  *Musical Instruments*,

22   798 F.3d at 1198.

23       Thus, plaintiffs' alleged "plus factors" are irrelevant given the complaint's failure to plead

24   parallel conduct, but even if those factors are considered, they do not plausibly suggest the

25   existence of the purported conspiracy.

26

27

28

**CONCLUSION**

The complaint should be dismissed because it fails to answer any of the mandatory pleading questions established by the Ninth Circuit. The complaint also should be dismissed because it fails to plead any facts reflecting either direct or circumstantial evidence of an agreement among Hotel Defendants to use the Revenue Management Products. The Court should dismiss the complaint with prejudice because any attempt by plaintiffs to amend their complaint would be futile in light of the implausibility of their claim, and an amendment would only waste the Court's and defendants' resources. *See Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (affirming dismissal with prejudice because additional cost of "continued litigation on a new theory . . . would cause undue prejudice" to defendants) (citation omitted).

Dated: March 27, 2023                              Respectfully submitted,

 */s/ Todd L. Bice*                                    */s/ Adam Hosmer-Henner*
Todd L. Bice (NSBN 4534)                  Adam Hosmer-Henner (NSBN 12779)
Brianna Smith (NSBN 11795)               Chelsea Latino (NSBN 14227)
PISANELLI BICE PLLC                          Jane Susskind (NSBN 15099)
400 S. 7th Street, Suite 300                  McDONALD CARANO LLP
Las Vegas, NV 89101                           100 West Liberty Street, Tenth Floor
Telephone:  702-214-2100                    Reno, Nevada 89501
tlb@pisanellibice.com                           (775) 788-2000
bgs@pisanellibice.com                          ahosmerhenner@mcdonaldcarano.com
                                                           clatino@mcdonaldcarano.com
Bethany Kristovich (*pro hac vice*)       jsusskind@mcdonaldcarano.com
Kyle Mach (*pro hac vice*)
Justin Raphael (*pro hac vice*)             Boris Bershteyn (*pro hac vice* )
Juliana Yee (*pro hac vice*)                   Ken Schwartz (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP        Michael Menitove (*pro hac vice*)
350 S. Grand Ave.; 50th Floor               Sam Auld (*pro hac vice*)
Los Angeles, CA 90071                           SKADDEN, ARPS, SLATE,
Telephone:  213 683 9100                         MEAGHER & FLOM LLP
bethany.kristovich@mto.com                 One Manhattan West
kyle.mach@mto.com                             New York, New York 10001
justin.raphael@mto.com                        (212) 735-3000
juliana.yee@mto.com                            Boris.Bershteyn@skadden.com
                                                           Ken.Schwartz@skadden.com
*Attorneys for Defendant MGM Resorts*     Michael.Menitove@skadden.com
*International*                                      Sam.Auld@skadden.com

                                                           *Attorneys for Defendant*
                                                           *Caesars Entertainment, Inc.*

| | | |
|---|---|---|
| 1 | */s/ Patrick G. Byrne* | */s/ J. Colby Williams* |
| 2 | Patrick G. Byrne | J. Colby Williams (5549) |
| | Nevada Bar No. 7636 | 710 South Seventh Street |
| 3 | Bradley Austin | Las Vegas, NV 89101 |
| | Nevada Bar No. 13064 | Telephone: (702) 382-5222 |
| 4 | SNELL & WILMER | Facsimile: (702) 382-0540 |
| | 3883 Howard Hughes Parkway | jcw@cwalawlv.com |
| 5 | Las Vegas, NV 89169 | |
| 6 | Telephone: (702) 784-5200 | Sadik Huseny (*pro hac vice*) |
| | Facsimile: (702) 784-5252 | Tim O'Mara (*pro hac vice*) |
| 7 | pbyrne@swlaw.com | Brendan A. McShane (*pro hac vice*) |
| | baustin@swlaw.com | LATHAM & WATKINS LLP |
| 8 | | 505 Montgomery Street, Suite 2000 |
| 9 | Mark Holscher (*pro hac vice*) | San Francisco, CA 94111-6538 |
| | Tammy Tsoumas (*pro hac vice*) | Telephone: (415) 391-0600 |
| 10 | Leonora Cohen (*pro hac vice*) | Facsimile: (415) 395-8095 |
| | KIRKLAND & ELLIS LLP | sadik.huseny@lw.com |
| 11 | 2049 Century Park East, Suite 3700 | tim.o'mara@lw.com |
| | Los Angeles, California 90067 | brendan.mcshane@lw.com |
| 12 | Telephone: (310) 552-4200 | |
| 13 | Facsimile: (310) 552-5900 | Anna M. Rathbun (*pro hac vice*) |
| | ttsoumas@kirkland.com | LATHAM & WATKINS LLP |
| 14 | mholscher@kirkland.com | 555 Eleventh Street, NW Suite 1000 |
| | lena.cohen@kirkland.com | Washington, DC 20004-1304 |
| 15 | | Telephone: (202) 637-3381 |
| 16 | Matthew Solum (*pro hac vice*) | Facsimile: (202) 637-2201 |
| | KIRKLAND & ELLIS LLP | anna.rathbun@lw.com |
| 17 | 601 Lexington Ave | |
| | New York, NY 10022 | *Attorneys for Defendant Cendyn Group LLC* |
| 18 | Telephone: (212) 446-4688 | |
| | Facsimile: (917) 848-7536 | |
| 19 | msolum@kirkland.com | |
| 20 | | |
| | *Attorneys for Defendant Wynn* | |
| 21 | *Resorts Holdings, LLC* | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

*/s/ Nicholas J. Santoro*
Nicholas J. Santoro (NV Bar No. 532)
300 S. 4th Street, Suite 1600
Las Vegas, NV 89101
Tel.: (702) 791-0308 / Fax: (702) 791-1912
nsantoro@nevadafirm.com

Arman Oruc (*pro hac vice forthcoming*)
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036-1612
Tel.: (202) 346-4000 / Fax: (202) 346-4444
AOruc@goodwinlaw.com

Alicia Rubio-Spring (*pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02110
Tel.: (617) 570-1000 / Fac: (617) 523-1231
ARubio-Spring@goodwinlaw.com

*Attorneys for Defendant The Rainmaker Group
Unlimited, Inc.*

*/s/ Patick J. Reilly*
Patrick J. Reilly
Arthur A. Zorio
Emily Garnett (*pro hac vice*)
Eric D. Walther
BROWNSTEIN HYATT FARBER
SCHRECK, LLP
100 North City Parkway, Ste. 1600
Las Vegas, NV 89106
Telephone:  702.382.2101
preilly@bhfs.com
azorio@bhfs.com
egarnett@bhfs.com
ewalther@bhfs.com

*Attorneys for Defendant Treasure Island, LLC*