**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
Stephanie A. Verdoia (*pro hac vice*)
stephaniev@hbsslaw.com
Ted Wojcik (*pro hac vice forthcoming*)
tedw@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594

Rio S. Pierce (*pro hac vice*)
riop@hbsslaw.com
Abby R. Wolf (*pro hac vice*)
abbyw@hbsslaw.com
715 Hearst Ave, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001

**PANISH SHEA BOYLE RAVIPUDI LLP**
Brian J. Panish (NV Bar No. 16123)
panish@psbr.law
Rahul Ravipudi (NV Bar No. 14750)
rravipudi@psbr.law
Adam Ellis (NV Bar No. 14514)
aellis@psbr.law
Ian Samson (NV Bar No. 15089)
isamson@psbr.law
300 S. Fourth Street, Suite 710
Las Vegas, NV 89101
Telephone: (702) 560-5520

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD GIBSON, and HERIBERTO VALIENTE,<br><br>Plaintiffs,<br><br>v.<br><br>MGM RESORTS INTERNATIONAL, CENDYN GROUP, LLC, THE RAINMAKER GROUP UNLIMITED, INC., CAESARS ENTERTAINMENT INC., TREASURE ISLAND, LLC, WYNN RESORTS HOLDINGS, LLC,<br><br>Defendants. | Case No. 2:23-cv-00140-MMD-DJA<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT MGM RESORTS INTERNATIONAL'S SEPARATE MOTION TO DISMISS** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.    LEGAL STANDARD ........................................................................................... 2

III.    ARGUMENT ........................................................................................................ 3

    A.    The complaint plausibly alleges MGM participated in the conspiracy. ................ 4

        1.    MGM-operated properties in New Jersey participated in Rainmaker Pricing Algorithms and heavily relied on it. ........................... 4

        2.    Former employees estimate Rainmaker products are used in 90% of the Las Vegas Strip Hotel Market. ......................................................... 5

        3.    The Cosmopolitan, currently operated by MGM, publicly admits to using and relying on Rainmaker Pricing Algorithms. ............................... 6

        4.    Taken together, Plaintiffs' allegations are sufficient to plausibly allege MGM's participation in the conspiracy. .......................................... 6

        5.    Plaintiffs' claims survive even if MGM did not participate in the conspiracy. ....................................................................................... 8

IV.    CONCLUSION .................................................................................................... 9



# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................5

*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*,
    620 F.2d 1360 (9th Cir. 1980)..................................................................................2

*Borenstein v. Animal Found.*,
    526 F. Supp. 3d 820 (D. Nev. 2021).........................................................................9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    738 F. Supp. 2d 1011 (N.D. Cal. 2010)....................................................................1

*In re Coord. Pretrial Proceedings in Petrol. Prods. Antitrust Litig.*,
    906 F.2d 432 (9th Cir. 1990)....................................................................................6

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
    2016 WL 5108131 (S.D.N.Y. Sept. 20, 2016)..........................................................7

*In re High-Tech Emp. Antitrust Litig.*,
    856 F. Supp. 2d 1103 (N.D. Cal. 2012)....................................................................2

*Indep. Iron Works, Inc. v. U.S. Steel Corp.*,
    322 F.2d 656 (9th Cir. 1963)....................................................................................1

*Las Vegas Sun v. Adelson*,
    2020 WL 7029148 (D. Nev. Nov. 30, 2020)............................................................9

*In re Lithium Ion Batteries Antitrust Litig.*,
    2014 WL 4955377 (N.D. Cal. Oct. 2, 2014)............................................................7

*name.space, Inc. v. Internet Corp. for Assigned Names & Nos.*,
    795 F.3d 1124 (9th Cir. 2015)..............................................................................3, 8

*Oahu Gas Serv., Inc. v. Pac. Res., Inc.*,
    838 F.2d 360 (9th Cir. 1988)................................................................................8, 9

*In re Plasma–Derivative Protein Therapies Antitrust Litig.*,
    764 F. Supp. 2d 991 (N.D. Ill. 2011)........................................................................7

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*,
    2013 WL 3242245 (N.D. Cal. June 25, 2013)......................................................3, 7

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008)......................................................................3

