Adam Hosmer-Henner (NSBN 12779)
Chelsea Latino (NSBN 14227)
Jane Susskind (NSBN 15099)
**McDONALD CARANO LLP**
100 West Liberty Street, Tenth Floor
Reno, Nevada 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
clatino@mcdonaldcarano.com
jsusskind@mcdonaldcarano.com

Boris Bershteyn (*pro hac vice*)
Ken Schwartz (*pro hac vice*)
Michael Menitove *(pro hac vice)*
Sam Auld (*pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
One Manhattan West
New York, New York 10001
(212) 735-3000
Boris.Bershteyn@skadden.com
Ken.Schwartz@skadden.com
Michael.Menitove@skadden.com
Sam.Auld@skadden.com

*Attorneys for Defendant*
*Caesars Entertainment, Inc.*

[*Additional counsel listed on Signature Page*]

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD GIBSON, and HERIBERTO VALIENTE, | Case No. 2:23-cv-00140-MMD-DJA |
| Plaintiff, | |
| v. | **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS** |
| MGM RESORTS INTERNATIONAL, CENDYN GROUP, LLC, THE RAINMAKER GROUP UNLIMITED, INC., CAESARS ENTERTAINMENT INC., TREASURE ISLAND, LLC, WYNN RESORTS HOLDINGS, LLC, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT .............................................................................................................................2

    I.    PLAINTIFFS HAVE NO ANSWERS TO KENDALL'S "BASIC" QUESTIONS ............................................................................................................2

    II.    PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A HORIZONTAL AGREEMENT ..............................................................................................................5

        A.    Plaintiffs Do Not Plead Direct or Circumstantial Evidence of An Agreement ...............................................................................................5

            1.    The Ninth Circuit Has Rejected Plaintiffs' Parallel Conduct Argument .........................................................................................5

            2.    Plaintiffs' "Plus Factors" Are Irrelevant ..........................................6

        B.    Plaintiffs Misstate the Law Regarding "Hub-and-Spoke" Conspiracies .............................................................................................8

            1.    Plaintiffs Must Allege An Agreement Among Hotel Defendants .......................................................................................8

            2.    Knowledge of Unalleged Vertical Agreements Is Insufficient ........9

    III.    PLAINTIFFS' UNPLEADED VERTICAL AGREEMENT THEORY FAILS ..................................................................................................................11

CONCLUSION .........................................................................................................................12

# TABLE OF AUTHORITIES

**CASES** PAGE(S)

*Acquaire v. Canada Dry Bottling Co. of New York,*
    24 F.3d 401 (2d Cir. 1994) ............................................................................................ 9, 10

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................................ 8

*Bona Fide Conglomerate, Inc. v. SourceAmerica,*
    691 F. App'x 389 (9th Cir. 2017) ....................................................................................... 2

*California Crane School, Inc. v. Google LLC,*
    No. 21-CV-10001 (HSG), 2023 WL 2769096 (N.D. Cal. Mar. 31, 2023) ........................... 3

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litigation,*
    28 F.4th 42 (9th Cir. 2022) ................................................................................................. 6

*Dearaujo v. PNC Bank, N.A.,*
    No. 12–CV–00981 (MMD), 2012 WL 5818131 (D. Nev. Nov. 15, 2012) ....................... 12

*Filco v. Amana Refrigeration, Inc.,*
    709 F.2d 1257 (9th Cir. 1983) ........................................................................................... 10

*In re Fresh & Process Potatoes Antitrust Litigation,*
    834 F. Supp. 2d 1141 (D. Idaho 2011) ............................................................................... 5

*General Cinema Corp. v. Buena Vista Distribution Co.,*
    681 F.2d 594 (9th Cir. 1982) .............................................................................................. 9

*Hicks v. PGA Tour, Inc.,*
    897 F.3d 1109 (9th Cir. 2018) ............................................................................................ 7

*In re Insurance Brokerage Antitrust Litigation,*
    618 F.3d 300 (3d Cir. 2010) ............................................................................................ 8, 9

*Interstate Circuit, Inc. v. United States,*
    306 U.S. 208 (1939) .................................................................................................... 1, 8, 9

*Kendall v. Visa U.S.A., Inc.,*
    518 F.3d 1042 (9th Cir. 2008) ................................................................................... 1, 2, 3, 4

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation,*
    383 F. Supp 3d 187 (S.D.N.Y. 2019) ............................................................................... 10

*Litovich v. Bank of America Corp.,*
    568 F. Supp. 3d 398 (S.D.N.Y. 2021) ................................................................................ 6

*In re Musical Instruments & Equipment Antitrust Litigation,*
    798 F.3d 1186 (9th Cir. 2015) ..................................................................... 1, 2, 5, 6, 8, 10

*Nastasi & Associates, Inc. v. Bloomberg, L.P.*,
   No. 20-CV-5428 (JMF), 2022 WL 4448621 (S.D.N.Y. Sept. 23, 2022) .............................. 11

*Sabina v. James River Insurance Co.*,
   No. 22-CV-1456 (JCM), 2020 WL 6545866 (D. Nev. Nov. 6, 2020) .................................. 11

*Toys "R" Us, Inc. v. FTC*,
   221 F.3d 928 (7th Cir. 2000) ................................................................................... 10, 11

