Todd L. Bice, Bar No. 4534
Brianna G. Smith, Bar No. 11795
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada  89101
Telephone: (702) 214-2100
tlb@pisanellibice.com
bgs@pisanellibice.com

Bethany W. Kristovich (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
bethany.kristovich@mto.com

Kyle W. Mach (*pro hac vice*)
Justin P. Raphael (*pro hac vice*)
Juliana M. Yee (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
560 Mission St., 27th Floor
San Francisco, CA 94105-2907
Telephone: (415) 512-4000
kyle.mach@mto.com
justin.raphael@mto.com
juliana.yee@mto.com

*Attorneys for MGM Resorts International*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| RICHARD GIBSON, and HERIBERTO VALIENTE,<br><br>Plaintiffs,<br><br>v.<br><br>MGM RESORTS INTERNATIONAL, CENDYN GROUP, LLC, THE RAINMAKER GROUP UNLIMITED, INC., CAESARS ENTERTAINMENT INC., TREASURE ISLAND, LLC, WYNN RESORTS HOLDINGS, LLC,<br><br>Defendants. | CASE NO.: 2:23-cv-00140-MMD-DJA<br><br>**MGM RESORTS INTERNATIONAL'S REPLY IN SUPPORT OF ITS SEPARATE MOTION TO DISMISS** |

Plaintiffs' antitrust claim is that operators of hotels in Las Vegas "agreed to use Rainmaker Pricing Algorithms to inflate prices for hotel rooms," and "implemented their conspiracy" by "receiving forward-looking, room-specific pricing recommendations" from Rainmaker software. Opp. at 3. That claim must be dismissed as to MGM because Plaintiffs have not alleged that MGM operates a hotel that used Rainmaker pricing algorithms or received Rainmaker pricing recommendations.

As explained in Defendants' reply in support of their joint motion to dismiss (which MGM joins in full), Plaintiffs have failed to allege that defendants agreed *with each other* to set prices based on Rainmaker recommendations. Accordingly, they have advanced a new theory—alleged nowhere in their complaint—that the hotels individually "agreed to use Rainmaker while knowing their competitors were also using Rainmaker," ECF 109 at 3, which fails as a matter of law. But even if "using Rainmaker with the knowledge that other Defendants were as well," *id.* at 2, could theoretically state an antitrust claim (and it does not), Plaintiffs state no such claim against MGM because they have not pled that MGM-operated hotels were "using Rainmaker." Accordingly, Plaintiffs' claims against MGM should be dismissed. That dismissal should be with prejudice because Plaintiffs have not explained how they would amend their complaint to cure the deficiencies in their pleading as to MGM, nor have they filed a proposed amended complaint as required by Local Rule 15-1.[1]

Further, Plaintiffs' failure to plead that MGM joined the conspiracy warrants dismissal of Plaintiffs' claim against all defendants because Plaintiffs have not explained, as the law requires, why it would make economic sense for the other defendants that operated eleven hotels to conspire to inflate prices if consumers could avoid those prices by staying at ten MGM hotels or numerous other hotels on the Las Vegas Strip instead.

---

[1] *See, e.g.*, *Dearaujo v. PNC Bank, Nat'l Ass'n*, No. 2:12-cv-00981, 2012 WL 5818131, at *4 (D. Nev. Nov. 15, 2012) (Du, J.) (denying leave to amend "both on procedural and substantive grounds" because "Plaintiff has failed to attach a proposed amendment" and "amendment is futile here").

## I. PLAINTIFFS MUST ALLEGE THAT MGM-OPERATED HOTELS USED RAINMAKER

Plaintiffs agree that, to survive a motion to dismiss, they must allege "that each individual defendant joined the conspiracy and played some role in it." Opp. at 2 (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008)). Plaintiffs do not dispute that this principle requires them to allege that MGM-operated hotels used Rainmaker to state a claim against MGM. After all, Plaintiffs allege that each hotel joined the conspiracy when it "agreed *to use* Rainmaker Pricing Algorithms" and played a role in the alleged conspiracy by "receiving forward-looking, room-specific pricing recommendations" from Rainmaker software. Opp. at 3. Thus, to meet their burden to allege that MGM joined the conspiracy and played some role in it, Plaintiffs must allege that MGM-operated hotels actually used Rainmaker software and received pricing recommendations from that software.

