1  **HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman (*pro hac vice*)
2  steve@hbsslaw.com
Ted Wojcik (*pro hac vice*)
3  tedw@hbsslaw.com
Stephanie A. Verdoia (*pro hac vice*)
4  stephaniev@hbsslaw.com
1301 Second Avenue, Suite 2000
5  Seattle, WA 98101
Telephone: (206) 623-7292
6  Facsimile:  (206) 623-0594

7  Rio S. Pierce (*pro hac vice*)
riop@hbsslaw.com
8  Abby R. Wolf (*pro hac vice*)
abbyw@hbsslaw.com
9  715 Hearst Ave, Suite 300
Berkeley, CA 94710
10  Telephone: (510) 725-3000
Facsimile:  (510) 725-3001

11
*Counsel for Plaintiffs and the Proposed Class*
12
*[Additional counsel listed on Signature Page]*
13
                  **UNITED STATES DISTRICT COURT**
14                      **DISTRICT OF NEVADA**

15  | RICHARD GIBSON, and HERIBERTO | No. 2:23-cv-00140-MMD-DJA |
    | VALIENTE, | |
16  | Plaintiffs, | **STIPULATION AND [PROPOSED]** |
    | | **ORDER REGARDING SEARCH AND** |
17  | v. | **PRODUCTION OF ELECTRONICALLY** |
    | | **STORED INFORMATION AND PAPER** |
18  | MGM RESORTS INTERNATIONAL, | **DOCUMENTS** |
    | CENDYN GROUP, LLC, THE RAINMAKER | |
19  | GROUP UNLIMITED, INC., CAESARS | |
    | ENTERTAINMENT INC., TREASURE | (<u>FIRST REQUEST</u>) |
20  | ISLAND, LLC, WYNN RESORTS | |
    | HOLDINGS, LLC, | |
21  | | |
    | Defendants. | |
22

23

24

25

26

27

28

This Order Regarding Search And Production Of Electronically Stored Information And Paper Documents ("ESI Protocol") shall govern the Parties in the above-captioned case.

## I.      GENERAL PROVISIONS

**A.      Applicability**: This ESI Protocol will govern the production of electronically-stored information ("ESI") and paper documents in this matter.

**B.      Limitations & Non-Waiver**: Pursuant to the terms of this ESI Protocol, information regarding the search process and ESI practices may be disclosed, but compliance with this ESI Protocol does not constitute a waiver, by any Party, of any objection to the production of particular ESI for any reason, including that it is irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party. Nothing in this ESI Protocol shall be construed to affect the discoverability of information or the admissibility of discoverable information. Nor shall anything in this ESI Protocol be construed to affect the authenticity of any document or data. All objections to the discoverability, admissibility, authenticity, confidentiality, or production of any documents and ESI are preserved and may be asserted at any time. For the avoidance of doubt, a Party's compliance with this ESI Protocol will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection. All Parties preserve all such privileges and protections, and all Parties reserve the right to object to any such privileges and protections.

**C.      Cooperation**: The Parties agree that the principles of cooperation, transparency, reasonableness, and proportionality, as set forth in the Federal Rules of Civil Procedure and as interpreted by federal case law as they conduct discovery in the Litigation, will apply to discovery in this matter.

**D.      Deadlines**: References to schedules and deadlines in this ESI Protocol & Search Methodology Order shall comply with Federal Rule of Civil Procedure 6 with respect to computing deadlines.

**E.      Definitions:**

1.      Plaintiffs and Defendants, as well as their officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this ESI Protocol. A single Plaintiff or Defendant, as well as, where applicable, its respective officers, directors, employees, and legal counsel, may also be referred to as a "Party" solely for the purposes of this ESI Protocol.

2.      "Plaintiffs" as used herein shall mean the proposed class as set forth in the operative complaint, and any other plaintiff who, in the future, brings an action that is deemed related to or consolidated with the above-captioned matter.

3.      "Defendants" as used herein shall mean Defendants named in the operative complaint.

**F.** **Confidential Information**: For the avoidance of doubt, nothing herein shall affect the Parties' rights and obligations with respect to any information designated as confidential or highly confidential under the forthcoming Protective Order.

## II. GENERAL PRODUCTION FORMAT PROTOCOLS

**A.** **TIFFs**: Except for structured data, all production images will be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique Bates number of that image, pursuant to Paragraph II(E). Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a producing Party's vendor (i.e., portrait to portrait and landscape to landscape). The imaged data shall retain all attributes of the native or hard-copy file, such as document breaks, to the extent reasonably practicable. To the extent reasonably practicable, produced TIFF images will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent viewable within a document in its native file format and visible in the form in which the electronic document was last saved, shall, to the extent reasonably practicable, also be imaged so that such content is viewable on the image file. Nothing in this subsection requires the modification or alteration of any document or data in order to make any hidden content, tracked changes or edits, comments, notes, and other similar information viewable if it is not already viewable in the form in which the electronic document was last saved. Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively." A producing Party retains the option to produce ESI in alternative formats if so agreed by the requesting Party, which may include native format, or a combination of native and TIFF formats.

