UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RICHARD GIBSON, *et al.*,<br><br>  Plaintiffs,<br>  v.<br><br>MGM RESORTS INTERNATIONAL, *et al.*,<br><br>  Defendants. | Case No. 2:23-cv-00140-MMD-DJA<br><br>ORDER |

**I. SUMMARY**

Plaintiffs Richard Gibson and Heriberto Valiente, on behalf of themselves and all others similarly situated, allege that defendant hotel operators on the Las Vegas Strip including Defendant MGM Resorts International unlawfully restrained trade in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.* ("Sherman Act") by artificially inflating the price of hotel rooms after agreeing to all use pricing software marketed by the same company. (ECF No. 1 ("Complaint").) Before the Court is MGM's motion to dismiss.[1] (ECF No. 92 ("Motion").) As further explained below, because the Complaint does not contain allegations that any MGM hotels within Plaintiffs' defined market area of the Las Vegas Strip use the Rainmaker software, the Court will grant the Motion.

**II. BACKGROUND**

The following allegations are adapted from the Complaint. Plaintiffs "challenge an unlawful agreement among Defendants to artificially inflate the prices of hotel rooms on the Las Vegas Strip above competitive levels." (ECF No. 1 at 3.) The gist of the alleged conspiracy is that all of the defendant hotel operators agreed to use a shared set of pricing

---

[1]Plaintiffs responded (ECF No. 110), and MGM replied (ECF No. 124). This order does not address the other defendants' motion to dismiss. (ECF No. 91.)

algorithms offered by the Rainmaker subsidiary of Defendant Cendyn that recommend supracompetitive prices to the hotel operators. (*Id.* at 3.) Plaintiffs define the Las Vegas Strip as "the four-mile stretch in the unincorporated towns immediately south of the City of Las Vegas." (*Id.* at 3 n.1.) Plaintiffs otherwise explain why the Las Vegas Strip allegedly constitutes a relevant antitrust market, primarily because it is unique. (*Id.* at 13-14.)

Plaintiffs define MGM as one of the defendant hotel operators. (*Id.* at 3 n.2.) MGM allegedly:

> rents hotel rooms in Las Vegas, Nevada at multiple hotel properties. MGM operates the Bellagio, VDARA at Aria, Aria, Park MGM, New York-New York, MGM Grand, Excalibur, Luxor, Mandalay Bay, and the Four Seasons Hotel. MGM is one of Cendyn's clients and uses its revenue management software.

(*Id.* at 12.) Plaintiffs otherwise allege that MGM 'controls' the Cosmopolitan Hotel on the Las Vegas Strip as well. (*Id.* at 14.) As to the Cosmopolitan, a confidential witness who is allegedly a former employee of Cendyn is quoted in the Complaint as saying, "Caesars probably knew we were in the Cosmopolitan and vice versa." (*Id.* at 10.)

Plaintiffs also discuss how an MGM-operated hotel called the Borgata Hotel in Atlantic City, New Jersey uses Rainmaker's GuestRev pricing algorithm to validate the pricing recommendations the pertinent employee makes to her management. (*Id.* at 17.) These allegations are drawn from marketing materials on Cendyn's website. (*Id.* at 17 n. 19, 20.) Plaintiffs also mention that MGM is one of the two largest players on the Las Vegas Strip in terms of hotel ownership in describing how the Las Vegas Strip hotel market is highly concentrated. (*Id.* at 23.)

The remainder of Plaintiffs' allegations in their Complaint discuss either Hotel Operators or Defendants generally, but not MGM specifically. (*See generally id.*) MGM appears to represent in its Motion that none of its hotels on the Las Vegas Strip use any Rainmaker software when it writes, "Plaintiffs do not, however, *and cannot*, allege that any of the ten Las Vegas properties they allege MGM operates uses Rainmaker software that provides them with any pricing recommendations or data." (ECF No. 92 at 4 (emphasis added).)

2

## III. DISCUSSION

MGM argues in pertinent part that Plaintiffs' claims against it should be dismissed because they fail to allege in their Complaint that MGM uses any Rainmaker software at any of the ten hotels on the Las Vegas Strip MGM allegedly operates, much less that these hotels accept all of the recommendations any software provides to them. (*Id.* at 3.) Plaintiffs counter that three sets of allegations, taken together, plausibly allege MGM is part of the alleged conspiracy on the Las Vegas Strip. (ECF No. 110 at 8-10.) The Court agrees with MGM.

The United States Court of Appeals for the Ninth Circuit "require[s] some showing—direct or circumstantial—that the [Sherman Act] defendants 'actively participated in an individual capacity in the scheme.'" *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1119 (9th Cir. 2022) (citations omitted); *see also id.* at 1119-20 (affirming dismissal of certain defendants in Sherman Act case because the complaint pleaded nothing to implicate them in the alleged conspiracy); *see also In re California Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1047 (N.D. Cal. 2021) ("To survive a motion to dismiss, a complaint alleging an antitrust conspiracy "must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it.") (citation omitted). Indeed, even Plaintiffs argue that they must "make allegations that plausibly suggest that each [d]efendant participated in the alleged conspiracy." (ECF No. 110 at 7 (citing *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 903-04 (N.D. Cal. 2008)).)

