Daniel R. McNutt, Esq., Bar No. 7815
Matthew C. Wolf, Esq., Bar No. 10801
**MCNUTT LAW FIRM, P.C.**
11441 Allerton Park Drive, #100
Las Vegas, Nevada 89135
Tel.: (702) 384-1170 / Fax.: (702) 384-5529
drm@mcnuttlawfirm.com
mcw@mcnuttlawfirm.com

Matthew L. McGinnis *(pro hac vice)*
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199
Tel: (617) 951-7000 / Fax: (617) 951-7050
matthew.mcginnis@ropesgray.com

Of counsel:

David B. Hennes
Jane E. Willis
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036
Tel: (212) 596-9000
Fax: (212) 596-9090
david.hennes@ropesgray.com
jane.willis@ropesgray.com

*Counsel for Defendants Blackstone Inc. and*
*Blackstone Real Estate Partners VII L.P.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| RICHARD GIBSON AND ROBERTO MANZO,<br><br>Plaintiffs,<br><br>v.<br><br>CENDYN GROUP LLC, THE RAINMAKER GROUP UNLIMITED, INC., CAESARS ENTERTAINMENT INC., TREASURE ISLAND, LLC, WYNN RESORTS HOLDINGS, LLC, BLACKSTONE INC., BLACKSTONE REAL ESTATE PARTNERS VII L.P., JC HOSPITALITY, LLC,<br><br>Defendants. | Case No. 2:23-cv-00140-MMD-DJA<br><br>**DEFENDANTS BLACKSTONE INC. AND BLACKSTONE REAL ESTATE PARTNERS VII L.P.'S MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED** |

1

2

**DEFENDANTS BLACKSTONE INC. AND
BLACKSTONE REAL ESTATE PARTNERS VII L.P.'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

3

4

        Defendants Blackstone Inc. and Blackstone Real Estate Partners VII L.P. (the "Blackstone

5

Entities") join Defendants' Joint Motion to Dismiss the First Amended Complaint for Failure to

6

State a Claim ("Joint Motion") in full.  The Blackstone Entities, by and through their counsel,

7

submit this separate Motion and accompanying Memorandum of Points and Authorities to address

8

an additional reason that dismissal is warranted as to the Blackstone Entities with prejudice.  This

9

Motion is made under Federal Rule of Civil Procedure 12(b)(6) and LR 7-2 and is based on the

10

attached Memorandum of Points and Authorities and supporting documentation, the papers and

11

pleadings on file, including the papers in support of the Joint Motion, and any oral argument this

Court may allow.

12

Dated: February 14, 2024                      Respectfully submitted,

13

14

                                              /s/   Daniel McNutt
                                              Daniel McNutt, Esq., Bar No. 7815

15

                                              Matthew C. Wolf, Esq., Bar No. 10801
                                              **MCNUTT LAW FIRM, P.C.**

16

                                              11441 Allerton Park Drive, #100
                                              Las Vegas, Nevada 89135

17

                                              Tel.: (702) 384-1170
                                              Fax.: (702) 384-5529

18

Of counsel:                                   drm@mcnuttlawfirm.com
                                              mcw@mcnuttlawfirm.com

19

David B. Hennes
Jane E. Willis                                Matthew L. McGinnis *(pro hac vice)*

20

**ROPES & GRAY LLP**                          **ROPES & GRAY LLP**
1211 Avenue of the Americas                   Prudential Tower

21

New York, New York 10036                      800 Boylston Street
Tel: (212) 596-9000                           Boston, Massachusetts 02199

22

Fax: (212) 596-9090                           Tel: (617) 951-7000
david.hennes@ropesgray.com                    Fax: (617) 951-7050

23

jane.willis@ropesgray.com                     matthew.mcginnis@ropesgray.com

24

                                              *Counsel for Defendants Blackstone Inc. and*
                                              *Blackstone Real Estate Partners VII L.P.*

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 2

THE FAC FAILS TO STATE A CLAIM AGAINST THE BLACKSTONE ENTITIES ............. 4

I.      Standard of Review .................................................................................................. 4

II.     The FAC Fails to Plausibly Allege that the Blackstone Entities Entered into Any of
        the Alleged Agreements or Otherwise Participated in the Alleged Scheme. .................... 5

        A.      There Are No Allegations that Either Blackstone Entity Was Party to Any
                Agreement. ................................................................................................. 5

        B.      There Are No Allegations that Either Blackstone Entity Participated in Any
                Alleged Scheme. ......................................................................................... 6

III.    The FAC's Allegations About The Cosmopolitan Are Insufficient to Impute
        Liability to the Blackstone Entities. ......................................................................... 7

        A.      The FAC Relies on Conclusory Allegations About Alleged Ownership and
                Control that This Court Already Deemed Insufficient to Establish Liability. ........ 7

        B.      Well-settled Corporate Law Principles Require Dismissal. ................................ 8

IV.     The FAC's Group Pleading Allegations Are Insufficient, Particularly as to the
        Blackstone Entities. .................................................................................................. 9

CONCLUSION ............................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aquilina v. Certain Underwriters at Lloyd's Syndicate*,
    407 F. Supp. 3d 978 (D. Haw. 2019) ........................................................................9

*Arandell Corp. v. CenterPoint Energy Servs. Inc.*,
    900 F.3d 623 (9th Cir. 2018) ....................................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................................7

*In re California Bail Bond Antitrust Litigation*,
    511 F. Supp. 3d 1031 (N.D. Cal. 2021) ...........................................................4, 5, 7

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litigation*,
    28 F.4th 42 (9th Cir. 2022) .......................................................................................5

*Gibson v. MGM Resorts International*,
    2023 WL 7025996 (D. Nev. Oct. 24, 2023) ..........................................................2, 6

*Gibson v. MGM Resorts International*,
    2023 WL 7026984 (D. Nev. Oct. 24, 2023) ...................................................2, 3, 4, 7

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ...............................................................................6, 7

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
    2019 WL 1331830 (S.D.N.Y. Mar. 25, 2019) ..........................................................9

*Masimo Corp. v. Wireless*,
    2020 WL 7260660 (S.D. Cal. Dec. 10, 2020) ...........................................................8

*In re Pennsylvania Title Insurance Antitrust Litigation*,
    648 F. Supp. 2d 663 (E.D. Pa. 2009) ...................................................................8, 9

*In re RealPage, Inc., Rental Software Antitrust Litigation (No. II)*,
    2023 WL 9004806 (M.D. Tenn. Dec. 28, 2023)........................................................6

*SmileDirectClub, LLC v. Tippins*,
    31 F.4th 1110 (9th Cir. 2022) ...............................................................................8, 9

*United States v. Bestfoods*,
    524 U.S. 51 (1998)...................................................................................................2, 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

In addition to the many deficiencies set forth in Defendants' Joint Motion to Dismiss the First Amended Complaint for Failure to State a Claim ("Joint Motion") that compel dismissal of the First Amended Class Action Complaint (ECF No. 144 ("FAC")) against all Defendants, there is an independent reason that the FAC should be dismissed as to newly added defendants Blackstone Inc. and Blackstone Real Estate Partners VII L.P. ("BREP VII" and together with Blackstone Inc., the "Blackstone Entities").[1]  In short, the FAC is devoid of allegations that either Blackstone Entity participated in the purported Section 1 conspiracy or was even party to *any* of the alleged vertical or horizontal agreements or relationships at issue in this case.  In particular, the FAC is completely lacking in allegations that either Blackstone Entity entered into any agreement about room prices with Rainmaker or with any other Defendant, provided any information to Rainmaker, or determined room prices at The Cosmopolitan of Las Vegas ("The Cosmopolitan").  To the contrary, all the FAC alleges is that BREP VII, a real estate investment fund, previously owned The Cosmopolitan and that Blackstone Inc. is affiliated with BREP VII. This is insufficient to sustain a claim against the Blackstone Entities, and the FAC should be dismissed.

The FAC's attempt to impute liability to the Blackstone Entities based solely on ownership—which the FAC mischaracterizes as purported "control and operation" of The Cosmopolitan prior to 2022—also fails.  These allegations are both conclusory and unsupported by any plausible factual allegations about the conduct of either Blackstone Entity.  In addition, in clear tension with these allegations, the FAC itself acknowledges that The Cosmopolitan is separate and distinct from the Blackstone Entities, and that The Cosmopolitan had its own personnel and management team.  Such allegations are insufficient as a matter of law to impute liability to the Blackstone Entities.  It is a bedrock principle of corporate law that alleged investment in a company does not establish the investor's liability for alleged acts of the company.

---

[1] The Defendants that joined the Joint Brief are Cendyn Group, LLC; The Rainmaker Group Unlimited, Inc.; Caesars Entertainment Inc.; Treasure Island, LLC; Wynn Resorts Holdings, LLC; Blackstone Inc.; and Blackstone Real Estate Partners VII L.P.

*See, e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 52 (1998).

For these reasons and the reasons set forth in the Joint Motion, Plaintiffs cannot sustain any claim against the Blackstone Entities.  The FAC should be dismissed with prejudice.

## BACKGROUND

The Joint Motion provides a full summary of the relevant factual allegations in the FAC; only those relevant to the discrete issues in this Motion are summarized below.  In short, the FAC attempts to cure certain of the original complaint's deficiencies by naming the Blackstone Entities but does so by recycling an allegation about purported "control" made against a former defendant that was already dismissed from this action.  And, in any event, the FAC does not (and cannot) allege any relevant facts regarding the Blackstone Entities' purported ownership of The Cosmopolitan that can sustain an antitrust claim here, much less that the Blackstone Entities were involved in any of the alleged agreements or relationships at issue in this case.  This requires dismissal of the FAC as to the Blackstone Entities.

***Plaintiffs Name the Blackstone Entities in a Failed Attempt to Cure the Original Complaint's Deficiencies Regarding The Cosmopolitan.***  Plaintiffs attempt, but fail, to cure certain of the original complaint's deficiencies by naming the two Blackstone Entities, based on former ownership of The Cosmopolitan from 2014 to 2022.[2]  These allegations are unaccompanied by any relevant factual or legal support.  In fact, only a single paragraph in the 250-page FAC discusses the Blackstone Entities.  FAC ¶ 33.  There, the FAC alleges, without factual basis, that Blackstone Inc. acted as the manager for BREP VII, a real estate investment fund.  *Id.*  The FAC then alleges, in wholly conclusory fashion, that the two entities "control[led] and operat[ed]" The Cosmopolitan from 2014 until 2022, *id.*, when it was acquired by MGM, *id.* ¶ 15 n.6.  The FAC further alleges that during the time of the Blackstone Entities' purported "control," "the hotel,"

---

[2] In October 2023, the Court dismissed the original complaint with leave to replead.  *Gibson v. MGM Resorts Int'l*, 2023 WL 7025996, at *1 (D. Nev. Oct. 24, 2023); *Gibson v. MGM Resorts Int'l*, 2023 WL 7026984, at *1 (D. Nev. Oct. 24, 2023) ("*MGM*").  The Blackstone Entities were not named in the original complaint.  As discussed herein, the Court dismissed an allegation made in the original complaint about a former defendant that is similar to the primary allegation made as to the Blackstone Entities here (*i.e.*, purported "control" of a hotel).  *MGM*, 2023 WL 7026984, at *1, *3.

*i.e.*, The Cosmopolitan, "was engaged in an agreement with Rainmaker to use Guestrev and Grouprev products." *Id.* ¶ 33. But the FAC *does not* allege, for example, that either Blackstone Entity was party to that agreement, or any other agreement at issue in the case, or was otherwise involved in the purported conspiracy.

The FAC's conclusory allegation regarding purported "control" of The Cosmopolitan may be familiar to the Court given that a similar unsupported allegation was made against MGM Resorts International ("MGM") in Plaintiffs' initial complaint (ECF No. 1 ¶ 43), which this Court dismissed. *MGM*, 2023 WL 7026984, at *1. The Court held, in relevant part, that there were insufficient allegations of MGM's participation in the alleged conspiracy during the time it allegedly "control[led]" The Cosmopolitan after its acquisition in 2022, resulting in MGM's dismissal. *Id.* at *1, *3. A similar conclusion is warranted as to the Blackstone Entities here, where there is also an absence of any relevant factual allegations as to the Blackstone Entities' participation in the purported conspiracy (or any other remotely relevant conduct, for that matter).

***The FAC Lacks Any Plausible Factual Allegations About the Blackstone Entities' Conduct to Sustain a Section 1 Claim.*** The FAC is devoid of any allegations regarding the Blackstone Entities' conduct to support Plaintiffs' claims. The FAC does not allege that the Blackstone Entities had any agreement with Rainmaker, The Cosmopolitan, or any other Defendant with respect to Rainmaker. Nor does the FAC allege that the Blackstone Entities directed The Cosmopolitan to use Rainmaker products or had anything to do with revenue management for The Cosmopolitan, including price setting. Indeed, the FAC does not even allege that the Blackstone Entities had a relationship with Rainmaker or Cendyn.[3] Simply put, the FAC does not (and cannot) plausibly allege that the Blackstone Entities participated in the purported conspiracy.

To the contrary, the FAC acknowledges that the Blackstone Entities and The Cosmopolitan were separate and distinct entities. For example, it alleges that The Cosmopolitan had its own personnel and management team, with duties relating to revenue management. *See, e.g.*, FAC

---

[3] By identifying allegations that are absent from the FAC, the Blackstone Entities in no way concede that inclusion of such allegations could plausibly state a claim against them.

¶ 211(G).  Indeed, the only two personnel identified in the FAC as having responsibilities relating to revenue management at The Cosmopolitan are alleged to be former personnel of the hotel, not the Blackstone Entities.  *Id.*  And, as noted above, the FAC alleges it is "the hotel"—not either of the Blackstone Entities—that allegedly entered into an agreement with Rainmaker. *Id.* ¶ 33.  These allegations are insufficient to establish a Section 1 Sherman Act claim against the Blackstone Entities.

*      *      *

In sum, rather than cure the original complaint's fundamental deficiencies, the FAC simply repeats them, this time as applied to the Blackstone Entities.  And, as further highlighted above, there is no plausible factual allegation that either Blackstone Entity was party to any of the alleged agreements or relationships at issue in the FAC.  Accordingly, the claims against the Blackstone Entities should be dismissed with prejudice.

**THE FAC FAILS TO STATE A CLAIM**
**AGAINST THE BLACKSTONE ENTITIES**

**I.**    **Standard of Review**[4]

The FAC does not plausibly state a claim against the Blackstone Entities for violation of Section 1 of the Sherman Act, which is the only cause of action asserted against them.  As this Court has already recognized in this case, to state a Section 1 claim, a complaint must make "some showing—direct or circumstantial—that the [Sherman Act] defendants 'actively participated *in an individual capacity* in the scheme.'"  *MGM*, 2023 WL 7026984, at *2 (quoting *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1119 (9th Cir. 2022) (citations omitted)) (emphasis added). Further, "a complaint alleging an antitrust conspiracy 'must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it.'"  *In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1047 (N.D. Cal. 2021) (citation omitted).  The FAC contains no such allegations as to the Blackstone Entities, and the claims against them should accordingly be

---

[4] The Blackstone Entities incorporate by reference the applicable legal standards set forth in Argument Sections I and II of the Joint Motion.

4

dismissed.

## II.   The FAC Fails to Plausibly Allege that the Blackstone Entities Entered into Any of the Alleged Agreements or Otherwise Participated in the Alleged Scheme.

The FAC does not plausibly allege that either Blackstone Entity was a party to any of the alleged agreements or participated in the alleged "scheme" in any way.  The threshold question for Section 1 liability is whether Plaintiffs plead sufficient facts "to plausibly suggest that an illegal agreement was made."  *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 46 (9th Cir. 2022).  Because the FAC contains no such allegations as to the Blackstone Entities, the claims against them should be dismissed.

### A.   There Are No Allegations that Either Blackstone Entity Was Party to Any Agreement.

***First***, there are no factual allegations that either Blackstone Entity entered into, or directed The Cosmopolitan to enter into, any agreement with or about Rainmaker at all—much less an allegedly unlawful agreement.  In the entirety of Plaintiffs' 370-paragraph FAC, the discussion regarding the Blackstone Entities merely alleges that they, at one time, owned The Cosmopolitan. FAC ¶¶ 33, 15 n.6.  The FAC goes on to allege that it was The Cosmopolitan (not a Blackstone Entity) that entered into a software licensing agreement with Rainmaker, pursuant to which The Cosmopolitan (not a Blackstone Entity) allegedly used Rainmaker products, and that this agreement purportedly resulted in The Cosmopolitan (not a Blackstone Entity) charging higher room rates.  *Id.* ¶¶ 33, 178, 219.[5]  The mere allegation that The Cosmopolitan (rather than a Blackstone Entity) used Rainmaker products during the period of the Blackstone Entities' purported ownership of the hotel does not establish an agreement between either Blackstone Entity and Rainmaker to license Rainmaker products, and it certainly does not evidence a "conscious decision" by them to join an antitrust conspiracy, as is required to survive a motion to dismiss.  *See In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d at 1047 ("To survive a motion to dismiss, a

---

[5] For the avoidance of doubt, these are allegations only, and the Blackstone Entities do not concede their accuracy by repeating them here for purposes of the Court's consideration on a motion to dismiss.

complaint alleging an antitrust conspiracy 'must allege that *each individual defendant joined the conspiracy and played some role in it* because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it.'") (citation omitted) (emphasis added); *cf. In re RealPage, Inc.*, 2023 WL 9004806, at *9 (M.D. Tenn. Dec. 28, 2023) (finding alleged vertical agreements were supported by direct evidence and did not require the court to draw "any inferences to conclude that . . . [d]efendant[s] entered into an agreement").

Nor are there any allegations that either Blackstone Entity entered into an agreement, or even had a relationship of any kind, with any of the other Defendants regarding Rainmaker. As this Court has already made clear, bare conclusions that the Defendants reached an "agreement" are insufficient. *See Gibson*, 2023 WL 7025996, at *4 (rejecting as insufficient Plaintiffs' allegations that "Hotel Operators" entered into a purported agreement without allegations of *who* entered into such an agreement for each particular defendant); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047-48 (9th Cir. 2008) (affirming dismissal because "appellants pleaded only ultimate facts, such as conspiracy, and legal conclusions"). Without more, the FAC falls far short of stating a claim as to the Blackstone Entities, requiring their dismissal.

## B.   There Are No Allegations that Either Blackstone Entity Participated in Any Alleged Scheme.

*Second*, the FAC fails to allege that the Blackstone Entities took any affirmative steps in furtherance of the alleged conspiracy that Plaintiffs purport to plead. In connection with Count I, the FAC contains a conclusory group allegation that "Defendants have committed one or more of the following acts: a) provided information to be used in the operation of the pricing algorithms; b) created and operated algorithms that provided pricing recommendations to Defendants; c) knowingly used algorithms that incorporated information from other Defendants in setting pricing recommendations; and/or d) set prices based in whole or in part on pricing recommendations provided by Rainmaker Group." FAC ¶ 354. But there are *no* supporting factual allegations as to any of these alleged acts relating to either Blackstone Entity. *See id.* ¶ 33. And with respect to Count II, Plaintiffs assert—again in conclusory terms and with improper group pleading—that "Defendant Hotel Operators each delegated pricing to a centralized third party,

Rainmaker." *Id.* ¶ 367.  But the FAC contains *no* factual allegation that the Blackstone Entities did so, or even had the ability to do so.  *See id.* ¶ 33.

Plaintiffs are required to plead facts establishing that each defendant was a party to an allegedly illegal agreement and individually played some role in the alleged conspiracy.  The FAC fails to do that.  Because the FAC is completely lacking in allegations that the Blackstone Entities, for example, entered into any agreement with or about Rainmaker, or otherwise took steps to further the alleged conspiracy, Plaintiffs' claims against the Blackstone Entities should be dismissed.  *See In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d at 1047.

### III.   The FAC's Allegations About The Cosmopolitan Are Insufficient to Impute Liability to the Blackstone Entities.

There is no basis in corporate or antitrust law to impute liability to the Blackstone Entities on account of their alleged former ownership of The Cosmopolitan.

#### A.   The FAC Relies on Conclusory Allegations About Alleged Ownership and Control that This Court Already Deemed Insufficient to Establish Liability.

As a threshold matter, the FAC itself acknowledges that The Cosmopolitan is separate and distinct from the Blackstone Entities.  FAC ¶ 33; *see supra* at 4.  The FAC further acknowledges that the Blackstone Entities no longer own The Cosmopolitan after a sale to MGM in 2022.  *Id.* ¶ 15 n.6.

Even with respect to the time period during which the Blackstone Entities are alleged to have owned The Cosmopolitan, Plaintiffs' allegations do not and cannot establish the Blackstone Entities' liability.  The FAC ignores its own acknowledgment that The Cosmopolitan was separate and distinct from the Blackstone Entities—alleging, for example, that the hotel had its own personnel relating to revenue management—and offers only the unfounded assertion that the Blackstone Entities previously "controlled" and "operated" the hotel.  *Id.* ¶ 33.  Such conclusory allegations were insufficient in the original complaint when asserted against MGM and are likewise insufficient here.  *See MGM*, 2023 WL 7026984, at *1, *3; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *Kendall*, 518 F.3d at 1047-48 (affirming dismissal where

7

plaintiffs "pleaded only ultimate facts, such as conspiracy, and legal conclusions"). The FAC fails to plead any relevant alleged conduct by either Blackstone Entity, much less how or why liability should be imputed to them.

### B. Well-settled Corporate Law Principles Require Dismissal.

Consistent with well-established principles of corporate law, the FAC cannot simply lump together The Cosmopolitan with its alleged former owner to attempt to impute antitrust liability to the Blackstone Entities. As the Supreme Court held in *Bestfoods*, it is a foundational corporate law principle that an alleged owner or investor in a company is not liable for alleged acts of the company. 524 U.S. at 52; *see, e.g.*, *Arandell Corp. v. CenterPoint Energy Servs. Inc.*, 900 F.3d 623, 633 (9th Cir. 2018). Under this settled principle, an alleged corporate owner cannot be liable for violations of the antitrust laws unless it participated in alleged violations through some independent conduct; conduct typical of any corporate owner is insufficient. *See SmileDirectClub*, 31 F.4th at 1119 (rejecting claims that board members were responsible for dental practices' conduct where plaintiffs failed to plead they "actively participated *in an individual capacity* in the scheme") (emphasis added); *Masimo Corp. v. Wireless*, 2020 WL 7260660, at *17 (S.D. Cal. Dec. 10, 2020) (no liability attached to owner where owner's investment in and authority over company in which it had invested were "well within the typical scope of a[n investor-investee] relationship"). Plaintiffs have made no showing of independent conduct by the Blackstone Entities here.[6]

Consistent with the Supreme Court's holding in *Bestfoods*, district courts have repeatedly dismissed antitrust claims that try to impose liability on an alleged owner or investor based on far more than what is alleged here. For example, in *In re Pennsylvania Title Insurance Antitrust Litigation,* the court dismissed antitrust claims against an alleged owner of a company even though the owner had allegedly affirmatively approved that company's specific anticompetitive conduct and maintained "ownership and control" over it—allegations of conduct well beyond what is alleged here. 648 F. Supp. 2d 663, 688 (E.D. Pa. 2009). The court reasoned that such conduct

---

[6] There are also no allegations (nor could there be), conclusory or otherwise, that this or any other conduct should render the Blackstone Entities vicariously liable for The Cosmopolitan's acts.

8

was "typical" of an investor and its underlying investment and was thus an insufficient basis for antitrust liability.  *Id.*  Likewise, in *In re LIBOR-Based Financial Instruments Antitrust Litigation*, the court found that allegations that the alleged owner of a company regarded the company as a "valuable asset"—because an alleged anticompetitive agreement allowed it to maintain supracompetitive prices—did not support an inference that the alleged owner had independently participated in the alleged misconduct, and dismissed the claims.  2019 WL 1331830, at *38 (S.D.N.Y. Mar. 25, 2019).  The same conclusion is compelled here on a far scarcer set of allegations.

## IV.   The FAC's Group Pleading Allegations Are Insufficient, Particularly as to the Blackstone Entities.

The FAC's various and improper group pleading allegations are also insufficient to state a claim against the Blackstone Entities.  As discussed in the Joint Motion, the FAC is replete with improper group pleading that lumps together the hotel "Operator Defendants."  *See, e.g.*, FAC ¶¶ 2 (defining "Operator Defendants" to include the Blackstone Entities), 209 ("Operator Defendants participated in this anticompetitive conspiracy by taking various acts related to the Rainmaker pricing algorithm platform . . . ."), 213 (chart reflecting aggregate room pricing "statistics" that does not distinguish among hotels), 241 ("Operator Defendants jointly delegated aspects of decision making on prices and supply to Rainmaker . . . .").  This non-factual pleading tactic is inadequate under controlling law, which requires that a plaintiff plead that each alleged Sherman Act defendant "actively participated *in an individual capacity* in the scheme."  *SmileDirectClub*, 31 F.4th at 1119 (citations omitted) (emphasis added); *see also id.* at 1119-20 (affirming dismissal of certain defendants because the complaint pleaded nothing to implicate them in the alleged antitrust conspiracy).  Because Plaintiffs fail to plead the elements of each claim as to either Blackstone Entity, independent from the so-called Operator Defendants and The Cosmopolitan, dismissal of the claims against them is warranted.  *See Aquilina v. Certain Underwriters at Lloyd's Syndicate*, 407 F. Supp. 3d 978, 996-98 (D. Haw. 2019) (dismissing antitrust claims because of group pleading that "improperly lumps the various . . . Defendants together").

1

## <u>CONCLUSION</u>

2

For the reasons set forth in this memorandum and the Joint Motion, which the Blackstone

3

Entities join in full, Plaintiffs' claims should be dismissed with prejudice.

4

Dated: February 14, 2024                                    Respectfully submitted,

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/   Daniel McNutt*
Daniel McNutt, Esq., Bar No. 7815
Matthew C. Wolf, Esq., Bar No. 10801
**MCNUTT LAW FIRM, P.C.**
11441 Allerton Park Drive, #100
Las Vegas, Nevada 89135
Tel.: (702) 384-1170
Fax.: (702) 384-5529
drm@mcnuttlawfirm.com
mcw@mcnuttlawfirm.com

Of counsel:

David B. Hennes
Jane E. Willis
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036
Tel: (212) 596-9000
Fax: (212) 596-9090
david.hennes@ropesgray.com
jane.willis@ropesgray.com

Matthew L. McGinnis *(pro hac vice)*
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199
Tel: (617) 951-7000
Fax: (617) 951-7050
matthew.mcginnis@ropesgray.com

*Counsel for Defendants Blackstone Inc. and
Blackstone Real Estate Partners VII L.P.*

10

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2024, I electronically transmitted the foregoing **Defendants Blackstone Inc. and Blackstone Real Estate Partners VII L.P.'S Motion to Dismiss The Amended Complaint** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

                                        */s/ Lisa Heller*
                                        An Employee of McNutt Law Firm, P.C.