*Taleff v. Sw. Airlines Co.*,
    828 F. Supp. 2d 1118 (N.D. Cal. 2011) .................................................................................. 5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) (*LCD I*) ................................................................... 3

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    599 F. Supp. 2d 1179 (N.D. Cal. Mar. 3, 2009) ..................................................................... 7

*Twin City Sportservice, Inc. v. Charles O'Finley & Co.*,
    676 F.2d 1291 (9th Cir. 1982) ............................................................................................ 8, 9

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ................................................................................................. 5

### OTHER AUTHORITIES

Fed. R. Civ. P. 11 ................................................................................................................... 5, 6



# I. INTRODUCTION

Plaintiffs allege MGM Resorts International ("MGM") conspired with its competitors, Defendant Hotel Operators ("Operators"), to ratchet up hotel prices by using Defendant Rainmaker's Pricing Algorithms.[1] And in fact, Rainmaker publicly confirmed in a press release that its "Gaming/Hospitality clients include leading organizations such as . . . MGM Resorts International." Yet MGM attempts to dismiss Plaintiffs' claims against it based on a narrow parsing of the allegations that specifically concern MGM's use of Rainmaker's Pricing Algorithms. MGM attempts to disassemble the totality of the allegations contrary to pleading standards upheld by district courts across the country. But courts do not require plaintiffs in complex antitrust cases to plead "detailed, defendant-by-defendant allegations; instead they require plaintiffs to make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy."[2]

MGM seeks to impose a heightened pleading requirement: that allegations attributed to each individual Defendant—even each individual hotel—when viewed in isolation, must provide sufficient direct or circumstantial evidence to plausibly suggest an agreement was made. Yet, at the motion to dismiss stage, courts give plaintiffs "the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each."[3] The standard here is not whether MGM's own statements or activity in isolation would create a plausible inference of a conspiracy; the correct analysis is whether the totality of the facts, read in the light most favorable to Plaintiffs, are sufficient evidence to create a plausible inference that MGM participated in a conspiracy.

---

[1] "Rainmaker's Pricing Algorithms" refers to Guestrev, Revcaster, and GroupRev, as defined in the Class Action Complaint, ¶¶ 12–20, ECF No. 1 (Jan. 25, 2023) ("complaint").

[2] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1019 (N.D. Cal. 2010) (internal citation omitted).

[3] *Indep. Iron Works, Inc. v. U.S. Steel Corp.*, 322 F.2d 656, 661 (9th Cir. 1963) (internal citation omitted).

Plaintiffs have met this standard. *First*, the complaint includes allegations that MGM-operated properties publicly touted using Rainmaker's Pricing Algorithms.[4] *Second*, the complaint includes confidential witness statements from former executives and employees of Rainmaker that confirm the Pricing Algorithms were used widely in the Las Vegas Strip Hotel Market,[5] including specific references to MGM-operated hotels. *Third*, the complaint includes advertisements run publicly by Rainmaker showcasing hotels currently operated by MGM as "success story" clients during the class period.

These allegations—most of which MGM simply ignores—support a plausible inference that MGM participated in the alleged conspiracy. At the pleading stage, Plaintiffs are not required to specifically allege the exact details of each Defendant's participation in the conspiracy. Rather the complaint provides more than sufficient information to allege MGM participated with competitors in a conspiracy to artificially raise prices by utilizing Rainmaker Pricing Algorithms.

## II. LEGAL STANDARD

The long-standing law in the Ninth Circuit is that the "action of any of the conspirators to restrain or monopolize trade is, in law, the action of all," and "[a]ll conspirators are jointly liable for the acts of their co-conspirators."[6] "If [a plaintiff] can establish the existence of a conspiracy in violation of the antitrust laws and that [defendants] were a part of such a conspiracy, [defendants] will be liable for the acts of all members of the conspiracy, in furtherance of the conspiracy, regardless of the nature of [an individual defendant's] own actions."[7] Indeed, a "co-conspirator need not know of the existence or identity of the other members of the conspiracy or the full extent of the conspiracy."[8]

If plaintiffs successfully allege a conspiracy's existence, plaintiffs then must only allege "that each individual defendant joined the conspiracy and played some role in it" in order to survive

---

[4] All complaint and "¶" references are to paragraphs of the Class Action Complaint, ECF No. 1 (January 25, 2023).

[5] As defined in the complaint, n.1.

[6] *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980).

[7] *Id.*

[8] *Id.* at 1366–67; *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1118 (N.D. Cal. 2012).

a motion to dismiss by an individual defendant.[9] At the motion to dismiss stage, district courts have rejected that a plaintiff's complaint must specify exactly how each individual defendant participated in the conspiracy, because such arguments "rely on the standard for a motion of summary judgment."[10] And courts should not "indulge antitrust defendants who move to dismiss by 'tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.'"[11]

Instead, at the pleading stage, plaintiffs "only need to make allegations that *plausibly* suggest that each [d]efendant participated in the alleged conspiracy."[12] The Ninth Circuit has specifically clarified that the plausible standard "does not impose a 'probability requirement,' but 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.'"[13]

### III.   ARGUMENT

Plaintiffs allege Operators agreed to use Rainmaker Pricing Algorithms to inflate prices for hotel rooms in the Las Vegas Strip Hotel Market. Operators implemented their conspiracy by sharing granular pricing, occupancy, and guest information to a common third party, then receiving forward-looking, room-specific pricing recommendations that increase the price of rooms and restricts occupancy. This ensured that all Operators could fix and maintain supracompetitive prices in a market where they maintain a dominant share.

MGM argues that Plaintiffs do not plausibly allege its hotels on the Strip used Rainmaker's algorithms, and thus that it did not participate in the alleged conspiracy. But Plaintiffs' complaint includes abundant evidence rebutting this claim. *First*, the complaint includes allegations that MGM-operated properties publicly touted using Rainmaker's Pricing Algorithms. *Second*, the

---

[9] *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (internal citation omitted) (*LCD I*).

[10] *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 903–04 (N.D. Cal. 2008).

[11] *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, No. 12-cv-05847-JST, 2013 WL 3242245, at *6–7 (N.D. Cal. June 25, 2013) (quoting *High-Tech*, 856 F. Supp. 2d at 1118).

[12] *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d at 903–04 (emphasis added).

[13] *name.space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1129 (9th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

complaint includes confidential witness statements from former executives and employees of Rainmaker that confirm the Pricing Algorithms were used widely in the Las Vegas Strip Hotel Market,[14] including specific references to MGM-operated hotels. *Third*, the complaint includes advertisements run publicly by Rainmaker showcasing hotels currently operated by MGM as "success story" clients during the class period.

These allegations are sufficient, at the motion to dismiss stage, to plausibly allege that MGM's properties on the Strip used Rainmaker's algorithms, and thus to plausibly allege that MGM participated in the conspiracy.

**A.   The complaint plausibly alleges MGM participated in the conspiracy.**

**1.   MGM-operated properties in New Jersey participated in Rainmaker Pricing Algorithms and heavily relied on it.**

MGM-operated properties have publicly acknowledged using and relying on Rainmaker Pricing Algorithms. ¶ 21. The director of revenue management, Sue Daigle, at the Borgata Hotel Casino & Spa ("Borgata Hotel")—operated by MGM—states in a "Customer Story" on Defendant Cendyn's[15] website that Rainmaker's Pricing Algorithm is "my right hand." *Id*.

These well-founded allegations support an inference that MGM-operated properties on the Strip participated in the conspiracy to raise prices in the Las Vegas Hotel Strip Market by using Rainmaker's Pricing Algorithms. Borgata Hotel (1) publicly acknowledges that Rainmaker's Pricing Algorithms ensure "the right rates at the right time" in comparison to the "two types of rates" it used to offer; and (2) both publicly endorses Rainmaker Pricing Algorithms and employs executives who heavily rely on competitor information to set prices. ¶ 51.

MGM seeks to dismiss this specific factual evidence as "irrelevant" because the Borgata Hotel is not in Las Vegas.[16] However, it cites no authority that courts reject this type of evidence at the pleading stage to infer an individual defendant's participation in a conspiracy.[17] MGM,

---

[14] As defined in the complaint, n.1.

[15] Cendyn is a private company focused on providing technology for the hospitality industry; it acquired Rainmaker Group in August 2019. Rainmaker Group currently operates as a wholly owned subsidiary of Cendyn. ¶ 4.

[16] Br. at 4.

[17] *Id*.

additionally, has not challenged—under Rule 11 or any other procedural device—that it has never used Rainmaker's Pricing Algorithms. And at the pleading stage, courts are required to accept as true all of the factual allegations contained in the complaint.[18] Factual allegations that MGM implements Rainmaker's Pricing Algorithms in hotels it operates elsewhere is relevant, specific evidence that supports MGM's plausible participation in the alleged conspiracy, as it suggests a broader relationship between Rainmaker and MGM.

### 2.  Former employees estimate Rainmaker products are used in 90% of the Las Vegas Strip Hotel Market.

In addition to the specific, particularized allegations that tie MGM to Rainmaker's Pricing Algorithms, statements from former Rainmaker executives and employees also link MGM to the conspiracy, as do statements by Rainmaker itself—and suggest that MGM used Rainmaker at its other Strip properties as well.

First, in a March 17, 2015, press release, Rainmaker stated that its "Gaming/Hospitality clients include leading organizations such as . . . Caesars Entertainment, MGM Resorts International, [and] Wynn Las Vegas."[19] In other words, Rainmaker publicly confirmed in 2015 that MGM was among its clients.

Second, a former Rainmaker employee ("CW 2") confirmed that "[Rainmaker was] just about in every hotel in the Strip" and this provided "leverage" for clients. ¶¶ 7, 16. In particular, the employee confirmed that "everybody knew who was using our system" and that "Caesars probably knew [Rainmaker was] in the Cosmopolitan and vice versa." ¶¶ 16, 22.

Third, a former Rainmaker executive ("CW 1") estimated that Rainmaker's products are used by *90%* of the hotels on the Las Vegas Strip. ¶ 7. MGM currently operates and owns 11 hotels on the Las Vegas Strip. The two largest Defendants here—MGM and Caesars—own approximately 59% of the Las Vegas Strip Hotel Market by property count. ¶ 71. Because MGM owns a large share of properties on the Strip, the CW's statements that 90% of hotels on the Las

---

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Taleff v. Sw. Airlines Co.*, 828 F. Supp. 2d 1118, 1121 (N.D. Cal. 2011), *aff'd*, 554 F. App'x 598 (9th Cir. 2014) ("Any existing ambiguities must be resolved in favor of the pleading.") (citing *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir. 1973)).

[19] *See* ¶ 11 n.6 (citing https://tinyurl.com/mpu7fpyd). This press release is incorporated by reference into Plaintiffs' complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Vegas Strip are participating supports a plausible inference that MGM properties on the Strip used Rainmaker.

    **3.    The Cosmopolitan, currently operated by MGM, publicly admits to using and relying on Rainmaker Pricing Algorithms.**

The Cosmopolitan of Las Vegas—an MGM operated hotel—is highlighted as a "success story" on Cendyn's own website. ¶ 74 n.28. In this "success story," Colleen Birch, the Senior Vice President of Revenue Optimization at The Cosmopolitan, speaks about her experience using Rainmaker. *Id.* While the video was published in 2019, prior to MGM operating the hotel in 2021, CW 2 specifically referenced Rainmaker's Pricing Algorithms being used on the property during the class period, further supporting an inference of conspiracy. ¶ 22 ("CW confirmed that 'Caesars probably knew we were in the Cosmopolitan and vice versa.'").

Instead of challenging Plaintiffs allegations, MGM simply declares there are no "particularized allegations about the Cosmopolitan" in the complaint and that it is "insufficient to conclude that it participated in any conspiracy."[20] But multiple sources confirm The Cosmopolitan's use of Rainmaker's Pricing Algorithms during the conspiracy period to facilitate this sharing of information. This further supports a plausible inference of MGM's involvement in the conspiracy.[21]

    **4.    Taken together, Plaintiffs' allegations are sufficient to plausibly allege MGM's participation in the conspiracy.**

MGM seeks to distance itself from this evidence, arguing that Plaintiffs nevertheless fail to allege MGM's role in Plaintiffs' alleged conspiracy "with respect to at least ten hotels it operates."[22] But, MGM's attempt to divert responsibility by "compartmentalizing" each hotel under MGM's operational control and questioning individual receipt of pricing information is not

---

[20] Br. at 5 n.2.

[21] *C.f. In re Coord. Pretrial Proceedings in Petrol. Prods. Antitrust Litig.*, 906 F.2d 432, 447 (9th Cir. 1990) (quoting Richard Rosner, Antitrust Law: An Economic Perspective 147 (Univ. Chi. Press 1976) ("[t]he fact that it is feasible . . . to communicate the necessary price information through press releases does not 'immunize the exchange of price information from legal sanction [where] the conditions of the market suggest that the exchange promotes collusive rather than competitive pricing.'")).

[22] Br. at 3.



persuasive.[23] Plaintiffs are not required to detail each individual hotel's role at this stage without the benefit of discovery.[24] Instead, they plausibly allege it is the Operators—including MGM—who are responsible for operating the majority of individual hotels on the Las Vegas Strip and colluding to adopt Rainmaker Pricing Algorithms. ¶¶ 2–3. And they plead evidence plausibly showing that (1) MGM is a Rainmaker client; (2) that Rainmaker is used in at least one MGM property on the Strip; and (3) that *90%* of the hotels on the Strip not only *use* Rainmaker's Pricing Algorithms (that contain competitor pricing information) but that these prices are *received and accepted 90%* of the time. ¶¶ 7, 12. Taken together, this evidence—which includes direct statements from Rainmaker's employees, MGM's co-conspirators—plausibly suggests that MGM uses Rainmaker in its hotels on the Strip.[25]

Once Plaintiffs have plausibly alleged MGM's participation in the conspiracy, the scope of its participation is a fact-determinative question that requires discovery.[26] Moreover, the facts plead provide a "reasonable expectation" that targeted discovery will lead to evidence of an illegal

---

[23] *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1184–85 (N.D. Cal. Mar. 3, 2009) (pleading a conspiracy claim against a corporate defendant does not require "detailed 'defendant by defendant' allegations"); *Rheumatology Diagnostics Lab.*, 2013 WL 3242245, at *6–7 (quoting *High-Tech*, 856 F. Supp. 2d at 1118) (courts should not "indulge antitrust defendants who move to dismiss by 'tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.'").

[24] *See e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *34–35 (N.D. Cal. Oct. 2, 2014) (*quoting LCD I*, 586 F. Supp. 2d at 1117 ("[J]udges in this District have repeatedly found sufficient allegations that: the conspiracy was 'organized at the highest level of the defendant organizations and carried out by both executives and subordinate employees.'")); *see generally In re Plasma–Derivative Protein Therapies Antitrust Litig.*, 764 F. Supp. 2d 991, 1003 n.10 (N.D. Ill. 2011) ("[i]f private plaintiffs, who do not have access to inside information, are to pursue violations of the law, the pleading standard must take into account the fact that a complaint will ordinarily be limited to allegations pieced together from publicly available data.").

[25] Courts have found as little as one email containing sensitive pricing information sufficient to plausibly allege an individual defendant's participation in a conspiracy. *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *34–35 (finding one email in 10-year conspiracy suggesting common purpose to share customer pricing information).

[26] *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789 (LGS), 2016 WL 5108131, at *4 (S.D.N.Y. Sept. 20, 2016) ("Questions as to each Defendant's participation in the conspiracy and the conspiracy's scope may be raised later in litigation, but do not merit dismissal at this phase.").

agreement.[27] In other words, discovery is the proper mechanism for testing MGM's arguments here.

### 5. Plaintiffs' claims survive even if MGM did not participate in the conspiracy.

MGM also argues that, in the event the claims against it are dismissed, Plaintiffs' claims against other Defendants should fail as well because "[i]t would make little sense for hotels to conspire to use Rainmaker algorithms to raise prices at 11 out of 30 hotels on the Strip"—i.e., because "consumers would switch to cheaper rooms at other hotels that were not using the algorithms."[28]

Although MGM nowhere actually challenges Plaintiffs' proposed market definition or allegations of market power (nor do Defendants generally in their joint motion), the implication of MGM's argument is that Plaintiffs could not plausibly state a Section 1 claim against remaining Defendant Operators if they collectively possess an approximately 37% share (11/30) of the alleged Strip market. But as explained in Plaintiffs' opposition to Defendants' joint motion to dismiss, the Ninth Circuit recently held that Apple's 52–57% market share in the "mobile games transactions" market constituted market power;[29] and in *Twin City*, the Ninth Circuit affirmed a district court's finding of Section 1 liability where the defendant controlled 24% of the relevant market.[30] In other words, even assuming *arguendo* that MGM were not a defendant in this action, the remaining Operators' market share is within the presumptive range necessary to state a Section 1 claim. Furthermore, at the pleading stage for a rule of reason claim, market power is used for showing indirect evidence of anticompetitive effects. As discussed in Plaintiffs joint opposition motion, Plaintiffs have also pled direct evidence of anticompetitive effects, for which market power is not necessary.

More importantly, even if MGM (or Defendants) did challenge Plaintiffs' market power

---

[27] *name.space, Inc.*, 795 F.3d at 1129 (quoting *Twombly*, 550 U.S. at 556).

[28] Br. at 5.

[29] *Id.*

[30] *Twin City Sportservice, Inc. v. Charles O'Finley & Co.*, 676 F.2d 1291, 1301–1303 (9th Cir. 1982).

and/or market definition allegations, these arguments are premature.[31] Indeed, the Ninth Circuit has specifically stated that "market power" is "essentially [a] question[] of fact[.]"[32]

### IV. CONCLUSION

Taking the factual allegations as true, and reading the complaint as a whole, Plaintiffs have adequately plead MGM's plausible participation in the alleged conspiracy. Plaintiffs respectfully request that the Court deny MGM's separate motion to dismiss. Should the Court determine that Plaintiffs' allegations require further factual development, however, Plaintiffs request leave to amend.[33]

---

[31] *See Oahu Gas Serv., Inc. v. Pac. Res., Inc.*, 838 F.2d 360, 363 (9th Cir. 1988) ("Our . . . decisions establish that both market definition and market power are essentially questions of fact."); *Twin City*, 676 F.2d at 1299 ("The definition of the relevant market is basically a fact question[.]"); *see also Las Vegas Sun v. Adelson*, No. 2:19-cv-01667-GMN-BNW, 2020 WL 7029148, at *6 (D. Nev. Nov. 30, 2020) ("[I]t is well-established that 'the validity of the 'relevant market' is typically a factual element rather than a legal element.") (citing *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1044–46 (9th Cir. 2008)).

[32] *Oahu Gas*, 838 F.2d at 363.

[33] *Borenstein v. Animal Found.*, 526 F. Supp. 3d 820, 839 n.3 (D. Nev. 2021) ("In general, dismissal of a complaint without leave to amend is proper only if amendment would be futile.") (citing *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988)).

DATED: May 11, 2023

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*
   Steve W. Berman (*pro hac vice*)
Stephanie A. Verdoia (*pro hac vice*)
Ted Wojcik (*pro hac vice forthcoming*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
stephaniev@hbsslaw.com
tedw@hbsslaw.com

Rio S. Pierce (*pro hac vice*)
Abby R. Wolf (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
riop@hbsslaw.com
abbyw@hbsslaw.com
hannahso@hbsslaw.com

Rahul Ravipudi (NV Bar No. 14750)
Adam Ellis (NV Bar No. 14514)
Ian P. Samson (NV Bar No. 15089)
PANISH SHEA BOYLE RAVIPUDI LLP
300 S. 4th Street, Suite 710
Las Vegas, NV 89101
Telephone: (702) 560-5520
Facsimile: (702) 975-2515
rravipudi@psblaw.com
aellis@psblaw.com
isamson@psblaw.com

Brian J. Panish (NV Bar No. 16123)
PANISH SHEA BOYLE RAVIPUDI LLP
11111 Santa Monica Blvd., Suite 700
Los Angeles, CA 90025
Telephone: (310) 477-1700
Facsimile: (310) 477-1699
panish@psbrlaw.com

*Counsel for Plaintiffs and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED: May 11, 2023                         */s/ Steve W. Berman*
                                                                  Steve W. Berman