*United States v. Apple, Inc.*,
   791 F.3d 290 (2d Cir. 2015) ..................................................................................... 8, 9, 10

*William O. Gilley Enterprises, Inc. v. Atlantic Richfield Co.*,
   588 F.3d 659 (9th Cir. 2009) ............................................................................. 7, 10, 11, 12

*William O. Gilley Enterprises, Inc. v. Atlantic Richfield Co.*,
   561 F.3d 1004 (9th Cir. 2009), *withdrawn and superseded by* 588 F.3d 659 (9th Cir.
   2009) ................................................................................................................................ 10

# PRELIMINARY STATEMENT

Plaintiffs' opposition (ECF No. 109 ("Opp.")) attempts to obscure the complaint's deficiencies by ignoring controlling precedent, distorting a nearly 100-year-old opinion, and manufacturing allegations and a claim that are not in the complaint and, in any event, are not viable as a matter of law. Those efforts cannot rescue plaintiffs' threadbare complaint from dismissal.

First, instead of demonstrating that the complaint answers the Ninth Circuit's "basic" pleading questions—"who, did what, to whom (or with whom), where, and when?" *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008)—plaintiffs rely on cases from outside the Ninth Circuit to argue that this Court should apply a different standard. But plaintiffs make no effort to distinguish their complaint from those that courts in the Ninth Circuit have routinely dismissed. Nor could they, because plaintiffs cannot identify (1) a single individual "who" participated in the purported conspiracy, (2) "when" it began, or (3) how it was formed, operated, or enforced.

Second, the opposition confirms that plaintiffs do not plead any facts to support their claim that Hotel Defendants agreed to adopt pricing recommendations from the Revenue Management Products for their hotels on the Las Vegas Strip.[1] Indeed, plaintiffs do not dispute that they fail to plead (1) direct evidence of that supposed horizontal agreement or (2) that any Hotel Defendant adopted a Revenue Management Product's pricing suggestion even once—let alone that all Hotel Defendants did so in parallel. And plaintiffs concede that the complaint's "plus factors" are irrelevant absent a properly pleaded allegation that defendants acted in parallel.

Having failed to meet their pleading burden, plaintiffs try to evade it. They claim that *Interstate Circuit, Inc. v. United States*, 306 U.S. 208 (1939), permits them to forgo pleading an agreement among Hotel Defendants and simply to allege that each Hotel Defendant somehow knew that every other Hotel Defendant entered into an agreement with Rainmaker to adopt a Revenue Management Product's pricing suggestions. But plaintiffs misstate both the law and their allegations. The Ninth Circuit has squarely rejected plaintiffs' reading of *Interstate Circuit* and held that a hub-and-spoke claim without an agreement among the spokes "is not a hub-and-spoke conspiracy at all." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n.3

---

[1] Capitalized terms not defined herein have the meanings set forth in defendants' memorandum of law in support of their joint motion to dismiss. (ECF No. 91 ("Mem.").)

1

(9th Cir. 2015). In any event, plaintiffs do not plead that any Hotel Defendant ever adopted Rainmaker's pricing suggestions, let alone agreed with Rainmaker (or anyone else) to do so.

<u>Third</u>, in a last-ditch effort to rescue their complaint, plaintiffs assert—for the first time—that they are challenging the (unpleaded) "vertical agreements" between each Hotel Defendant and Rainmaker to "use" a Revenue Management Product's pricing suggestions. The Court should reject that pivot because the only agreement challenged in the complaint is the alleged horizontal agreement among Hotel Defendants. Besides, the complaint fails to allege supposed vertical agreements or the scope of those agreements. To the contrary, the complaint demonstrates that hotels utilizing Revenue Management Products were free to reject any pricing suggestion.

## ARGUMENT

### I. PLAINTIFFS HAVE NO ANSWERS TO KENDALL'S "BASIC" QUESTIONS

The opposition confirms that plaintiffs have not pleaded answers to the Ninth Circuit's "basic" threshold questions articulated in *Kendall*. Instead, plaintiffs dismiss *Kendall*'s controlling standard as "dicta[] in a footnote" and relegate it to the end of their brief. (Opp. at 24.) But the Ninth Circuit has repeatedly affirmed that "plaintiffs must plead evidentiary facts: 'who, did what, to whom (or with whom), where, and when.'" *See, e.g.*, *Musical Instruments*, 798 F.3d at 1194 (quoting *Kendall*, 518 F.3d at 1048). Plaintiffs also cannot dispute that the Ninth Circuit has affirmed dismissal of complaints that provided better answers to those questions than plaintiffs do here. *See, e.g.*, *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 691 F. App'x 389, 390-91 (9th Cir. 2017) ("[The] allegations identifying specific agreements between certain defendants fare no better [because] these allegations fail to explain where and when any such agreement was consummated . . . ."). Plaintiffs rely almost exclusively on out-of-circuit authority, and none of their "answers" to *Kendall*'s "basic" questions are sufficient under Ninth Circuit law:

**Who**: Citing no authority, plaintiffs incorrectly argue they have adequately answered this question because the "who" is "Operators, whose . . . likely scores of employees across multiple companies . . . are plausibly alleged to have used Rainmaker's algorithms and adopted its pricing." (Opp. at 22.) But *Kendall* bars answering the "who" question so vaguely; it held that identifying "banks" as the alleged conspirators was insufficient. 518 F.3d at 1048. Plaintiffs' speculation—

2

not alleged in the complaint—that "likely scores of employees" adopted Rainmaker's algorithms (Opp. at 22 n.77) only highlights the deficiencies in their pleading because plaintiffs cannot identify even one such employee. *See Kendall*, 518 F.3d at 1047 (reasoning that the need to identify employees is acute where defendants "are large institutions with hundreds of employees").

**When**: Citing two opinions from the Northern District of Illinois, plaintiffs assert it "is not the law" that they must plead "exactly when a conspiracy was formed." (Opp. at 23.) But plaintiffs, once again, have no answers for authority within the Ninth Circuit holding that their admission that the conspiracy "beg[an] at a time currently unknown" (ECF No. 1 ¶ 87) is fatal. (*See* Mem. at 8-9.) Instead, plaintiffs speculate that the conspiracy could have begun in 2012 when Treasure Island allegedly started subscribing to a Revenue Management Product, in 2015 or 2017 "when Rainmaker introduced new pricing algorithms," or in 2019 at the start of the class period. (Opp. at 23.)[2] But guesses spanning a nearly ten-year timespan do not "give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall*, 518 F.3d at 1047; *see also Cal. Crane Sch., Inc. v. Google LLC*, No. 21-CV-10001 (HSG), 2023 WL 2769096, at *5 (N.D. Cal. Mar. 31, 2023) (dismissing conspiracy claim where "critically, Plaintiff acknowledges that it 'do[es] not know when the agreement was originally formed'" (alteration in original)).

**What**: Plaintiffs do not meaningfully dispute that the Ninth Circuit decisions cited by defendants dismissed complaints for failing to allege what defendants did to form an agreement, how any supposed agreement would operate, or how defendants monitor or enforce compliance with any such agreement. (Mem. at 8-10.) Rather, they argue that those decisions are inapplicable because the claims there "either (1) did not plead vertical agreements or (2) . . . rested on the existence . . . of *specific agreements between defendants*." (Opp. at 23.)

Not only are those purported distinctions at odds with blackletter law establishing that an agreement among Hotel Defendants is an essential element of plaintiffs' claim (*see infra* pp. 8-9), they do nothing to distinguish *Kendall*. In *Kendall*, the plaintiffs alleged that the bank defendants

---

[2] Plaintiffs argue that they "plausibly allege that . . . [Hotel] Operators have entered into agreements with Rainmaker since at least 2012" (Opp. at 23), but they do not dispute that the complaint pleads nothing about when (if at all) Caesars, MGM, or Wynn entered any such agreement regarding their hotels on the Las Vegas Strip. (Mem. at 14.)

3

entered into vertical agreements with the credit card networks and that "there is an agreement among all [the banks] to charge a minimum merchant discount fee set by the [credit card networks]." 518 F.3d at 1048. Yet the Ninth Circuit affirmed dismissal because there were "no facts alleged to support . . . what" the banks did to form such an agreement. *Id.* Plaintiffs' second purported distinction of *Kendall* and its progeny is also unavailing because, as in *Kendall*, plaintiffs' claim here rests on an unsubstantiated horizontal agreement—i.e., the purported "agreement among [Hotel] Defendants to use pricing algorithms provided by Rainmaker." (ECF No. 1 ¶ 88.) But like the plaintiffs in *Kendall*, plaintiffs here "do not allege any facts to support their theory that [Hotel Defendants] conspired or agreed with each other." 518 F.3d at 1048.

Finally, while plaintiffs contend they answered the "what" for their new—and unpleaded—theory that "each [Hotel Defendant] entered into a[] [vertical] agreement with Rainmaker to use its algorithms" (Opp. at 16), the complaint fails to explain what it means to agree to "use" Revenue Management Products that—as plaintiffs concede—have other functionalities besides pricing suggestions. (*Id.* at 4.) And to the extent plaintiffs contend that "use" means "adopt suggested prices," plaintiffs do not dispute that the complaint fails to allege that any Hotel Defendant ever adopted a Revenue Management Product's suggested price for any room at a hotel on the Strip.

Plaintiffs instead assert "that (1) Rainmaker's algorithms are used by 90% of the hotels on the Strip; [and] (2) that Rainmaker's pricing recommendations are accepted 90% of the time." (*Id.* at 22-23.) The first assertion is not alleged in the complaint. Rather, the complaint alleges that "Rainmaker Group's <u>products</u> are used by 90% of the hotels on the Las Vegas Strip" (ECF No. 1 ¶ 7) (emphasis added), but conspicuously does not allege that any Hotel Defendant "used" an <u>algorithm</u>—let alone adopted its pricing suggestions. Thus, alleging that some hotels on the Strip use Rainmaker products does not suggest that any Hotel Defendant adopted any algorithm's pricing suggestions. Plaintiffs fare no better with their allegation that Rainmaker's pricing suggestions are accepted 90% of the time. On its face, that statistic refers to all of Rainmaker's customers, and there are 32,000 hotels that subscribe to Rainmaker's services—suggesting Hotel Defendants' properties on the Strip represent a vanishingly small fraction.[3] Indeed, the Ninth

---

[3] Cendyn, *Customers*, available at https://www.cendyn.com/customers/ (last visited June 9, 2023).

4

Circuit in *Musical Instruments* squarely rejected allegations relying on such market-wide data as too "overinclusive" to plausibly allege that the defendants conspired. 798 F.3d at 1197 & n.12.

In attempting to satisfy the *Kendall* standard, plaintiffs cite only one case within the Ninth Circuit—*In re Fresh & Process Potatoes Antitrust Litigation*, 834 F. Supp. 2d 1141 (D. Idaho 2011). But *Potatoes* only highlights the complaint's deficiencies because plaintiffs here do not furnish answers to the questions that the *Potatoes* complaint answered. *See id*. at 1163 ("This complaint does answer the basic who-what-where-when question. Specifically: Who? Twenty-three growers . . . When? Fall 2004. Where? An office in Blackfoot, Idaho."). Accordingly, the complaint should be dismissed because it has no well-pleaded answers to *Kendall*'s questions.

## II. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A HORIZONTAL AGREEMENT

Plaintiffs' claim should also be dismissed because they fail to plead direct or circumstantial evidence plausibly suggesting that Hotel Defendants reached any agreement. Instead, plaintiffs argue that they need not plead an agreement among Hotel Defendants, or alternatively, that Hotel Defendants' alleged knowledge that the other Hotel Defendants had purportedly entered into vertical agreements with Rainmaker to "use" prices suggested by Revenue Management Products would be sufficient. (Opp. at 6-15.) Neither argument has a home in the complaint or the law.

### A. Plaintiffs Do Not Plead Direct or Circumstantial Evidence of An Agreement

Plaintiffs concede that they fail to plead direct evidence of a conspiracy, and they fail to meaningfully defend their insufficient pleading of circumstantial evidence.

#### 1. The Ninth Circuit Has Rejected Plaintiffs' Parallel Conduct Argument

Plaintiffs argue that the "parallel conduct here is [Hotel Defendants'] use of the same algorithmic approach to pricing" (*id.* at 12), but this assertion is insufficient to allege parallel conduct because plaintiffs do not dispute that they fail to allege a single instance in which any Hotel Defendant (i) adopted a price suggested by a Revenue Management Product—much less did so in parallel with others; or (ii) priced rooms at the same rate as another Hotel Defendant. (Mem. at 14-15.)

Plaintiffs contend that they do not need to allege facts showing any agreement because the Court can infer collusion from the allegations that "Rainmaker's marketing materials tout that its

5

recommendations are accepted '90%' of the time." (Opp. at 10-12.) That alleged market-wide average rate of acceptance, however, does not suggest that any Hotel Defendant accepted those recommendations (*see supra* p. 5)—let alone that they all did so contemporaneously.

Plaintiffs argue that timing is immaterial because courts have accepted actions taken "five years" apart as sufficiently parallel. (Opp. at 11.) But the Ninth Circuit has squarely held the opposite where "defendants adopted the policies over a period of several years" because "such slow adoption of similar policies does not raise the specter of collusion." *Musical Instruments*, 798 F.3d at 1196. Thus, plaintiffs' attempt to plead parallel conduct fails as a matter of law.

### 2. Plaintiffs' "Plus Factors" Are Irrelevant

Plaintiffs next argue that, because they supposedly have pleaded plus factors, the Court can infer that they have alleged an agreement. But plaintiffs do not dispute that "plus factors" are irrelevant when, as here, the complaint fails to adequately allege parallel conduct. (Mem. at 13, 16.) But even if the Court considered the "plus factors," plaintiffs' opposition confirms that they do not render the purported agreement among Hotel Defendants any more plausible.

**Market concentration**: Plaintiffs do not engage with Ninth Circuit authorities holding that market concentration alone does not render an inference of conspiracy plausible. In fact, a decision on which plaintiffs rely holds that "large market share . . . does not count as a plus factor." *Litovich v. Bank of Am. Corp.*, 568 F. Supp. 3d 398, 432 (S.D.N.Y. 2021) (quoted at Opp. at 12).[4]

**Information exchange and trade associations**: Plaintiffs do not dispute that the complaint fails to allege that any Revenue Management Product facilitated the exchange of any non-public information between Hotel Defendants. (Mem. at 17-18.) Instead, plaintiffs rely on their allegations that Hotel Defendants uploaded "transactional-level data" to Revenue Management Products (Opp. at 13), but plaintiffs do not allege that Rainmaker ever shared the data of one Hotel Defendant with another. Plaintiffs also do not dispute that they failed to allege that any Hotel Defendant attended a conference hosted by Rainmaker. Rather, they argue that the numerous authorities cited by defendants holding that mere attendance at trade association meetings is not a

---

[4] Defendants assume plaintiffs intended to cite *Litovich*; although plaintiffs selectively quote that opinion, they fail to provide a citation to it. Plaintiffs also mischaracterize *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42 (9th Cir. 2022), but cannot dispute that the court held that market concentration by itself is insufficient. *Id*. at 45.

plus factor are inapplicable because "unlike here, there was no allegation that the defendants used meetings in the same way . . . i.e., as a specific mechanism for coordinated price-setting." (*Id.*) But plaintiffs allege virtually nothing about any trade association meeting hosted by Rainmaker, let alone that Hotel Defendants used those meetings as a "mechanism" to jointly adopt prices suggested by a Revenue Management Product or exchange "competitively sensitive" information.

**Fungibility of hotel rooms**: Plaintiffs argue it is "premature" to consider whether Hotel Defendants' rooms on the Las Vegas Strip are fungible (*id.* at 14), but do not dispute that they fail to plausibly suggest that a prospective guest would book a room at the Wynn if Treasure Island were sold out. (Mem. at 18-19.) And "common sense" here directs that plaintiffs' conclusory allegation regarding the fungibility of every room at every hotel managed by Hotel Defendants on the Strip is "not natural," but rather "contorted to meet their litigation needs." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018) (citation omitted).

**The complaint offers non-conspiratorial alternatives**: In response to defendants' argument that a hotel could be motivated to unilaterally subscribe to a Revenue Management Product because those products improve revenue and demand forecasting (Mem. at 19), plaintiffs argue that the complaint alleges "over-discounting is only prevented if [Hotel] Operators take the same approach to pricing." (Opp. at 14.) But Plaintiffs do not allege that any Hotel Defendant adopted algorithmic pricing recommendations or that using Rainmaker products would help Hotel Defendants increase their profits only if other Hotel Defendants did the same. *See William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 669 (9th Cir. 2009) ("*Gilley II*") (rejecting Section 1 claim where plaintiffs' allegations failed to show that defendants' actions "were part of any agreement or conspiracy, rather than independent efforts to maximize profits"). Rather, plaintiffs' unadorned theory that hotels would only collectively adopt a Revenue Management Product's pricing suggestions is undermined by their allegation that Treasure Island began subscribing to those products well before any other Hotel Defendant. (*Compare* ECF No. 1 ¶ 16 (suggesting Treasure Island began subscribing to Revenue Management Products in 2012), *with id.* ¶ 11 n.6 (citing article suggesting other Hotel Defendants subscribed to unidentified products in

///

2015)). While plaintiffs point to allegations regarding gas stations in Germany and Uber (*id*. ¶¶ 62-65), those allegations obviously say nothing about Hotel Defendants.

### B. Plaintiffs Misstate the Law Regarding "Hub-and-Spoke" Conspiracies

Plaintiffs incorrectly cite *Interstate Circuit* to argue that they need not plead an agreement among Hotel Defendants as long as they plead: "(1) vertical agreements and (2) knowledge among horizontal competitors that each was entering into the same vertical agreement." (Opp. at 9.) Plaintiffs mischaracterize *Interstate Circuit* and plead neither vertical agreements nor knowledge of those unalleged agreements among Hotel Defendants.

#### 1. Plaintiffs Must Allege An Agreement Among Hotel Defendants

"[T]he crucial question" in a Section 1 case "is whether the challenged anticompetitive conduct 'stem[s] from . . . an agreement, tacit or express.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007) (citations omitted). That "crucial question" is the same when a complaint alleges a hub-and-spoke conspiracy, as plaintiffs must plead the "spokes . . . that enter into vertical agreements with the hub" and "the rim of the wheel, which consists of horizontal agreements among the spokes" because "a rimless hub-and-spoke conspiracy is not a hub-and-spoke conspiracy at all . . . ." *Musical Instruments*, 798 F.3d at 1192 & n.3. Therefore, "[t]he critical issue for establishing a . . . hub and spoke system is how the spokes are connected to each other." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 327 (3d Cir. 2010) (citation omitted).

*Interstate Circuit* is not to the contrary. There, a theater chain, Interstate, wrote to eight distributors at the same time, asking them to restrict further distribution to second-run theatres in exchange for their "continued exhibition of the distributors' films." 306 U.S. at 216-17. The letter was addressed to all eight distributors, each of whom "was aware" that "without substantially unanimous action . . . there was risk of a substantial loss of the business and good will." *Id*. at 222. Thus, the "[k]ey to *Interstate Circuit*'s conspiracy finding was its determination that each distributor's decision to accede to Interstate's demands would have been economically self-defeating unless the other distributors did the same" because the demands otherwise offered "no reasonable prospect of countervailing benefits." *Ins. Brokerage*, 618 F.3d at 331; *see also United States v. Apple, Inc.*, 791 F.3d 290, 320 (2d Cir. 2015) (explaining that under *Interstate Circuit*, a

8

conspiracy can be inferred where "multiple competitors sign vertical agreements that would be against their own interests") (cited at Opp. at 7, 11). It is thus well established that *Interstate Circuit* "does not relieve plaintiffs of the obligation to allege facts 'plausibly suggesting . . . a common design and understanding'" among the spokes. *Ins. Brokerage*, 618 F.3d at 331.

The "key to *Interstate Circuit*'s conspiracy finding," *id.*, is absent here because plaintiffs have not alleged that a Hotel Defendant would only use a Revenue Management Product if all Hotel Defendants unanimously did so at the same time. To the contrary, plaintiffs allege that: (1) the Revenue Management Products provided individual user hotels "countervailing benefits," *id.*, such as "real-time data" (ECF No. 1 ¶ 45); and (2) Hotel Defendants started using those products at different times (*see supra* p. 7).

### 2. Knowledge of Unalleged Vertical Agreements Is Insufficient

Plaintiffs argue that Hotel Defendants' knowledge "that their competitors" entered into "vertical agreements" with Rainmaker to "use" its pricing suggestions plausibly suggests Hotel Defendants agreed among themselves to use those pricing suggestions (Opp. at 8-9), but their argument finds no support in the complaint or the law.

First, plaintiffs have failed to plausibly allege that any Hotel Defendant entered into a vertical agreement to adopt a Revenue Management Product's pricing suggestions. While plaintiffs assert in their opposition that "90% of hotels [on] the Strip use Rainmaker's pricing algorithms" (Opp. at 15-16), the complaint does not plead any such fact, as explained previously (*see supra* p. 4). And the allegation that the Revenue Management Products' pricing suggestions are adopted 90% of the time across <u>all</u> subscribers does not plausibly suggest that Hotel Defendants adopted those suggestions at their hotels on the Strip. (*See supra* pp. 4-5.)

Moreover, by acknowledging that prices suggested by a Revenue Management Product are only accepted by subscribers some of the time, the complaint pleads that any hotel receiving a pricing suggestion was free to decline it. It is well-settled that non-binding pricing suggestions are insufficient to plead a vertical agreement to use the price suggested. *See Gen. Cinema Corp. v. Buena Vista Distrib. Co.*, 681 F.2d 594, 597 (9th Cir. 1982) (holding that contract providing recipient discretion to decline pricing suggestions was not a vertical agreement on price); *Acquaire*

9

*v. Canada Dry Bottling Co. of N.Y.*, 24 F.3d 401, 410 (2d Cir. 1994) ("Evidence of pricing suggestions . . . is not sufficient . . . to transgress § 1 of the Sherman Act."). Thus, because plaintiffs themselves concede that hotels receiving a pricing recommendation from a Revenue Management Product were free to decline it, plaintiffs have failed to plead that each Hotel Defendant entered into a vertical agreement with Rainmaker to "use" those pricing suggestions.

The cases plaintiffs cite are not to the contrary. For example, plaintiffs rely on *William O. Gilley Enterprises, Inc. v. Atlantic Richfield Co.*, 561 F.3d 1004 (9th Cir. 2009) ("*Gilley I*"), to argue that a vertical agreement can be inferred even when the agreement does not "control prices." (Opp. at 16 n.49.) But the Ninth Circuit withdrew that portion of the opinion and declined to embrace it in *Gilley II*. Indeed, plaintiffs' unpleaded theory suffers from similar defects identified in *Gilley II*, namely that plaintiffs "do[] not clearly assert which individual agreement or agreements constitute . . . a 'contract [that] restrain[s] trade.'" 588 F.3d at 669 (citation omitted).

<u>Second</u>, plaintiffs fail to allege that any Hotel Defendant knew that another Hotel Defendant purportedly agreed with Rainmaker to adopt a Revenue Management Product's pricing suggestions. While plaintiffs invoke their allegation that Hotel Defendants "probably knew" that their competitors "participate in and contribute data to" the Revenue Management Products (ECF No. 1 ¶¶ 10, 22, 74), plaintiffs cannot point to any allegation that Hotel Defendants knew that other Hotel Defendants were using a Revenue Management Product's <u>pricing suggestions</u>.

<u>Third,</u> even had plaintiffs adequately pleaded that each Hotel Defendant separately agreed with Rainmaker to adopt a Revenue Management Product's pricing suggestions and that each Hotel Defendant knew that every other Hotel Defendant had reached such an agreement, that still would be insufficient. Indeed, "firms may engage in consciously parallel conduct through observation of their competitors' decisions, even absent an agreement." *Musical Instruments*, 798 F.3d at 1195. And the Ninth Circuit has rejected plaintiffs' reading of *Interstate Circuit*, holding that it cannot be read to permit plaintiffs to establish an agreement based on "conscious parallelism." *See Filco v. Amana Refrigeration, Inc.*, 709 F.2d 1257, 1266-67 (9th Cir. 1983).[5]

---

[5] The opinions plaintiffs cite (Opp. at 7-9) are distinguishable because each emphasized that the plaintiffs had allegations extending "[b]eyond just 'conscious parallelism.'" *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp 3d 187, 244-45 (S.D.N.Y. 2019); *see*

10

*(cont'd)*

## III. PLAINTIFFS' UNPLEADED VERTICAL AGREEMENT THEORY FAILS

Plaintiffs cannot rescue their complaint with their new argument that they challenged vertical agreements between each Hotel Defendant and Rainmaker, because that theory is not alleged in the complaint, and even if it were, it would fail at every step.

Courts routinely refuse to supplement a plaintiff's allegations in search of possible unpleaded antitrust violations. *See, e.g.*, *Gilley II*, 588 F.3d at 669 ("The SAC is not saved by the argument that it could be read to encompass a claim that the individual agreements . . . constitute a restraint of trade because the SAC does not provide the defendants fair notice of such a claim . . . ."); *see also Sabina v. James River Ins. Co.*, No. 22-CV-1456 (JCM), 2020 WL 6545866, at *2 (D. Nev. Nov. 6, 2020) ("[T]he court cannot consider new facts alleged in Sabina's opposition to a motion to dismiss.").

Here, the only agreement challenged in the complaint is a single "<u>agreement</u> among [Hotel] Defendants to use pricing algorithms provided by Rainmaker." (ECF No. 1 ¶ 88 (emphasis added); *see also id.* ¶ 3 ("The Hotel Operators have colluded to adopt these algorithms.").)  Nowhere does the complaint challenge vertical agreements between each Hotel Defendant and Rainmaker; in fact, the complaint does not mention the word "vertical" at all.  And even assuming that plaintiffs had pleaded a challenge to "vertical agreements," the complaint would still fail to plausibly allege the elements—an agreement, relevant market, and anticompetitive harm—necessary to challenge the supposed vertical agreements.  For starters, plaintiffs fail to plausibly allege that any Hotel Defendant agreed with Rainmaker to adopt a Revenue Management Product's pricing suggestions; to the contrary, they concede that hotels were free to reject them.  (*See supra* pp. 9-10.)[6]

Finally, the complaint fails to allege that the purported vertical agreements to adopt a Revenue Management Product's suggested prices produced anticompetitive effects.  Plaintiffs do

---

*also Apple*, 791 F.3d at 314 (fact that horizontal conspirators "were in constant communication regarding their negotiations with both Apple and Amazon [could] hardly be disputed"); *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 935-36 (7th Cir. 2000) ("direct evidence of communications" between spokes); *Nastasi & Assocs., Inc. v. Bloomberg, L.P.*, No. 20-CV-5428 (JMF), 2022 WL 4448621, at *12 (S.D.N.Y. Sept. 23, 2022) ("[P]re-determined winning subcontractor would communicate the winning subcontractor bid amount . . . .").

[6] Nor does the complaint adequately allege a relevant market.  Rather, plaintiffs' argument that every room offered by Hotel Defendants on the Strip are reasonable substitutes for each other defies "common sense." (*See supra* p. 7.)

not dispute that any supposed vertical agreement by itself would not produce anticompetitive effects. Instead, plaintiffs attempt to aggregate the effects of the purported vertical agreements between each Hotel Defendant and Rainmaker. (Opp. at 19-20.)[7] But even the authorities on which plaintiffs rely hold that such aggregation is impermissible in these circumstances. For instance, the Ninth Circuit's precedential opinion in *Gilley II* affirmed the district court's conclusion that the complaint did not allege that the vertical agreements "violate the anti-trust laws due to their anti-competitive effect," while distinguishing between claims alleging each vertical agreement has "a discrete effect on competition" and those alleging "a network of . . . agreements" that "allow Defendants to coordinate" pricing. 588 F.3d at 664-65.[8] The court concluded that distinction was "critical" because to state a Section 1 claim based only on vertical agreements, plaintiffs must allege that <u>each</u> agreement has "a discrete effect on competition." *Id*.

That "critical" distinction is dispositive here because plaintiffs do not—and cannot—allege that any of the supposed vertical agreements had a "discrete effect on competition." As in *Gilley II*, the purported anticompetitive effect flows only from the alleged agreement among Hotel Defendants to adopt Revenue Management Products' pricing suggestions, but that claim fails because plaintiffs do not plead facts plausibly suggesting the existence of any such conspiracy.

## **CONCLUSION**

The complaint should be dismissed with prejudice because plaintiffs cannot answer the Ninth Circuit's mandatory pleading questions, plead direct or circumstantial evidence plausibly suggesting a horizontal agreement among Hotel Defendants, or state a claim based on their new (unpleaded) challenge to "vertical agreements." Plaintiffs' unsupported request for leave to amend should be denied because they do not identify any facts that would cure the complaint's infirmities. *See Dearaujo v. PNC Bank*, No. 12-CV-00981(MMD), 2012 WL 5818131, at *4 (D. Nev. Nov. 15, 2012) (denying request for leave to amend because plaintiffs failed to identify "additional facts").

---

[7] The opposition claims that the complaint pleads "direct evidence" of anticompetitive effects. (Opp. at 17.) But nothing in the complaint directly demonstrates that any Hotel Defendant's use of Rainmaker's products led to higher room rates or reduced output in the form of lower occupancy.

[8] Plaintiffs wrongly claim that the withdrawn opinion in *Gilley I* is "persuasive authority"; contrary to plaintiffs' representation, that decision did not "conclude[] that individual contracts defendants separately executed could be considered in the aggregate." (Opp. at 20 n.68.)

Dated: June 12, 2023                    Respectfully submitted,

 /s/ Todd L. Bice                                    /s/ Adam Hosmer-Henner
Todd L. Bice (NSBN 4534)                   Adam Hosmer-Henner (NSBN 12779)
Brianna Smith (NSBN 11795)                 Chelsea Latino (NSBN 14227)
PISANELLI BICE PLLC                        Jane Susskind (NSBN 15099)
400 S. 7th Street, Suite 300               McDONALD CARANO LLP
Las Vegas, NV 89101                        100 West Liberty Street, Tenth Floor
Telephone: 702-214-2100                    Reno, Nevada 89501
tlb@pisanellibice.com                      (775) 788-2000
bgs@pisanellibice.com                      ahosmerhenner@mcdonaldcarano.com
                                           clatino@mcdonaldcarano.com
Bethany Kristovich (*pro hac vice*)        jsusskind@mcdonaldcarano.com
Kyle Mach (*pro hac vice*)
Justin Raphael (*pro hac vice*)            Boris Bershteyn (*pro hac vice* )
Juliana Yee (*pro hac vice*)               Ken Schwartz (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP                 Michael Menitove (*pro hac vice*)
350 S. Grand Ave.; 50th Floor              Sam Auld (*pro hac vice*)
Los Angeles, CA 90071                         SKADDEN, ARPS, SLATE,
Telephone: 213 683 9100                       MEAGHER & FLOM LLP
bethany.kristovich@mto.com                 One Manhattan West
kyle.mach@mto.com                          New York, New York 10001
justin.raphael@mto.com                     (212) 735-3000
juliana.yee@mto.com                        Boris.Bershteyn@skadden.com
                                           Ken.Schwartz@skadden.com
*Attorneys for Defendant MGM Resorts*      Michael.Menitove@skadden.com
*International*                            Sam.Auld@skadden.com

                                           *Attorneys for Defendant*
                                           *Caesars Entertainment, Inc.*

 /s/ Patrick G. Byrne                       /s/ J. Colby Williams
Patrick G. Byrne                           J. Colby Williams (5549)
Nevada Bar No. 7636                        710 South Seventh Street
Bradley Austin                             Las Vegas, NV 89101
Nevada Bar No. 13064                       Telephone: (702) 382-5222
SNELL & WILMER                             Facsimile: (702) 382-0540
3883 Howard Hughes Parkway                 jcw@cwalawlv.com
Las Vegas, NV 89169
Telephone: (702) 784-5200                  Sadik Huseny (*pro hac vice*)
Facsimile: (702) 784-5252                  Tim O'Mara (*pro hac vice*)
pbyrne@swlaw.com                           Brendan A. McShane (*pro hac vice*)
baustin@swlaw.com                          LATHAM & WATKINS LLP
                                           505 Montgomery Street, Suite 2000
Mark Holscher (*pro hac vice*)             San Francisco, CA 94111-6538
Tammy Tsoumas (*pro hac vice)*             Telephone: (415) 391-0600
Leonora Cohen (*pro hac vice*)             Facsimile: (415) 395-8095
KIRKLAND & ELLIS LLP                       sadik.huseny@lw.com

13

| | | |
|---|---|---|
|1| 2049 Century Park East, Suite 3700 | tim.o'mara@lw.com |
|2| Los Angeles, California 90067 | brendan.mcshane@lw.com |
| | Telephone: (310) 552-4200 | |
|3| Facsimile: (310) 552-5900 | Anna M. Rathbun (*pro hac vice*) |
| | ttsoumas@kirkland.com | LATHAM & WATKINS LLP |
|4| mholscher@kirkland.com | 555 Eleventh Street, NW Suite 1000 |
| | lena.cohen@kirkland.com | Washington, DC 20004-1304 |
|5| | Telephone: (202) 637-3381 |
| | Matthew Solum (*pro hac vice*) | Facsimile: (202) 637-2201 |
|6| KIRKLAND & ELLIS LLP | anna.rathbun@lw.com |
|7| 601 Lexington Ave | |
| | New York, NY 10022 | *Attorneys for Defendant Cendyn Group LLC* |
|8| Telephone: (212) 446-4688 | |
| | Facsimile: (917) 848-7536 | |
|9| msolum@kirkland.com | |

*Attorneys for Defendant Wynn Resorts Holdings, LLC*

 /s/ Nicholas J. Santoro                   /s/ Patrick J. Reilly
Nicholas J. Santoro (NV Bar No. 532)       Patrick J. Reilly
300 S. 4th Street, Suite 1600              Arthur A. Zorio
Las Vegas, NV 89101                        Emily Garnett (*pro hac vice*)
Tel.: (702) 791-0308 / Fax: (702) 791-1912 Eric D. Walther
nsantoro@nevadafirm.com                    BROWNSTEIN HYATT FARBER
                                           SCHRECK, LLP
Arman Oruc (*pro hac vice forthcoming*)    100 North City Parkway, Ste. 1600
GOODWIN PROCTER LLP                        Las Vegas, NV 89106
1900 N Street, N.W.                        Telephone:  702.382.2101
Washington, DC 20036-1612                  preilly@bhfs.com
Tel.: (202) 346-4000 / Fax: (202) 346-4444 azorio@bhfs.com
AOruc@goodwinlaw.com                       egarnett@bhfs.com
                                           ewalther@bhfs.com
Alicia Rubio-Spring (*pro hac vice*)
GOODWIN PROCTER LLP                        *Attorneys for Defendant Treasure Island, LLC*
100 Northern Avenue
Boston, MA 02110
Tel.: (617) 570-1000 / Fac: (617) 523-1231
ARubio-Spring@goodwinlaw.com

*Attorneys for Defendant The Rainmaker Group Unlimited, Inc.*

14