Plaintiffs' attempts to water down their burden to allege these facts misstate the law and misconstrue their own authorities. Plaintiffs cite *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896 (N.D. Cal. 2008), for the proposition that "district courts have rejected that a plaintiff's complaint must specify exactly how each individual defendant participated in the conspiracy, because such arguments 'rely on the standard for a motion for summary judgment.'" Opp. at 3 (quoting 580 F. Supp. 2d at 904). But that is not what the *SRAM* case says. The court in *SRAM* stated that plaintiffs "need to make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy." 580 F. Supp. 2d at 904; *see also SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1119 (9th Cir. 2022) ("[W]e require some showing—direct or circumstantial—that the defendants 'actively participated in an individual capacity in the scheme[.]'").[2]

Plaintiffs also argue that "courts should not 'indulge antitrust defendants who move to dismiss by 'tightly compartmentalizing the various factual components and wiping the slate clean

---

[2] The Court in *SRAM* found that plaintiffs had pled an antitrust conspiracy where (among other things) they cited "an email from a Hitachi employee to a Samsung employee asking, 'Are you willing to exchange product roadmaps again?'" *SRAM*, 580 F. Supp. 2d at 901. Plaintiffs allege no such communications between Las Vegas hotels.

after the scrutiny of each." Opp. at 3.  But there is no contradiction between that principle and the rule that "a complaint alleging an antitrust conspiracy must allege that each individual defendant joined the conspiracy and played some role in it…." *In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1047 (N.D. Cal. 2021) (quotation marks omitted).  None of Plaintiffs' cases hold that requiring a plaintiff to allege facts showing that each defendant joined an antitrust conspiracy is improperly "compartmentalizing the various factual components" of the plaintiffs' theory.  To the extent Plaintiffs' argument is that they can state a claim against MGM by alleging a conspiracy in general, that is not the law.

## II. PLAINTIFFS HAVE NOT ALLEGED THAT MGM-OPERATED HOTELS USED RAINMAKER

Plaintiffs have failed to meet their burden to allege that MGM-operated hotels in Las Vegas used Rainmaker software and thus have failed to allege that MGM joined a conspiracy "to use Rainmaker Pricing Algorithms to inflate prices for hotel rooms." Opp. at 3.  None of the allegations on which Plaintiffs rely supports an inference that MGM-operated hotels in Las Vegas used Rainmaker software.

### A. Plaintiffs' Allegations About an MGM Hotel in Atlantic City Are Insufficient

Plaintiffs point to allegations that the MGM-operated Borgata Hotel in *Atlantic City* used Rainmaker software.  That makes no sense.  Plaintiffs do not and cannot explain why the fact that a hotel in Atlantic City used Rainmaker suggests that ten hotels in Las Vegas did.  In fact, Plaintiffs' ability to allege this with respect to one property only highlights the apparent inability to allege that fact with respect to the ten MGM-operated properties in Las Vegas identified in Plaintiffs' complaint.

Plaintiffs' only response is to note that MGM has not challenged Plaintiffs' complaint "under Rule 11." Opp. at 5.  This conflates Plaintiffs' pleading burden under *Twombly* with the standard for ethical conduct.  There was no reason for MGM to send a Rule 11 letter *because Plaintiffs did not allege that the listed MGM-operated properties used Rainmaker*.  Plaintiffs cannot argue that they deserve mercy for obvious pleading deficiencies as a reward for abiding basic ethical standards.  Plaintiffs must *both* satisfy Rule 11 *and* plead facts to state a claim.  A

defendant does not acknowledge that a complaint states a claim by declining to assert that the pleading is sanctionable.  Plaintiffs' resort to that specious line of argument confirms the complete lack of merit in their argument that alleging facts about the Borgata in Atlantic City pleads that MGM joined a conspiracy regarding hotels in Las Vegas.

If Plaintiffs' allegations that the Borgata in Atlantic City used Rainmaker software mean anything, they undermine Plaintiffs' reliance on a press release from Rainmaker that MGM was among its clients.  *See* Opp. at 5.  The fact that MGM was a Rainmaker client is entirely consistent with the failure to plead that MGM-operated hotels in Las Vegas use Rainmaker software.  MGM would be a Rainmaker client if hotels it operates outside of Las Vegas used Rainmaker software, which is exactly what Plaintiffs allege.

**B.    Plaintiffs' Reliance on Supposed Confidential Witness Statements Are Insufficient**

Plaintiffs' allegations about statements of unidentified confidential witnesses do not plead that MGM-operated hotels in Las Vegas used Rainmaker software as a matter of law.

Plaintiffs do not allege any facts about these confidential witnesses other than that they were "a former Rainmaker employee" or a "former Rainmaker executive."  Compl. ¶¶ 7, 12.  Courts reject antitrust conspiracy claims premised on confidential witness statements where "Plaintiffs do not adequately explain their jobs and how their interactions in those jobs would lead to them acquiring the knowledge they allegedly possess."  *In re Cattle Antitrust Litig.*, No. CV 19-1129 (JRT/HB), 2020 WL 5884676, at *5 (D. Minn. Sept. 29, 2020) (dismissing antitrust claim given "the lack of detail about the Confidential Witnesses"); *see also In re Treasury Sec. Auction Antitrust Litig.*, 595 F. Supp. 3d 22, 44 (S.D.N.Y. 2022) (rejecting reliance on confidential witness statements given Plaintiffs' "failure to plead facts demonstrating that it is plausible that the UBS Executive would have knowledge of the alleged unlawful agreement among the Auction Defendants").  Those decisions are consistent with Ninth Circuit law that plaintiffs relying on confidential witnesses to meet their burden to plead specific facts must "provide[] an adequate

basis for determining that the witnesses in question have personal knowledge of the events they report." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 767 (9th Cir. 2023).[3]

Plaintiffs do not allege what jobs the confidential witnesses cited in their complaint had at Rainmaker, what their responsibilities were, or whether they had anything to do with any hotel clients in Las Vegas. Without such information, there is no basis to infer that Plaintiffs' confidential witnesses had reason to know what Plaintiffs allege they said. Unsurprisingly, Plaintiffs cite no case holding that such confidential witness statements can sustain an antitrust conspiracy claim.

Even if Plaintiffs' lack of any information about their confidential witnesses could be set aside, the confidential witness statements they allege do not plead that MGM joined the alleged conspiracy. Plaintiffs allege that "CW2 stated that Rainmaker Group was 'in a lot of the hotels.'" Compl. ¶ 16. That vague statement cannot support a plausible inference that MGM-operated hotels in Las Vegas used Rainmaker software. Plaintiffs themselves allege that more than a dozen hotels on the Las Vegas Strip alone are not operated by MGM, Compl. ¶ 43, so Rainmaker could be in "a lot of the hotels" without being used by hotels in Las Vegas operated by MGM.

Plaintiffs allege that "CW1, a former Rainmaker executive, estimated that Rainmaker Group's products were used by 90% of the hotels on the Las Vegas Strip." Compl. ¶ 7. Plaintiffs argue that this statement implies that MGM-operated hotels in Las Vegas used Rainmaker software because MGM and Caesar's operate 59% of the hotels on the Strip. Opp. at 5. That is incorrect. For one thing, alleging that hotels used "Rainmaker Group's products" does not necessarily allege that hotels used Rainmaker software that provided pricing recommendations

---

[3] Although the Ninth Circuit has applied that standard to complaints under the Private Securities Litigation Reform Act, it makes sense to apply similar requirements for confidential witness statements in antitrust conspiracy cases that present a similar threat of imposing discovery costs on defendants to defend meritless claims. Just as "[t]he purpose of the heightened pleading requirements contained in the PSLRA is 'to restrict abuses in securities class-action litigation, including . . . the abuse of the discovery process to coerce settlement,'" *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 147 n.7 (3d Cir. 2004), *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), *Twombly*'s pleading standard for antitrust conspiracy claims reflects the logic that "it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

because Plaintiffs allege that Rainmaker provides products that do not.  Compl. ¶¶ 17-18.  In addition, Plaintiffs' reliance on the supposed 90% estimate improperly infers MGM's "direct involvement based on [its] size and role in the industry" without any allegations "specifically directed at" MGM hotels in Las Vegas using Rainmaker.  *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1170 (D. Idaho 2011).

Tellingly, Plaintiffs do not quote the executive who made this supposed estimate.  Nor do they provide any factual basis for the estimate nor foundation for the witness's generic "90%" claim.  And Plaintiffs' failure to cite any information from this supposed "former Rainmaker executive" about which hotels in Las Vegas allegedly used Rainmaker software casts doubt on the statement's reliability and the propriety of Plaintiffs' reliance on it.  If Plaintiffs truly had access to an executive with reliable knowledge about which hotels in Las Vegas used Rainmaker software, one would expect Plaintiffs to have ***asked*** that executive to identify those hotels in order to ensure that Plaintiffs' complaint named only hotels that used the product involved in the alleged conspiracy.  Plaintiffs have not alleged any facts suggesting that this occurred.

Finally, Plaintiffs allege that "CW2 confirmed that 'Caesars probably knew we were in the Cosmopolitan and vice versa."  Compl. ¶ 22.  That statement does not actually plead that The Cosmopolitan actually participated in any conspiracy.  Further, the statement does not specify any time period, so it is unclear whether it had anything to do with MGM, which according to Plaintiffs acquired The Cosmopolitan in 2021.  Opp. at 6.  This is likely why the Complaint does not include the Cosmopolitan in the list of hotels that MGM operated in Las Vegas: Bellagio, VDARA at Aria, Aria, Park MGM, New York-New York, MGM Grand, Excalibur, Luxor, Mandalay Bay, and the Four Seasons Hotel.  Compl. ¶ 28.  As such, claims against MGM with respect to those hotels should be dismissed regardless of any inferences that could be drawn from supposed statement that "Caesars probably knew we were in the Cosmopolitan and vice versa."

### C. Plaintiffs' Allegations Regarding the Cosmopolitan Are Insufficient

Plaintiffs argue that a public statement about Rainmaker by an employee of The Cosmopolitan hotel in Las Vegas "supports a plausible inference of MGM's involvement in the conspiracy."  Opp. at 6.  But the statement alleged "was published in 2019," Opp. at 6 (citing

Compl. ¶ 74 n. 28), *before* MGM acquired The Cosmopolitan, *id*. A statement by an employee of a company that was completely independent of MGM does not support an inference that MGM joined any conspiracy to use Rainmaker software.[4] Indeed, The Cosmopolitan is not among the properties that MGM is alleged to "operate" in the complaint, presumably because it was recently acquired.

At a minimum, regardless of Plaintiffs' allegations regarding The Cosmopolitan, Plaintiffs' claims regarding the ten hotels in Las Vegas that MGM is alleged to operate—Bellagio, VDARA at Aria, Aria, Park MGM, New York-New York, MGM Grand, Excalibur, Luxor, Mandalay Bay, and the Four Seasons Hotel, Compl. ¶ 28—should be dismissed.

### III. PLAINTIFFS' FAILURE OF PLEADING AS TO MGM REQUIRES DISMISSAL OF PLAINTIFFS' CLAIMS AS TO ALL DEFENDANTS

Plaintiffs' failure to plead that MGM-operated hotels in Las Vegas used Rainmaker software, and thus that MGM joined any alleged conspiracy, makes their claims against the other defendants—who operate only eleven hotels in total—illogical. *See Sheahan v. State Farm Gen. Ins. Co.*, 442 F. Supp. 3d 1178, 1195 (N.D. Cal. 2020) (dismissing conspiracy claim based on theory that was "counterintuitive from an antitrust perspective"). Plaintiffs do not explain why eleven hotels in Las Vegas would have conspired "to inflate prices for hotel rooms," Opp. at 3, when consumers could avoid any inflated prices by staying at ten MGM hotels in Las Vegas—or at least nine other hotels on the Strip not operated by any defendants—instead.

Plaintiffs argue that the other hotel defendants could have market power even if they operate 11 out of 30, or 37%, of hotels on the Las Vegas Strip. Opp. at 8. But that is not a theory pled in Plaintiffs' complaint. The complaint does not allege any facts that hotels with this "share" of the *number* of hotels on the Strip would find it economically rational to inflate prices. In fact, that theory is inconsistent with what Plaintiffs' Complaint actually does allege. Plaintiffs allege that because some hotels are larger than others, simply counting properties "likely" does not accurately capture market dynamics. Compl. ¶ 71. That should be obvious: a hotel with 4000

---

[4] Plaintiffs do not dispute that their complaint fails to allege any facts about MGM's operation of The Cosmopolitan. *See* Mot. at 5 n. 2.

rooms will affect the market differently than a hotel with 400.  Thus, the study that Plaintiffs rely on from 2012—*before* the class period began—states that it was "beyond the scope of this analysis to determine the precise market share of each company."[5]  Schwartz, David G. *Concentration on the Las Vegas Strip: An exploration of the impacts*, GAMING LAW REVIEW AND ECONOMICS 17.9 (2013): 619-634  (cited at Compl. ¶ 71 n. 27).

Plaintiffs simply allege no facts as to why eleven hotels would conspire to inflate prices if consumers could avoid those prices by staying at MGM or other hotels that did not agree to inflate prices.  Thus, Plaintiffs' failure to allege that MGM-operated hotels in Las Vegas used Rainmaker software defeats their claim of a conspiracy to use Rainmaker software as to all defendants.

## CONCLUSION

For the reasons set forth above, in MGM's separate motion to dismiss, and in Defendants' briefs in support of their omnibus motion which MGM joins in full, Plaintiffs' claim against MGM should be dismissed.  Because Plaintiffs have not identified any possible way they can cure this deficiency, the claim should be dismissed with prejudice.

DATED:  June 12, 2023

By _____
Bethany W. Kristovich (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
bethany.kristovich@mto.com

//
//
//
//
//
//
//

---

[5] Available at https://digitalscholarship.unlv.edu/cgi/viewcontent.cgi?referer=&httpsredir=1&article=1448&context=lib_articles.

Kyle W. Mach (*pro hac vice*)
Justin P. Raphael (*pro hac vice*)
Juliana M. Yee (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
560 Mission St., 27th Floor
San Francisco, CA 94105-2907
Telephone: (415) 512-4000
kyle.mach@mto.com
justin.raphael@mto.com
juliana.yee@mto.com

Todd L. Bice, Bar No. 4534
Brianna Smith, Bar No. 11795
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: (702) 214-2100
tlb@pisanellibice.com
bgs@pisanellibice.com

*Attorneys for MGM Resorts International*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of Munger, Tolles & Olson LLP, and that on this 12th day of June, 2023, I caused to be served via the Court's e-filing/e-service system true and correct copies of the above and foregoing **MGM RESORTS INTERNATIONAL'S REPLY IN SUPPORT OF ITS SEPARATE MOTION TO DISMISS** to all parties registered for electronic service.

_____
An employee of Munger, Tolles & Olson LLP