**B.** **Text Files**: Each ESI item produced under this ESI Protocol shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

1. **OCR**: A producing Party may make paper documents available for inspection and copying/scanning in accordance with Federal Rule of Civil Procedure 34 or, additionally or alternatively, scan and OCR paper documents. Where OCR is used, the Parties will endeavor to generate accurate OCR and will utilize OCR processes and technology of sufficient quality to enable the generation of utilizable text files. OCR text files should indicate page breaks where possible. Even if OCR is used by a producing Party, however, the Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.

2. **ESI**: Except for redacted documents, emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available. For redacted documents, Parties shall provide OCR text in accordance with the specifications in Paragraph II(B)(I).

**C.** **Production of Native Items**: The Parties agree that ESI shall be produced as TIFF images consistent with the format described in Paragraph II(A) with an

accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix I hereto. The exception to this rule shall be spreadsheet-application files (e.g., MS Excel), presentation files (e.g., MS PowerPoint), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), for which all ESI items shall be produced in native format upon reasonable request. In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the Parties shall meet and confer to determine the appropriate form of production. When producing the above file types in native format, the producing Party shall produce a single-page TIFF slip sheet indicating that a native item was produced. The corresponding load file shall include NativeFileLink information for each native file that is produced. Further, the Parties agree to meet and confer prior to producing native file types other than spreadsheet application files, presentation files, and multimedia audio/visual file types such as .wav, .mpeg, and .avi. Prior to processing non-standard native files for production, the producing Party shall disclose the file type to and meet and confer with the requesting Party on a reasonably useable production format.

**D.**    **Structured Data**. The Parties agree to begin the meet and confer process regarding the production of any structured data within ninety days of the Court's ruling on the Motions to Dismiss.   If it is determined after meeting and conferring with the Requesting Party that any such discoverable data can be produced in an already existing and reasonably available report based on agreement, then the producing Party may collect and produce the data in that report format. If existing report forms do not reasonably provide the requested information, the Parties will meet and confer. in an attempt to agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file for review by the requesting Party. Upon review of the report, the requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

**E.**    **Requests for Other Native Files**: Other than as specifically set forth above, a producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this ESI Protocol does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format.  The requesting Party will provide the specific Bates range for the document it wishes to be produced in native format.  Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix I.

**F.**    **Bates Numbering:**

1.    All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters, embedded spaces, hyphens, or underscores; (4) be sequential within a given document; and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

2.    If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

3.      The producing Party will endeavor to brand all TIFF images at a location on the document that does not obliterate or obscure any part of the underlying images. To the extent that a brand obliterates or obscures any part of the underlying images, a Party has the right to request for those documents to be re-produced.

**G.      Parent-Child Relationships**: Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable.

**H.      Entire Document Families**: Subject to Paragraphs II(L)(1) and II(L)(2) below, entire document families must be produced, even if only the parent email or an attachment to an email is responsive, except for (1) junk files and non-user-created content routinely excluded during processing, and (2) documents that are withheld on the basis of attorney-client privilege or work product protection or any other applicable protection.

**I.      Load Files**: All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) and a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load files in the production.

**J.      Color**: Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the requesting Party may, in good faith, request that the document or ESI item be produced in its original colors. For such documents, the requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this ESI Protocol regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Requests that a document be produced in color for the reasons set forth in this Paragraph II(J) will not be unreasonably denied by the producing Party. The requesting Party will endeavor to limit the number of requests for reproduction of documents. If a producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

**K.      Confidentiality Designations**: If a particular paper document or ESI item qualifies for confidential treatment pursuant to the terms of the Protective Order entered by the Court in the Litigation, or to any applicable federal, state, or common law (e.g., Personally Identifiable Information or Protected Health Information), the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images. To the extent reasonably practicable, this designation also should be included in the appropriate data field in the load file. For documents produced in native format with image placeholders, the placeholder image for the native file should be branded with the appropriate confidentiality designation to the extent possible. Requesting Parties shall take

reasonable steps to ensure that the confidentiality claim follows the document regardless of whether the designation imprints on the file when viewed in printed form. Failure to comply with the procedures set forth in this ESI Protocol, any protective order or confidentiality order, or any confidential stipulation shall not waive any protection or confidential treatment.

**L.**     **Redactions**

1.     **Personal Data Redactions**: A producing Party may redact personal information to the extent that the information falls within one of the following categories:

   a.     the information relates to medical or health issues of an individual; or

   b.     social security numbers, taxpayer-identification numbers, driver's license numbers, personal address information and/or phone numbers, passport numbers, financial-account numbers or other bank account information, or personal passcodes. Such redactions should be identified as "Redacted — PII" on the redactions.

2.     **No "Relevancy" Redactions**: A Party may not make redactions based on an assertion that the data is not relevant. The only redactions permitted are on the basis of privilege, the two specific categories of Personal Data Redactions listed in Paragraph II(L)(l) and above, or those permitted as set forth in Paragraph VI(D) below.

**M.**     **Production Media & Protocol**: Unless otherwise agreed, documents and ESI will be produced via secure FTP site or similar electronic transmission format. If the data volume is such that electronic transmission of the production is impracticable, the production will be delivered on an encrypted external hard drive to a location designated by the receiving Party. If used, each piece of Production Media (that is, readily accessible computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) must be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media, as well as the sequence of material in that production. For example, if the production comprises document images on three DVDs, the producing Party may label each DVD in the following manner: "[Party] Production January l, 2023-001," "[Party] Production January l, 2023-002," and "[Party] Production January l, 2023-003."

**N.**     **Transmittal Letter.** Each production should include a transmittal letter that includes (1) the production date and (2) the Bates range of the materials included in the production.

**III.     PAPER DOCUMENT PRODUCTION PROTOCOLS**

**A.**     **Scanning**: A producing Party will scan and OCR paper documents. The Parties agree that Paragraph II(B)(I) and the following Paragraphs III(B)-(C) shall apply.

**B.**     **Coding Fields**: The following information shall be produced in the load file accompanying production of paper documents produced by scan and OCR to the extent reasonably practicable: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, and (g) Redacted (Y/N).

Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y."

**C.**     **Unitization of Paper Documents**: Paper documents should be logically unitized for production to the extent reasonably practicable. Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records. The Parties will make reasonable efforts to unitize documents correctly.

   1.     **Relationship**: The relationship among the documents in a folder or other grouping should be reflected in the coding of the beginning and ending document and attachment fields to the extent reasonably practicable.

   2.     **Identification**: Where a document, or a document group — such as folder, clipped bundle, or binder — has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping to the extent reasonably practicable.

**IV.     ESI METADATA FORMAT AND PROCESSING ISSUES**

**A.**     **System Files**: ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types may be added to the list of excluded files if they clearly do not have user-created content and by agreement of the Parties.

**B.**     **Metadata Fields and Processing:**

   1.     **Date and Time**: No Party shall modify the date or time as contained in any original ESI.

   2.     **Time Zone**: To the extent reasonably practicable, ESI items shall be processed using a consistent time zone (e.g., Pacific Standard Time or UTC), and the time zone used shall be disclosed to the requesting Party.

   3.     **Auto Date/Time Stamps**: To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

   4.     **Metadata Fields**: Except as otherwise set forth in this ESI Protocol, ESI files shall be produced with at least each of the data fields set forth in Appendix I that can reasonably be extracted from a document. The Parties are not obligated to manually populate any of the fields in Appendix I if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields to the extent reasonably practicable: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, (g) Redacted (Y/N), (h) NativeLink fields, and (i) Paper Document (Y) (where applicable), which should be populated regardless of whether the fields can be populated pursuant to an automated process.

**C.**     **Redaction:**

   1.     The Parties agree that, where ESI items need to be redacted, they shall be produced solely in TIFF format with each redaction clearly indicated,

except in the case of personal database files (e.g., MS Access). Personal database files shall be governed by Paragraph II(C), *supra*. Any non-privileged metadata fields reasonably available shall be provided. The Parties understand that for certain MS Excel documents or other file types or files, TIFF redactions may be impracticable. These documents may be redacted in native format by inserting "[REDACTED]" in the cells from which data has been deleted before production.

2. If the items redacted and partially withheld from production are audio/visual files, the producing Party shall, to the extent reasonably practicable, provide the unredacted portions of the content. If the content is a voice recording, the Parties shall meet and confer to discuss the appropriate manner for the producing Party to produce the unredacted portion of the content.

**D.    Email Collection and Processing:**

1. **Email Threading**: The Parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a requesting Party to identify every custodian who had a copy of the produced document or email, or (b) remove from production any unique branches and/or attachments contained within an email thread.

**E.    De-duplication**: A producing Party may de-duplicate any file globally (i.e., across document custodians) or horizontally at the "family" level (i.e., families should not be broken due to de-duplication). Each party may also de-duplicate emails in such a way as to eliminate earlier or incomplete chains of emails and therefore produce only the most complete iteration of an email chain. A producing Party will make a reasonable effort to identify all custodians who were in possession of any de-duplicated documents through an appropriate load file field such as DuplicateCustodian or CustodianAll/Other. Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field specified in Appendix I to the extent such metadata exists. In the event of rolling productions of documents or ESI items, the producing Party will, as needed, supplement the load files with updated CustodianAll or CustodianOther information, as well as BCC information to the extent such metadata exists. Duplicate custodian information may be provided by a metadata "overlay" and will be provided by a producing Party no later than 7 days after that Party has substantially completed its production of ESI.

1. Duplicate electronic documents shall be identified by a commercially accepted industry standard (e.g., MD5 or SHA1 hash value) for binary file content. All electronic documents bearing an identical value are a duplicate group. The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate ESI documents within the duplicate group to the extent practicable. The producing Party is not obligated to extract or produce entirely duplicate ESI documents.

2. Duplicate email shall be identified by utilizing the industry-standard process of comparison of auto-generated hash values (e.g., MD5 hash values) for the email family, which shall include the parent email and all attachments. Duplicate identification will be identified at a family level, including message and all attachments. Email families bearing an identical

value are considered a duplicate group. The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate emails within the duplicate group to the extent practicable. Any other methodology for identification of duplicates, including email field selection for hash value creation, must be discussed with the requesting Party and approved in writing before implementation. The requesting Party will not unreasonably withhold approval.

**F.**    **Zero-byte Files**: The Parties may, but are not required to, filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names. If the requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the requesting Party may request that the producing Party produce the zero-byte file. The requesting Party may provide a Bates number to the producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production. Files containing dynamic fields such as file names, dates, and times will be produced showing the field type (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

**G.**    **Hidden Text**: ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

**H.**    **Embedded Objects**: Embedded objects will not be processed in such a way that they are extracted, except as to standalone Microsoft Excel, Microsoft Word, and Microsoft PowerPoint documents. The Parties agree that other embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a producing Party (e.g., such embedded objects will be produced within the document itself, rather than as separate attachments).

**I.**    **Compressed Files**: Compression file types (i.e., .CAB, .GZ, .TAR, .Z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

**J.**    **Password-Protected, Encrypted, or Proprietary-Software Files**: With respect to any ESI items that are password-protected or encrypted within the scope of review, the producing Party will take reasonable steps based on industry standards to break the protection so that the documents can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the producing Party shall advise the requesting Party. To the extent that the requesting Party would need to use proprietary software to view certain ESI, the Parties agree to meet and confer regarding the next steps, if any, with respect to such ESI.

**V.    PARAMETERS FOR CULLING OF PAPER AND ESI DOCUMENTS**

The Parties will meet and confer regarding the scope of preservation, including data sources, date ranges, and categories of information that have been or should be preserved in connection with this Litigation.

**A.    Timing of Discussions**. The Parties disagree regarding the timing of the meet and confer process concerning the topics below prior to the Courts' forthcoming Order(s) on Defendants' Motion(s) to Dismiss.

**Plaintiffs' Position:** The Parties should be required to prepare a complete ESI Protocol as ordered by the Court, which would include meeting and conferring on the topics below in Section B prior to any order on the pending motions to dismiss.

**Defendants' Position:** Given the pendency of the Defendants' Motions to Dismiss and the current stay of discovery, the Defendants believe that any discussions of the topics listed below will be best served once the Court has resolved the Motions to Dismiss and the Parties know which claims, if any, remain.

**B.    Scope of Discussions.** The Parties agree that once the time is right, they will meet and confer about the topics listed below. They largely agree on the nature of those discussions, with the following disputes identified below.

1.    **TAR/CAL Search Process**. The Parties agree that they will meet and confer should a Party decide to utilize TAR/CAL to exclude potentially responsive documents from review or production. Should any Party decide to use TAR for this purpose, the Parties agree that the producing Party will disclose: (1) the identity of the TAR/CAL software it intends to utilize, including how it will train the algorithm, such as using exemplars, keyword search strings, or some other method; (2) a general description of how the TAR/CAL process will work; (3) what quality control measures will be taken; and (4) a general description of the categories or sources of the documents included or excluded from the TAR/CAL process.

- **Plaintiff's Position:** Once a Party receives the producing Party's TAR/CAL Disclosures noted above, the requesting Party may raise with the producing Party any concerns with the proposed TAR/CAL process or categories of documents that it proposes should be excluded from the TAR/CAL process. Plaintiffs also believe that a requesting Party may also propose any exemplars it proposes be used to train a TAR/CAL tool or narrow keyword search strings it proposes be used to generate exemplars to train a TAR/CAL tool. If an agreement cannot be timely reached, then the Parties agree to raise this issue with the Court.

- **Defendants' Position:** The Parties agree that once the producing Party has provided the TAR/CAL disclosure indicated above, they will meet and confer to discuss any concerns that the receiving Party may have with the proposal. The producing Party will consider any requests to increase the accuracy of the TAR process the receiving Party may offer.

2.    **Search Methodology**. The Parties shall meet and confer in good faith to come to an agreement on search methods used to identify responsive Documents and ESI. Nothing in this section shall limit a Party's right to reasonably seek agreement from the other Parties or a Court ruling to modify previously agreed-upon search terms or other search parameters at

any time prior to the completion of discovery, and in keeping with Principle 6 of The Sedona Principles, Third Edition,[1] during any such discussions, the producing Party is best situated to evaluate the procedures, methodologies and technology appropriate for preserving and producing their own electronically stored information. The Parties will not seek Court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information. The fact that a document or ESI is responsive to a search term or identified as responsive by any other technology used to identify potentially responsive documents and ESI shall not prevent any Party from withholding such file from production on the grounds that the file is not responsive or that it is protected from disclosure by applicable privilege or work-product protection.

3.    **Search Terms.** Where the Parties agree that potentially responsive ESI shall be searched through the use of search terms, the Parties shall meet and confer to provide reasonable assurances to the requesting Party that the producing Party's search terms and methodology used to apply them are reasonably calculated to identify responsive documents and ESI.  Prior to or during such meet and confer, the producing Party shall disclose any search software they have decided to use (including version number) and that software's default stop/noise words and search language syntax. If, after disclosure of the producing Party's proposed search method, search parameters, and search terms, and prior to the conduct of any searches, and after a reasonable meet and confer process, a requesting Party believes in good faith that the producing Party's proposals regarding search, retrieval, and production would result in deficiencies in production, the requesting Party may make prompt requests for different or additional search methods, parameters, or search terms. To the extent that the producing Party objects to the additional and/or revised terms, the Parties agree that the producing Party will provide hit counts and/or information to show that the proposed/additional terms impose undue burden or do not assist in identifying potentially responsive documents. If the Parties cannot resolve their disagreements regarding the sufficiency of the producing Party's information in support of its objections and/or search term methodologies, they shall promptly bring the dispute to the Court for resolution.

## VI.    CLAIMS OF PRIVILEGE AND REDACTIONS

A.    **Production of Privilege Logs**: Except as provided otherwise below, for any document withheld in its entirety, the producing Party will produce privilege logs in MS Excel format or any other format that permits electronic sorting and searching. The Parties agree to meet and confer regarding whether any additional information need be provided in an "Attorney Description of Privileged Material" field 45 days before the substantial completion deadline and to submit any disputes to the Court related to the provision within 7 days after the substantial completion deadline. The parties agree to provide a privilege log for all withheld documents no later than 45 days after the substantial completion deadline and any further logs on a regular and rolling basis within 30 days of any subsequent productions.

---

[1] The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1 (2018).

    **B.**    **Exclusions from Logging Potentially Privileged Documents**: The following categories of documents do not need to be contained on a producing Party's privilege log, unless good cause exists to require that a Party do so.

        1.    Information generated after the filing of the Complaint on January 25, 2023 in this Litigation. This provision does not apply to non-Parties to the Litigation.

        2.    Any communications exclusively between a producing Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with specific litigation, and/or, with respect to information protected by Federal Rule of Civil Procedure 26(b)(4), testifying experts in connection with specific litigation.

        3.    Any privileged materials or work product created by or specifically at the direction of a Party's outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with specific litigation, or, with respect to information protected by Federal Rule of Civil Procedure 26(b)(4), testifying experts in connection with specific litigation.

        4.    Any redactions for personal identifying information need not be logged.

    **C.**    **Privilege Log Requirements:**

        1.    **Metadata Log**: To the extent applicable, the Parties agree that each Party's privilege log only needs to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information).

            a.    Objective metadata includes the following (as applicable to the document types as shown in Appendix I):

                i.    A unique privilege log identifier

                ii.    Privilege Asserted (e.g. Attorney Client Communication)

                iii.    Privilege status (e.g., redact or withhold)

                iv.    BegBates[2]

                v.    EndBates

                vi.    BegAttach

                vii.    EndAttach

                viii.    Custodian

                ix.    File Name

                x.    Email Subject

---

[2] A document being entirely withheld may not receive a Bates ID and an alternative ID may be provided.

        xi.      CustodianOther or CustodianAll (if applicable)

        xii.     Author

        xiii.    From

        xiv.    To

        xv.     CC

        xvi.    BCC

        xvii.   Date and Time Sent

        xviii.  Date and Time Received

        xix.   Date and Time Created

        xx.    Production Volume

    b.     All attorneys should be denoted in the metadata with "*" or a similar uniform notation to be used consistently by all Parties. Further, to the extent possible, a Party will endeavor to manually populate on its privilege log an author and date for any withheld document where that information is not provided by the objective metadata, unless such information is not reasonably discernable from the document or the information is not necessary to evaluate the claim of privilege in light of the metadata that is discernable and/or the information provided in the Attorney/Description of Privileged Material field.

   2.    **Email Chains**: If there is more than one branch of (i.e., more than one unique group of recipients of) an email thread, the logging Party shall provide an "All Participants" field that lists everyone included lower in the thread, in lieu of logging each individual branch. However, each individual email within the thread need not be logged if the recipients of the email chain are all identical. A Party asserting privilege over a chain of emails may produce only a single redacted copy of such email chain consistent with Paragraph VI(D) below to the extent some portions are only partially privileged, except that any unique branches of the email chain must also either be produced in redacted form or included on the metadata privilege log. Upon reasonable request, the Parties will meet and confer about providing additional information.

**D.**    **Documents Redacted for Privilege**: Redacted documents need not be logged as long as (a) for emails, the objective metadata (i.e., to, from, cc, bcc, recipients, date, and time, unless the privilege or protection is contained in these fields) is not redacted, and the reason for the redaction, including the nature of the privilege asserted, is noted on the face of the document (for redacted documents where the subject matter is not decipherable as a result of redactions, a description of the contents of the document that is sufficient to understand the subject matter of the document may be requested); and (b) for non-email documents, the reason for the redaction is noted on the face of the document in the redacted area. In accordance with this Paragraph VI(D), the producing Party will undertake reasonable efforts to make limited, line-by-line redactions of privileged or work product information. After receipt of the production, the requesting Party may request in good faith that

the producing Party create a privilege log for specific redacted documents, by Bates number. Electronic documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

E.      **Challenges to Privilege Claims**: Following the receipt of a privilege/redaction log, a requesting Party may identify, in writing (by Bates/unique identification number), the particular documents that it believes require further explanation. Within three business days, the responding Party will provide an estimate of how long the responding Party needs to respond to the inquiry. The Parties agree to meet and confer concerning any such document, and if they cannot reach agreement as to the appropriate treatment of such document, may bring any such dispute to the Court's attention.

## VII.    CLAWBACK ORDER

A.      **Non-Waiver**: Pursuant to Federal Rule of Evidence 502(d), the production of any material or information shall not be deemed to waive any privilege or work product protection in the Litigation or in any other federal or state proceeding. Nothing in this Paragraph VII is intended to or shall serve to limit a Party's right to conduct a review of any material or information for relevance, responsiveness, and/or segregation of privileged and/or protected information before production, subject to Paragraph VII(B)(I) below.

B.      **Assertion of a Clawback**: Any Party or non-Party may request the return of any produced material or information on the grounds of privilege or work product protection by identifying it, stating the basis for withholding such material or information from production, and providing any other information that would be listed on a supplemental privilege log, subject to Paragraph VII(B)(I) below.

1.      **Clawbacks Before Depositions**: If a Party attempts to clawback a document authored or received by an individual who is scheduled for a deposition within 30 days of the date of the deposition, and the propriety of the clawback is not resolved pursuant to Paragraph VII(C)(2) below prior to the date of the deposition, then the Parties will meet and confer on the appropriate course of action, which may, but need not necessarily, include:

a.      rescheduling the deposition until the issue is resolved by the Court;

b.      conferring prior to the deposition to determine if the document may be used in the deposition subject to agreed-upon limitations; and/or

c.      calling the Court if the clawback is made during the deposition to determine if immediate resolution is possible.[3]

2.      **Document Used in Proceedings**: Notwithstanding the foregoing, the Parties agree that any document used by any Party in a deposition, expert report, or court filing in this action (with the exception of a motion to determine the existence of any privilege) shall not be eligible for protection under Rule 502(d) as a clawed-back document if the producing Party does

---

[3] Plaintiffs reserve the right to recall a deponent for the purpose of questioning the deponent on the document(s) at issue if the Court subsequently determines the clawback was improper (if exercised, recalling the deponent for this purpose will not count against the total number of depositions or deposition hours to which the Party resisting the clawback is entitled. Defendants reserve the right to object to Plaintiffs' request to recall a deponent. If the Parties cannot resolve any such dispute, they will promptly present the dispute to the Court for resolution.

not clawback that document pursuant to this ESI Protocol within 30 calendar days of its use. For a document used by a Party in a deposition, expert report, or court filing in this action that is clawed back after 30 calendar days of its use, Rule 502(b) shall govern any dispute with respect to the producing Party's potential waiver of attorney-client privilege or work product protection with respect to the document.

**C.**   **Clawback Process**: Federal Rule of Civil Procedure 26(b)(5)(B) shall govern the clawback of produced documents or information on the grounds of privilege or work product protection. If a Party or non-Party requests the return of such produced material or information then in the custody of one or more Parties, the possessing Parties shall within 7 business days:

1.   Destroy or return to the requesting Party or non-Party the produced material or information and all copies thereof, and expunge from any other document or material information derived solely from the produced material or information; or

2.   Notify the producing Party or non-Party that it wishes to challenge the claim of privilege or work product protection and has sequestered the material until the issue can be resolved. The Parties agree to meet and confer regarding the claim of privilege. If, at the conclusion of the meet and confer process, the Parties are still not in agreement, they may bring the issue to the Court. A Party challenging a clawback request under this Paragraph VII(C)(2) may use the content of the clawed-back document for the sole purpose of filing a motion with the Court under seal, consistent with Local Rule 5, that challenges whether or not the document is privileged or work product.

**D.**   **Implementation of a Clawback**: Where a Party agrees to or is ordered to destroy a clawed back document, the Party must instruct their e-discovery vendor to delete the document entirely from their e-discovery database and delete other copies of the clawed back document. To the extent that it is not technologically feasible for a receiving Party to destroy a clawed back document (for example, if the clawed back document is part of a production provided on read-only Production Media such that the clawed back document cannot be destroyed without destroying the entire Production Media), the Parties will meet and confer as to an acceptable alternative approach.   Any and all references in notes, summaries, or other work product generated from such document(s) must be identified and destroyed.

**VIII.   MISCELLANEOUS PROVISIONS**

**A.**   **Inaccessible ESI**: If a producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible or otherwise unnecessary under the circumstances, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer.[4] If the Parties cannot resolve any such disputes after such a meet and confer has taken place, the issue may be presented to the Court for resolution.

**B.**   **Variations or Modifications**: Variations from this ESI Protocol may be required. Any practice or procedure set forth herein may be varied by agreement of all

---

[4] Plaintiffs would request that each Party include a technology expert on any such calls so that the dispute can more quickly be resolved through consultation with the appropriate subject matter experts in real time.

affected Plaintiffs and all affected Defendants, with reasonable notice to and consultation of any other Party to this Litigation, which will be confirmed in writing. In the event a producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, the producing Party will notify the requesting Party of the variation or modification. Upon request by the requesting Party, those Parties will meet and confer to address any issues in a reasonable and timely manner prior to seeking Court intervention.

**C.**    **Waiver**: Nothing herein shall be construed as a waiver of any pending motion to dismiss or regarding discovery, or the right of any Party to seek further relief regarding discovery.

Dated: July 20, 2023

/s/ *Steve W. Berman*
Steve W. Berman (*Pro Hac Vice*)
Ted Wojcik (*Pro Hac Vice*)
Stephanie A. Verdoia (*Pro Hac Vice*)
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: tedw@hbsslaw.com
Email: stephaniev@hbsslaw.com

Rio S. Pierce (*Pro Hac Vice*)
Abby R. Wolf (*Pro Hac Vice*)
HAGENS BERMAN SOBOL
SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: riop@hbsslaw.com
Email: abbyw@hbsslaw.com

*Attorneys for Plaintiffs and the Proposed Class*

/s/ *J. Colby Williams*
J. Colby Williams (5549)
710 South Seventh Street

/s/ *Rahul Ravipudi*
Rahul Ravipudi
Nevada State Bar No. 14750
Adam Ellis
Nevada State Bar No. 14514
Ian P. Samson
Nevada State Bar No. 15089
PANISH SHEA BOYLE
RAVIPUDI LLP
300 South 4th Street, Suite 710
Las Vegas, NV 89101
Telephone: (702) 560-5520
Facsimile: (702) 945-2515
Email: rravipudi@psblaw.com
Email: aellis@psblaw.com
Email: isamson@psblaw.com

Brian J. Panish
Nevada Bar No. 16123
PANISH SHEA BOYLE
RAVIPUDI LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, CA 90025
Telephone: (310) 477-1700
Facsimile: (310) 477-1699
Email: bpanish@psbrlaw.com

/s/ *Mark Holscher*
Patrick G. Byrne
Bradley T. Austin

1   Las Vegas, NV 89101
    Telephone:  (702) 382-5222
2   Facsimile:  (702) 382-0540
    Email: jcw@cwlawlv.com
3
    Sadik Huseny (*pro hac vice*)
4   Timothy O'Mara (*pro hac vice forthcoming*)
    Brendan McShane (*pro hac vice*)
5   LATHAM & WATKINS LLP
    505 Montgomery Street, Suite 2000
6   San Francisco, CA 94111-6538
    Telephone:  (415) 391-0600
7   Facsimile:  (415) 395-8095
    Email: sadik.huseny@lw.com
8   tim.o'mara@lw.com
    brendan.mcshane@lw.com
9
    Anna M. Rathbun (*pro hac vice*)
10  Christopher J. Brown (*pro hac vice*)
    LATHAM & WATKINS LLP
11  555 Eleventh Street, NW, Suite 1000
    Washington, DC 20004-1304
12  Telephone:  (202) 637-2200
    Facsimile: (202) 637-2201
13  Email: anna.rathbun@lw.com
    chris.brown@lw.com
14
    *Attorneys for Defendant Cendyn Group, LLC*
15

    /s/ Adam Hosmer-Henner
16  Adam Hosmer-Henner (NSBN 12779)
    Chelsea Latino (NSBN 14227)
17  Jane Susskind  (NSBN 15099)
    McDONALD CARANO LLP
18  100 West Liberty Street, Tenth Floor
    Reno, NV 89501
19  (775) 788-2000
    ahosmerhenner@mcdonaldcarano.com
20  clatino@mcdonaldcarano.com
    jsusskind@mcdonaldcarano.com
21
    Boris Bershteyn (*pro hac vice*)
22  Ken Schwartz (*pro hac vice*)
    Michael Menitove (*pro hac vice*)
23  Sam Auld(*pro hac vice*)
    SKADDEN, ARPS, SLATE,
24  MEAGHER & FLOM LLP
    One Manhattan West
25  New York, NY 10001
    (212) 735-3000
26  boris.bershteyn@skadden.com
    ken.schwartz@skadden.com
27  michael.menitove@skadden.com
    sam.auld@skadden.com
28

SNELL & WILMER LLP
3883 Howard Hughes Parkway
Las Vegas, NV 89169
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: pbyrne@swlaw.com
Email: baustin@swlaw.com

Mark Holscher (*pro hac vice*)
Tammy A. Tsoumas (*pro hac vice*)
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900
Email: mholscher@kirkland.com
Email: ttsoumas@kirkland.com

Matthew Solum (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4688
Facsimile: (917) 848-7536
Email: msolum@kirkland.com

*Attorneys for Defendant Wynn Resorts Holdings, LLC*

/s/ Alicia Rubio-Spring
Nicholas J. Santoro
HOLLY DRIGGS
300 S. 4th Street, Suite 1600
Las Vegas, NV 89101
Telephone: (702) 791-0308
Facsimile: (702) 791-1912
Email: nsantoro@nevadafirm.com

Arman Oruc (*pro hac vice*)
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036
Phone: (202) 346-4000
Facsimile: (202) 346-4444
Email: aoruc@goodwinlaw.com

Alicia Rubio-Spring (*pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02110
Telephone: (617) 570-1000
Facsimile: (617) 5231231
Email: arubio-spring@goodwinlaw.com

*Attorneys for Defendant The Rainmaker*

*Attorneys for Defendant*
*Caesars Entertainment, Inc.*

*Group Unlimited, Inc.*

*/s/ Patrick J. Reilly*
Patrick J. Reilly
Arthur A. Zorio
Emily Garnett (*pro hac vice*)
Eric D. Walther
BROWNSTEIN HYATT FARBER
SCHRECK, LLP
100 N. City Parkway, Suite 1600
Las Vegas, NV 89106
Telephone: 702.382.2101
preilly@bhfs.com
azorio@bhfs.com
egarnett@bhfs.com
ewalther@bhfs.com

*/s/ Bethany Kristovich*
Todd L. Bice
Brianna Smith
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, NY 89101
Telephone: (702) 214-2100
Email: tlb@pisanellibice.com
Email: bgs@pisanellibice.com

Bethany Kristovich (*pro hac vice*)
Kyle Mach (*pro hac vice*)
Justin Raphael (*pro hac vice*)
Juliana Yee (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 South Grande Avenue, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100
Email: bethany.kristovich@mto.com
kyle.mach@mto.com
justin.raphael@mto.com
juliana.yee@mto.com

*Attorneys for Defendant Treasure Island, LLC*

*Attorneys for Defendant MGM Resorts*
*International*

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE

DATED:

## APPENDIX I: ESI METADATA AND CODING FIELDS

| Field Name[5] | Field Description |
|---|---|
| BegBates | Control Numbers. |
| EndBates | Control Numbers. |
| BegAttach | Control Numbers (First production Bates number of the first document of the family). |
| EndAttach | Control Numbers (Last production Bates number of the last document of the family). |
| Custodian | Custodian name (ex. John Doe). |
| DupCust, CustodianOther, or CustodianAll | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| LogicalPath | The directory structure of the original file(s). Any container name is included in the path. |
| Hash Value | The MD5 or SHA-1 hash value. |
| NativeFile | Native File Link. |
| Email Thread ID | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |
| EmailSubject | Subject line of email. |
| DateSent | Date email was sent. |
| DateMod | Date the document was last modified. |
| TimeSent | Time email was sent. |
| TimeZoneUsed | Time zone used to process data during document collection and processing. |
| Receive Date | Date email was received. |
| ReceiveTime | Time email was received. |
| To | All recipients that were included on the "To" line of the email. |
| From | The name and email address of the sender of the email. |
| CC | All recipients that were included on the "CC" line of the email. |
| BCC | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Date the document was created. |
| FileName | File name of the edoc or subject line of an email. |
| Title | Any value populated in the Title field of the document properties. |
| Subject | Any value populated in the Subject field of the document properties. |
| Author | Any value populated in the Author field of the document properties. |
| DocExt | File extension of the document. |
| TextPath | Relative path to the document level text file. |
| Redacted | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted. Otherwise, blank. |

---

[5] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order.

| Field Name[5] | Field Description |
|---|---|
| Withheld Placeholder | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y." See also paragraph II.G above. |
| Privilege Asserted | To the extent a document has been withheld on the basis of privilege or redacted on the basis of privilege, the text pertaining to such assertion of privilege shall be included as a metadata field (e.g., "Redacted – Attorney Client Privileged" or "Withheld – Attorney Client Privileged") |
| Paper | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Legend/Confidentiality | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |
| Attachment Count | Identifies the number of attachments to an email (if present/applicable). |
| Attachment Names | Identifies the file names of all attachments to an email (if present/applicable). |
| Calendar Date Begin | Identifies the begin date of a calendar entry (if present). |
| Calendar Date End | Identifies the end date of a calendar entry (if present). |
| Calendar Time Begin | Identifies the begin time of a calendar entry (if present). |
| Calendar Time End | Identifies the end time of a calendar entry (if present). |
| Production Volume | Identifies the unique production volume ID of the delivery (ABC001). |