Plaintiffs' Complaint does not plausibly allege that MGM joined Plaintiffs' alleged conspiracy to fix prices on the Las Vegas Strip. The Court addresses each allegation or set of allegations that Plaintiffs point to in their opposition in turn.

Plaintiffs first point to their allegations (pulled from Cendyn's own marketing materials) that an MGM-operated hotel in Atlantic City, New Jersey, the Borgata Hotel, uses Rainmaker. (ECF No. 110 at 8-9.) This does not show that MGM-operated hotels

on the Las Vegas Strip—those alleged to be part of the conspiracy—use the Rainmaker software. Atlantic City is not within the relevant market as Plaintiffs have alleged it. (ECF No. 1 at 13-14 (defining the Las Vegas Strip as the relevant antitrust market area and explaining why that specific geography matters so much).) And MGM is a large company that operates many hotels, so it is not plausible to suggest (especially considering the dearth of other pertinent factual allegations in the Complaint) that, because one hotel uses a piece of software, all MGM-operated hotels use it.

Moreover, the Complaint contains the cryptic sentence, "MGM is one of Cendyn's clients and uses its revenue management software." (*Id.* at 12.) Cendyn presumably has many products, so saying that MGM is a client does not mean it uses the specific Rainmaker software central to Plaintiffs' alleged conspiracy. The same goes for the related allegation that MGM, "uses its revenue management software." That does not necessarily mean Rainmaker, much less the same Rainmaker software as the other hotel defendants, much less that MGM accepts all of the recommendations it is presented with by the unspecified software. And there is indeed no dispute that MGM uses revenue management software, specifically Rainmaker, at a hotel it operates in Atlantic City. So the statement that MGM uses Cendyn's revenue management software could very well mean that it does so only at the Borgata Hotel in Atlantic City. And this statement is otherwise not inconsistent with what MGM argues in its Motion—that it does not use the Rainmaker software at any of the 10 or 11 (depending on whether one counts the Cosmopolitan) hotels mentioned in the Complaint that MGM operates on the Las Vegas Strip, though it does at the Borgata Hotel.

Plaintiffs next point to a 2015 press release from Rainmaker stating that MGM is among its clients, and two statements from confidential witnesses who used to work for Cendyn that Rainmaker is used by 'just about every hotel on the Las Vegs Strip' and a more specific estimate that Rainmaker is used by '90% of the Hotels on the Las Vegas Strip.' (ECF No. 110 at 9-10.) But none of these statements establish that the 10 hotels MGM operates on the Las Vegas Strip (excluding the Cosmopolitan, which the Court

addresses below) use the Rainmaker software. MGM could be within the apparent minority of hotels that do not use the Rainmaker software. Plaintiffs simply do not allege that the 10 MGM-operated hotels on the Las Vegas strip use the Rainmaker software in a way otherwise contemplated by Plaintiffs' purported conspiracy. And as to the press release, that too could just as easily refer to the Borgata Hotel as to any of the many other hotels MGM operates. These allegations lack the requisite link to MGM-operated hotels on the Las Vega Strip.

Plaintiffs finally point to the Cosmopolitan being touted as a 'success story' on Cendyn's own website, but concede the video Plaintiffs point to was made in 2019, before MGM began operating the hotel in 2021. (ECF No. 110 at 10.) The Court also agrees with MGM that it is notable Plaintiffs do not include the Cosmopolitan in their list of hotels operated by MGM. (ECF No. 124 at 7.) The plausible inference to draw from that notable omission is that the time periods do not overlap—that the Cosmopolitan used Rainmaker before MGM took over its operations. And there are otherwise no allegations in the Complaint that specifically discuss MGM, as opposed to the hotel operator defendants or Defendants generally. Said otherwise, the Complaint does not contain allegations sufficient to plausibly suggest that any MGM hotels within Plaintiffs' defined market area of the Las Vegas Strip use the Rainmaker software.

In sum, the Court will grant the Motion because Plaintiffs do not plausibly allege that any MGM hotels within Plaintiffs' defined market of the Las Vegas Strip used the Rainmaker software in a way otherwise alleged as the alleged conspiracy Plaintiffs challenge in this case. MGM is accordingly dismissed from this case without prejudice, as the Court cannot say that amendment would be futile. The allegations that an MGM-operated hotel in New Jersey uses Rainmaker, and the allegations about how the Cosmopolitan at least used to use Rainmaker suggest that it is possible that Plaintiffs could add further factual allegations to their Complaint to show that MGM participated in the alleged conspiracy on the Las Vegas Strip. Any amended complaint must be filed within 30 days of the date of entry of this order.

## IV.     CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that MGM's motion to dismiss (ECF No. 92) is granted. Dismissal is without prejudice and with leave to amend. Specifically, the Court grants Plaintiffs leave to file an amended complaint that includes MGM as a defendant if Plaintiffs wish to again attempt to allege that MGM participated in the purported conspiracy. Any amended complaint must be filed within 30 days of the date of entry of this order. If Plaintiffs do not comply with this amendment deadline, the Court may dismiss MGM from this case, with prejudice, without further advance notice to Plaintiffs.

DATED THIS 24th Day of October 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE